IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EMMA C. et al.,

          Plaintiffs,

v.

DELAINE EASTIN, et al.,

          Defendants.

NO. C96-4179 TEH

ORDER RE: DIRECTIVES AND CDE TECHNICAL ASSISTANCE, OVERSIGHT, AND MONITORING REGARDING RAVENSWOOD'S DELIVERY OF SERVICES AND RELATED ISSUES

In response to continuing problems with the District's staffing and delivery of IEP services, the Court ordered the parties to make proposals for increasing the CDE's role in the District as a means of ensuring appropriate service delivery, oversight and monitoring. Specifically, the Court asked the parties to address what assistance, direction, support, and oversight Defendant CDE could or should provide to the District with respect to:

    1) recruitment of qualified staff or contractors for all unfilled District special education, related services, administrative, and IEP Coordinator positions;

    2) collection of full and accurate information regarding the services that have not been fully and/or effectively delivered to students;

    3) recruitment of adequate numbers of staff and/or contractors to deliver compensatory services to students in a timely manner; and

    4) development and implementation of effective methods of supervision and oversight sufficient to ensure full and effective implementation of IEPs.

The parties presented proposals in their status conference statements and at the status conference held November 29, 2007. After carefully considering the parties' submissions, the Court hereby ORDERS further involvement by the CDE, as set out below.

//

//

//

## I. CDE's Responsibilities and The Court's Authority To Order Its Increased Involvement

The First Amended Consent Decree, filed April 3, 2003 ("Consent Decree") in this action provides:

> CDE is responsible under federal and state law to ensure that children with disabilities who reside in Ravenswood have a free appropriate public education provided to them in the least restrictive environment. As part of this responsibility, CDE shall implement an effective monitoring system . . . . CDE shall ensure Ravenswood's performance of all its obligations under this Decree.

*Id.* ¶ 4.1. A CDE liaison must be available to facilitate implementation of CDE's obligations under the Decree. *Id.* ¶ 4.2.

Moreover, both state and federal law hold the state educational agency ("SEA") ultimately responsible for ensuring that the requirements of the Individuals with Disabilities Education Act ("IDEA") are fulfilled. 20 U.S.C. § 1412, 1413; 34 C.F.R. § 300.149(a)(1); Cal. Gov. Code § 7561 ("single line of responsibility"). The IDEA contemplates that if the local educational agency ("LEA") is unable to establish and maintain programs of free appropriate education that meet IDEA requirements, the SEA shall provide "special education and related services directly to children with disabilities," using payments that otherwise would have been available to the LEA or a state agency to do so. 20 C.F.R. § 1314(g)(1) and (g)(1)(b); 34 C.F.R. §§ 300.227 (state providing services); 300.175 (procedural requirements). It can provide those services directly, by contract, or through other arrangements. 34 C.F.R. § 300.227(a)(2)(I). The IDEA also imposes monitoring and technical assistance requirements. *See, e.g.,* 34 C.F.R. § 300.600 (monitoring responsibilities); 34 C.F.R. § 300.119(b)(technical assistance and training to local agencies).

Accordingly, both the SEA and/or the LEA may be held liable for a failure to provide a free appropriate public education. *Gadsby by Gadsby v. Grasmick,* 109 F.3d 940, 955 (4th Cir. 1997); 20 U.S.C. § 1415(i)(2)(C)(iii) (court may "grant such relief as [it] determines is appropriate"). Courts have ordered state agencies to take on increased responsibilities to rectify systemic violations of the IDEA. *See, e.g., Vaughn G. v. Mayor and City Council of Baltimore*, 2005 WL 1949688 (D. Md. August 12, 2005)(in response to breakdown in IEP

services, adopting a plan that allows state personnel to manage and direct local agency personnel in delivering services). Moreover, the Court has inherent authority to enforce its own orders. *Buono v. Kempthorne,* 502 F.3d 1069, 1081 n.11 (9th Cir. 2007); *Vaughn G.,* 2005 WL 1949688 *8 (D. Md. August 12, 2005).

## II. Ravenswood District's Inability To Provide IEP Services

Problems with the District's delivery of IEP services are longstanding. The four years' worth of data in the Court Monitor's RSIP Compliance Trends Report, 2003-2007, show increasing noncompliance with RSIP requirements relating to IEP service delivery. *See* §§ 12.1.3, 12.3.1. As early as November, 2006, Plaintiffs raised concerns about the District's provision of services, which the Court noted at the November 15, 2006 status conference. The Court ordered the parties to meet and confer about the recommendations in the Court Monitor's October, 2006 Trends Report. In January, 2007, the parties stipulated to adopt the bulk of the Court Monitor's recommendations.

In April, 2007, the District set out in a memorandum the steps it would take to ensure service delivery. Nevertheless, Court Monitor's February-April 2007 RSIP Quarterly Review Report showed a decrease in compliance in IEP service delivery. Accordingly, in an Order dated June 29, 2007, the Court ordered the District to revisit the steps it had outlined and to set forth in writing updated measures it would use to resolve unacceptable backsliding in service delivery. The District responded with memoranda on July 24, 2007, and, after feedback from the Court Monitor, on October 11, 2007.

The Court Monitor's latest Quarterly Report shows that compliance has continued to decline "precipitously." Of those student files reviewed, 50.8% reflected failure to deliver all required IEP services. Service delivery could not be determined for 18% of students because time logs were missing or incomplete. December 11, 2007 Quarterly Report, December 11, 2007, § 12.1.3 p. 42; *see also id.* § 12.3.1, p. 44 (40.8% of records sampled show students received specialized instruction, adaptations, supports and modifications

3

specified by their IEPs). Evidence of the District's repeated failure to comply with the RSIP requirements and provide adequate services is incontrovertible.

Moreover, various reports and updates to the Court, most recently on December 17, 2007, show that the District has not achieved a level of staffing for the '07-'08 school year that will produce full delivery of special education and related services to the Plaintiffs; in addition, the District has lost oversight and technical assistance staff to resignations. The Court has no reason to believe that the District is capable of righting its ship on its own in the near future.

## III. Ensuring Delivery of IEP and Compensatory Services

### A. Directives

The Court is convinced that the Court Monitor should have the same authority to issue Directives that he had under the RCAP in order to speed the process of ensuring the District can provide services to students with disabilities. The Court Monitor shall have authority to issue Directives to either or both Defendants on matters necessary to bring about compliance with RSIP requirements. The Monitor shall issue any such Directives in writing, and shall provide copies to the other Parties and the Court. The Defendant subject to a Directive from the Monitor shall have seven days to perform, or state its commitment to perform, the activities identified in the Directive. In the event that the affected Defendant disagrees with the Directive, that Defendant shall seek relief from the Directive within 14 calendar days of the day it notifies the Monitor of its refusal to comply with a Directive. It will do so by filing with the Court and serving on all Parties a memorandum or brief showing cause why the Court should not issue an Order enforcing the Directive. If the Defendant subject to a Directive agrees to implement a Directive, and then does not do so or does not do so effectively, the Monitor shall notify the Parties, and may, at his discretion, seek an Order from the Court to enforce the Directive.

The Court hopes that this grant of authority to the Monitor will be temporary. After the close of the 2007-2008 school year, the Court will entertain motions from either or both

4

Defendants to end the Monitor's Directive authority. The Court will do so if Defendants have made significant progress toward compliance, and if the Court is assured that the District is well positioned for the 2008-09 school year to implement the RSIP effectively and deliver all IEP services to students fully, competently, and effectively.

**B. CDE Responsibilities, Supervision, and Assistance**

**1. Staffing Analysis[1]**

Using the IEPs of students rather than the District database (as the RSIP does not currently contain an effective measure of database accuracy), CDE shall determine the appropriate staffing level for special education and related services providers (teachers, occupational therapists, speech therapists, psychologists, paraprofessionals, social workers, etc.) in the District. In calculating the number of staff needed, CDE should allow adequate time for staff attendance at IEP meetings, parent-teacher conferences, planning time, collaboration with general educators, other case management activities, travel time (for staff who serve students at more than one school site) and staff meetings. By analyzing staff absences, CDE shall also determine the number of "floater" substitutes necessary to ensure uninterrupted service delivery during staff absences and the delivery of compensatory education when staff are not absent.

The results of this analysis shall be communicated to the Court Monitor and the Parties by memorandum no later than January 28, 2008. The District (and the Plaintiffs, if they so desire) shall have one week to respond, also by memorandum to the Monitor and Parties. If any party believes that the CDE's analysis or recommendations are flawed in some way, that party shall clearly explain why in its memorandum to the Monitor.

---

[1] The Court recognizes that the CDE believes the San Mateo SELPA and County Office of Education (COE) may have expertise that will prove helpful in completing the tasks below. However, the SELPA and COE are not parties to this case, and the Court therefore cannot order relief against them. CDE is free to require (or contract for) their involvement under its own auspices, where appropriate, to comply with the remedy ordered below.

If the Parties disagree on appropriate staffing levels, the Court Monitor shall issue a Directive, as set out in section III.A *supra*. Any party aggrieved by the Directive may seek relief from the Court as set out above.

### 2. Determining Service Deprivations

Using staff timelogs, interviews, and any other means deemed appropriate and necessary to result in an accurate calculation, and based again on the IEPs of students, CDE shall determine the amount of service deprivation—including special education instruction, indirect services, and related services—suffered by each Ravenswood student from the beginning of the 2007-08 school year through December 31, 2007.

As part of this analysis CDE shall determine the extent to which services delivered by general education substitute teachers who were filling special education positions temporarily were delivered fully, competently, and effectively. CDE should use interviews of principals and general education teachers as part of the methodology for this portion of the analysis. Before proceeding with this task, CDE should seek the position of the District and Plaintiffs on this issue.

By February 15, 2007, CDE shall submit a list of all Ravenswood students who were deprived of services and the amount of services missed for each to the Court Monitor and the Parties.

### 3. Compensatory Services

After determining the service deprivations for each student, CDE shall adjust the list for all service deprivations already captured by the District's self-monitoring efforts or the Court Monitor's findings on this subject. CDE shall then determine the extent to which current District service providers can, in addition to their regular service delivery responsibilities, deliver the necessary compensatory services to students in a timely manner (if at all). CDE shall then contract with a sufficient number of providers to ensure the timely delivery of compensatory education to the affected students.

The District, with supervision and oversight from CDE, shall notify parents of each student with an offer of compensatory education, in accordance with the compensatory

education provisions of the RSIP. The District's current system of tracking compensatory education eligibility and provision shall be used for the purpose of tracking. CDE shall then ensure the timely, full and competent delivery of the compensatory services.

### 4. **Effective Methods of Supervision and Oversight: Service Delivery**

Effective January 7, 2008, and in addition to the staff/contractors necessary to comply with other provisions of this Order, CDE shall place three of its staff or contractors in the District to function as IEP Coordinators. They will be responsible for ensuring compliance with the RSIP IEP requirements at IEP meetings, providing technical assistance, and oversight of service delivery. These individuals shall report to a CDE staff member identified for this purpose, as well as to the Ravenswood Assistant Superintendent of Special Education. These CDE staff or contractors shall have the authority to make recommendations to District IEP teams and administrators regarding compliance, service delivery and any other matters deemed appropriate by CDE. The District shall not be bound by these recommendations, but CDE should report to the Monitor on a regular basis any recommendations on these matters not implemented by the District, or not implemented effectively.

For each IEP Coordinator hired by the District after the date of this Order, CDE may reduce by one the number of these individuals assigned to the District.

Furthermore, CDE shall use its presence in the District to assist the District in developing methods of supervision and oversight sufficient to ensure full and effective service delivery for the 2008-09 school year. By May 31, 2008, the Defendants shall inform the Court Monitor and Plaintiffs of these methods in writing and, if the Defendants disagree on this issue, shall separately inform the Monitor and Plaintiffs of their respective proposed methods. In the event the Parties disagree, the Monitor will make recommendations, attempt to mediate between the Defendants, or issue a Directive, at his discretion.

### 5. **Human Resources: Recruitment/ Retention**

CDE shall share with the District the resumes of any candidates who were not hired by CDE for CDE staff positions and may be appropriate candidates for District IEP Coordinator positions.

In addition, CDE shall appoint an individual with appropriate experience and expertise to provide technical assistance and oversight to the Ravenswood Human Resources office on recruitment and retention issues for the remainder of the 2007-08 school year. CDE shall make recommendations to the District related to recruitment and retention, including incentives for recruitment and retention to the extent that CDE believes those are necessary, and shall inform the Court Monitor and Plaintiffs of any recommendations not implemented or not implemented effectively by Ravenswood. If the District fails to implement the CDE's recommendations on recruitment and retention, the Monitor will make recommendations, attempt to mediate between the Defendants, or issue a Directive, at his discretion.

**6. Funding**

CDE shall assist the District in applying for any available discretionary funding relevant to special education or students at risk of referral to special education, and shall assist the District in identifying any other potential funding sources that may be available.

**C. Costs**

Defendants shall meet and confer regarding the costs of implementation of this Order. If the Defendants wish, the Court Monitor will be available to assist in this process. In their discussions the Defendants shall be guided by the following principles:

1) to the extent that this Order requires CDE to provide a service for which Ravenswood is currently funded through the RSIP budget, such funds shall revert to CDE;

2) for services not covered by the RSIP budget and for which Ravenswood does not currently receive funding from other sources, additional costs shall be allocated

between the Defendants in accordance with the current allocation agreement for the 2007-08 school year (45% CDE, 55% Ravenswood); and

3) for services not covered by the RSIP budget and for which Ravenswood does receive funding from state and federal sources, and for which CDE will now be responsible, such funds shall revert to CDE.

In the event that the Parties are unable to reach agreement about the allocation of costs, they shall submit a joint report outlining areas of disagreement and their respective rationales to the Court Monitor by February 29, 2008. The Court Monitor shall then make a recommendation to the Court by March 14, 2008.

**IV. Conclusion**

It is the hope of this Court that the steps ordered above will be temporary, and will not be necessary by the start of the '08-'09 school year, and that this Order will allow the District the breathing space necessary to focus on RSIP implementation and service delivery going forward. But, after many years of litigation, the Court cannot countenance continued service deprivations of this scope, nor will it allow another generation of Ravenswood students with disabilities to leave the District after eighth grade without having received a free, appropriate public education as the IDEA requires.

**IT IS SO ORDERED.**

Dated: 12/20/07

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT