IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EMMA C., et al.,

          Plaintiff,

v.

DELAINE EASTIN, et al.,

          Defendants.

NO. C 96-4179 TEH

**ORDER REGARDING MATTERS RAISED IN STATUS CONFERENCE STATEMENTS**

Having carefully reviewed the Parties' status conference statements, last week the Court concluded that the pressing matters in this case could be addressed adequately in a written order. As an initial matter, the Court is very frustrated by the backsliding evidenced in the Court Monitor's annual report. The two prior years had appeared to give cause for optimism, but the utter lack of progress, and actual regression that has occurred in the last school year, are unacceptable. Ravenswood has simply failed to discharge its responsibilities to provide a free appropriate public education. The CDE has fallen down in its oversight and its provision of compensatory services. These situations must change.

1. Translation of IEPs and Assessment Reports

The one recent bright spot has appeared to be in the translation of IEPs and assessment reports. The Court is guardedly pleased to note that the District has reported that all IEPs and assessment reports have been timely translated thus far this school year. The Court will look for confirmation of this progress in the Monitor's first report of the school year in another few weeks.

2. Methods of Supervision

In the order of December 20, 2007, the Court directed the CDE to use its presence in the District to assist the District in developing methods of supervision and oversight sufficient to ensure full and effective service delivery for the 2008-09 school year. By May 31, 2008, the Defendants were to have informed the Court Monitor and Plaintiffs of these methods in writing, which they did. CDE submitted a revision in July. If the Defendants disagreed on this issue, they were to have separately informed the Monitor and Plaintiffs of their respective proposed methods. This never occurred. Had the Parties disagreed, the Monitor was to make recommendations, attempt to mediate between the defendants, or issue a directive, at his discretion. Again, this did not happen and the Monitor is unaware of any concerns from the District regarding what the CDE drafted. The Monitor wrote a memo on June 16 stating his expectation that, as there was no disagreement, the District would implement the methods and adhere to their timelines as included in the earlier draft. CDE now asserts that this document was never implemented.

No later than November 26, the District shall inform the Court Monitor in a letter filed with the Court whether, and to what extent, these methods of supervision are being implemented. If they are not being implemented, the Court hereby orders the District to implement this document immediately. If the CDE subsequently believes that the District is failing to implement these methods of supervision, it must act. If there is a small issue of noncompliance, the CDE shall notify the Monitor immediately. If noncompliance is material, then the Court expects that CDE shall file a contempt motion.

3. The Role of CDE

At the May Status Conference, the Court directed the Parties to meet and confer on the issue of the future role of the CDE. Plaintiffs' and the District's Status Conference Statements relay a disappointing turn of events on this issue, which demonstrate that the Parties have yet to determine what this role shall be. Those Statements informed the Court that CDE has apparently disassociated itself from the efforts of the District and the Plaintiffs

2

to resolve this matter. According to the District, the CDE had promised a response by October 10, a date that has now passed.

The Court is exasperated that the Parties have yet to resolve this problem. The CDE playing a new, specified role would help it meet the ultimate standard to end this case: that it can ensure that a free appropriate public education will be provided in the District after the case ends. Further, it would contribute short-term benefits to the case. On the other hand, pages 5 and 6 of the document CDE provided to the Court Monitor and the Parties on November 12 offered possible ways that CDE could get meaningfully involved, and may usefully supplement the existing draft.

The Court therefore orders CDE to provide a written response to the July 18 draft no later than November 26. Although the Court is not committed to a single vision of how this issue is resolved, it remains important that CDE's role become more clearly defined. The Parties shall have until December 10, 2008 to resolve this matter through a stipulated modification to the consent decree. If the Parties cannot agree, any or all shall file a motion with the Court on December 15 seeking an amendment to the consent decree.

### 4. CDE Verification Review: Outstanding Noncompliance

CDE indicates that there are two outstanding systemic findings of noncompliance, on which they will do a follow-up review of files. They also say there are nine uncorrected findings for three individual students, on which the CDE says it is reviewing its sanctions options if the District fails to produce the required evidence. The Court has generally taken the position that CDE can supervise Ravenswood in the same way it supervises other school districts. However, any sanction imposed shall not further hinder the District's ability to implement the RSIP.

//
//

Accordingly, the Court hereby orders that resolution of this matter shall proceed in the following manner. No later than November 26, the CDE shall file a letter to the Court Monitor that answers the following questions:

- As to the systemic noncompliance, when will the file review take place?
- When will a report with the results be released?
- What will be the consequences of continued systemic noncompliance?
- As to the individual findings, what kinds of sanctions are you considering?
- What kind of evidence do you need from the district?

The District shall then respond by filing, no later than December 3, a letter describing whether it has the evidence that CDE requests, and, if yes, why it is taking so long to produce, and if not, when it will be able to produce this information. Although resolution of this matter is left to the discretion of the CDE, in light of the concerns articulated above, prior to the imposition of any sanction, the Defendants and the Court Monitor shall have a conference call about the situation.

5. Compensatory Education Costs

There also remains a dispute about how the costs associated with the compensatory educational services ordered by the Court on December 20, 2007 are going to be paid. The District indicates that it suggested a process to CDE, which promised a response that it never sent.

If necessary, this matter shall be resolved through a directive from the Court Monitor. If this issue is not resolved by the Defendants by November 26, on that date the CDE and the District shall each submit to the Monitor a letter detailing their positions on this issue. The Court Monitor shall issue a directive setting forth the process for paying these costs.

//
//
//

4

6. Compensatory Education

In case the Court's order of October 8 left any doubt, the division of labor among the Parties at this point assigns ultimate responsibility for the provision of compensatory educational services to the CDE. CDE's submission of November 12 helpfully explained some of the obstacles it has encountered in trying to accomplish this task. Yet because this ultimate responsibility lies with CDE, addressing obstacles likewise is the responsibility of CDE. For example, if the District provides faulty addresses or fails to meet its transportation obligations, the CDE must address these issues immediately with the District. If the District is unresponsive, the problem shall be addressed with the Monitor. If that is ineffective, because this is litigation, CDE should then file a motion with the Court, and the Court can order the other Party to comply with its obligations.

Beyond this issue of responsibility, the Court is troubled by the sloppiness of the status reports that CDE is submitting to the Court. The Court has received versions of CDE's tracking instrument that are clearly erroneous, as they are inconsistent from one week to the next. For example, on November 3 CDE asserted that it had served 94 students between August 1 and October 31. A week later, they stated that they had served a total of 87 students, thus indicating that seven students had somehow lost services they had already received in the intervening week. Likewise, on November 3, CDE said they had provided 5710 minutes of paraeducator services; a week later, they said that they had cumulatively provided 4900 minutes, having somehow lost 810 minutes of services in the prior week. It was precisely this kind of sloppiness that led the Court to order the attorney of record to certify the accuracy of the reports under the penalty of perjury and Rule 11. CDE appears to have failed to comply with this aspect of the Court's order.

Moreover, in its progress report of November 3, CDE acknowledged that it failed to meet the first benchmark it established to complete the services for the students in Group 1 by October 31. Only 25 students of Group 1 have had their services completed; the vast majority, 65 students in Group 1, have yet to complete their services. All of this is very disheartening.

5

The Plaintiffs' status conference statement makes clear that they wish to pursue substantial changes in the way compensatory services are provided, namely seeking educational goods as well as services, the right of parents to select providers, and an extension of the period of time over which compensatory services will be offered to recoup for service deprivations. They also posit that receivership might be necessary to ensure proper service provision.   The Court is likewise exasperated that it has been nearly a year since its first order on compensatory services, and CDE still is not properly discharging its responsibilities to provide these services.

The Court acknowledges that the CDE has not complied with its order of October 8 as it has failed to complete the provision of services to Group 1 by October 31. Although the Court notes that this was a deadline suggested by the CDE itself in its plan, the Court also recognizes that this was a very short timeline for completing these services. Accordingly, the Court will judge compliance with the October 8 order based on completion of services to Group 2 no later than January 15; services to Group 1 should be completed as quickly as possible, but in no case later than January 15.

Furthermore, by November 26, the CDE shall file a letter to the Court Monitor answering the following questions regarding the provision of compensatory educational services:

- Has the CDE located additional providers?
- How many providers are available in each discipline now?
- Has the accuracy of calculations on the amounts of services been verified?
- Did the CDE use the benchmark dates or the ultimate end date of June 2009 to calculate the FTEs that are needed to complete the CDE plan?
- Did these calculations include preparatory and travel time?

Additionally, the Court observes that Plaintiffs offered viable alternative remedies for the compensatory services problem in their status conference statement. If Plaintiffs seek to amend or expand the requirements of the Consent Decree, they should attempt to reach a

6

1 stipulation with the other Parties regarding these suggested remedies.  Absent such a
2 stipulation, they should file an appropriate motion with the Court.

### 7. Trends Report

The Court Monitor's annual report can only be described as damning.  Although there had been substantial progress up until last year, the Court agrees with the Plaintiffs' characterization of service delivery being in a free fall.  The Court is deeply distressed, although in no way surprised based on prior status conferences and the Monitor's reports of the last year, about what last year's data show.  In brief, the Defendants are failing to accomplish the basic tasks with which they are charged, both by federal law and the terms of the consent decree in this case.  Plaintiffs are urging the Court to keep all options on the table, including state receivership.  The Court is absolutely keeping open all of these options.

What is most clear at this time is that the disabled children of Ravenswood City School District continue to have their civil rights violated by the failure to provide them with a free and appropriate public education.  The Court had believed that this case was on the right track, but data over the last year indicates that the Defendants are systematically failing to discharge their responsibilities.  The District's compliance with a number of requirements regressed from the prior year, a state of affairs that apparently did not even merit a single sentence in the District's status conference statement.  Some of those requirements include assessments of students, sending assessment reports to parents in primary language and within timeline, sending parents proper and timely notice of IEP meetings, translating IEPs, IEPs themselves, staff timelogs, service delivery to students, providing progress reports to parents, and timely notifying parents of their child's entitlement to compensatory educational services.

Accordingly, the Court has concluded that in order to stem the terrible decline that has occurred over the last year, there is little choice but to establish interim benchmarks by which progress can be judged in this case en route to full compliance with the terms of the consent decree.  The Court hereby establishes the following benchmarks:

7

| Requirement | % Compliant | | |
| --- | --- | --- | --- |
| | 2006-07 School Year | Interim Benchmark (1/31/09) | Final Benchmark (2008-09 school year) |
| 6.2.1-assessment content/process | 82.1 | 71 | 82.1 |
| 8.2.1-IEP meeting notice | 92 | 80 | 90 |
| 8.3.1-assessment report prior to IEP meeting | 43.6 | 30 | 43.6 |
| 8.4.2-IEP meeting interpretation | 98.8 | 90 | 95 |
| 9.2.1-IEP process | 82.9 | 75 | 82.9 |
| 9.3.1-IEP content | 73.5 | 60 | 73.5 |
| 11.2.2-discussion re: extracurricular participation | 97.4 | 82 | 95 |
| 12.1.1-staff timelogs | 90.3 | 50 | 85 |
| 12.1.3-service delivery | 67.8 | 50 | 67.8 |
| 12.2.1-progress reports | 90.3 | 80 | 90 |
| 12.3.1-service delivery | 89.1 | 65 | 85 |
| 12.3.2-comp notice | 80 | 70 | 80 |
| **No Current IEP in File-% Noncompliant** | | | |
| 9.2.1/9.3.1 | 12.1 | 15 | 12.1 |

The District shall achieve the interim benchmarks for the first half of the 2008-09 school year by January 31, 2009, which is the end of the current reporting period. The Monitor shall report on the District's status with respect to the interim benchmarks in the cover memo to his report on that reporting period. The District shall conform to the final benchmarks, which will restore compliance with the RSIP to the levels achieved in the 2006-07 school year, by the end of the current school year on June 30, 2009. The Monitor's Trends Report covering the 2008-09 school year shall report on the District's status with respect to the final benchmarks.

Furthermore, by December 1, 2008, the District shall file with the Court a letter listing the name or names of administrators who will be individually or collectively responsible for ensuring compliance with these benchmarks.

//
//
//
//

8. District's Supplemental Status Conference Statement

The Court is in receipt of the District's Supplemental Status Conference Statement, which was filed on November 20, 2008. Although the Court is encouraged by the creativity of the District as represented in that document, the mere suggestion of these new ideas does not resolve the problems identified in the text above. The Court is willing to amend or vacate portions of this order to reflect joint stipulations of the Parties as to how progress will be made toward full compliance with the RSIP. Accordingly, the Court hereby orders the Parties to meet and confer regarding that document no later than December 19, 2008, to determine if they can reach a joint stipulation. The Court Monitor will be available to the Parties, if they so desire, to help facilitate this process. Additionally, if agreement is not possible, the Court will entertain appropriate motions from any Party seeking to implement these proposals or other steps toward full compliance with the RSIP.

**IT IS SO ORDERED.**

Dated: November 20, 2008

Thelton E. Henderson
United States District Judge

9