William Koski, Esq., CA Bar #166061
MILLS LEGAL CLINIC
STANFORD LAW SCHOOL
YOUTH & EDUCATION LAW PROJECT
559 Nathan Abbott Way
Stanford, California  94305-8610
Tel:  (650) 724-3718
Fax: (650) 723-4426

Arlene B. Mayerson, Esq., CA Bar # 79310
Larisa Cummings, Esq., CA Bar # 131076
DISABILITY RIGHTS EDUCATION AND
  DEFENSE FUND, INC.
2212 6th Street
Berkeley, California 94710
Tel:   (510) 644-2555
Fax: (510) 841-8645

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA C., by and through her Guardian Ad Litem, et al., each one individually and on behalf of all other similarly situated children,<br><br>Plaintiffs,<br><br>v.<br><br>DELAINE EASTIN, individually and in her official capacity as Superintendent of Public Instructions for the State of California, et al.,<br><br>Defendants. | Case No.: C-96-4179 (TEH)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE**<br><br>Date:         February 2, 2009<br>Time:        10:00 a.m.<br>Courtroom:  Hon. Thelton E. Henderson |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.  INTRODUCTION ................................................................................................. 1

II. SUMMARY OF FACTS ....................................................................................... 2

III. ARGUMENT ......................................................................................................... 8

    A.  This Court Has Inherent Power to Require CDE to Fulfill its Responsibility to Ensure Ravenswood's Performance of All Obligations Under the Consent Decree................................................................. 8

    B.  Plaintiffs Propose Adopting a Process-Oriented Approach to Clarifying the CDE's Responsibility to Ensure Compliance With the Consent Decree ........................................................................................ 10

IV. CONCLUSION.................................................................................................... 13

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

i

# TABLE OF AUTHORITIES

**CASES**

*Doe by Gonzales v. Maher*, 793 F.2d 1470 (9th Cir. 1986) ......................................................... 10

*Emma C. v. Eastin*, 2000 U.S. Dist. LEXIS 16099 (N.D. Cal. Oct. 4, 2001) ............................... 8

*Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993) ...................................................... 9

*Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 955 (4th Cir. 1997) ............................................. 9

*Kruelle v. New Castle County Sch. Dist.*, 642 F.2d 687 (3rd Cir. 1981) ..................................... 10

*St. Tammany Parish Sch. Bd. V. Louisiana*, 142 F.3d 776 (5th Cir. 1986) ............................... 13

**STATUTES**

20 U.S.C. § 1413(g)(1)(B) (2005) ................................................................................................. 9

**RULES AND REGULATIONS**

34 C.F.R. § 300.149(a)(1) .............................................................................................................. 9
34 C.F.R. § 300.175 ....................................................................................................................... 9
34 C.F.R. § 300.227(a)(2)(i) .......................................................................................................... 9

Cal. Gov't Code § 7561 (1981) ..................................................................................................... 9

**OTHER AUTHORITIES**

First Amended Consent Decree, *generally* ........................................................................... *passim*
         § 4.1 ................................................................................................................................... 8

Ravenswood Corrective Action Plan ("RCAP") ........................................................................... 2

Ravenswood Self Improvement Plan ("RSIP") .................................................................... *passim*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs seek an Order modifying the First Amended Consent Decree ("Consent Decree") to enhance the role of the California Department of Education ("CDE") in the implementation of the Ravenswood Self Improvement Plan ("RSIP").  Plaintiffs propose a specific process by which the CDE will assume responsibility for ensuring that the terms of the Consent Decree are fully implemented.  This amendment is offered pursuant to Paragraph 12.0 of the Consent Decree and the Court's directive that the Parties contemplate an amplified role for the CDE in monitoring the District's success and ensuring implementation of the RSIP and special education services to the children in Ravenswood.

In November 2007, pursuant to this Court's Order, the Parties submitted proposals addressing "what assistance, direction, support and oversight the CDE could or should provide to the District" with respect to various matters related to RSIP implementation.  (*See* Court Order Re: Directives and Technical Assistance, Oversight and Monitoring Regarding Ravenswood's Delivery of Services and Related Issues, December 20, 2007) ("December 20, 2007 Order") (Electronic Filing Document 1151).  During a status conference hearing held on May 29, 2008, the Court directed the Parties to meet and confer regarding the need for an "enhanced role" by CDE to redress on-going and pervasive non-compliance.  In a meeting on July 11, 2008, the Parties negotiated the broad terms of a modification to the Consent Decree that would require a process by which specific RSIP non-compliance items would be identified, specific actions to remedy such non-compliance would be developed, and specific persons—from Ravenswood or CDE—would be tasked to implement the corrective action.  Plaintiffs agreed to capture those broad principles in specific language and submitted a draft proposed modification to the Consent Decree to Defendants on July 18, 2008.  After a lack of meaningful response to that proposal from the CDE, (*see* Declaration of William S. Koski in Support of Plaintiffs Motion to Amend

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

Page 1

First Amended Consent Decree, ¶¶ 6-9 ("Koski Decl."), on November 20, 2008, this Court issued an Order directing the CDE to provide a written response to the July 18, 2008 proposal and to meet-and-confer with Plaintiffs and the District regarding the proposal.  (*See* Court Order Re: Matters Raised in Status Conference Statements, November 20, 2008) ("November 20, 2008 Order") (Electronic Filing Document 1324).  Despite Plaintiffs' and the District's agreement on a proposed modification, CDE has continued to resist the proposed modification, necessitating this motion.  (*See* Koski Decl. ¶ 12).  Plaintiffs believe that a modification of the Consent Decree is necessary to clarify CDE's obligation to "ensure" RSIP compliance and ultimately to bring this case to final resolution after over a decade of litigation.

## II.     SUMMARY OF FACTS

Plaintiffs offer the following summary to provide some context for their Proposed Amendment to the First Amended Consent Decree.  For a more detailed procedural history, the Court and Parties are encouraged to refer to the Plaintiffs' Status Conference Statement filed on November 5, 2008.  (*See* "Plaintiffs' Status Conference Statement," November 5, 2008) (Electronic Filing 1316).

On April 3, 2003, the Court approved the First Amended Consent Decree and RSIP, which together provide a detailed and specific blueprint for the District and CDE to remedy the District's longstanding and systemic failure to provide Ravenswood students with disabilities a free appropriate public education in the least restrictive environment.  The Consent Decree and RSIP offered a comprehensive remedy the District's wholesale failure to comply with the original Consent Decree and the Ravenswood Corrective Action Plan ("RCAP").  Indeed, the Defendants' agreement to implement the RSIP may have spared the District from judicial or state

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

2

1   receivership contemplated in light of the District's clear failure to implement the original RCAP
2   in any meaningful way.  (*See* Court Order Re: Contempt, October 4, 2001) (Docket No. 409).

3   The Consent Decree and RSIP were approved in the midst of cautious optimism that
4   positive changes were forthcoming in Ravenswood.  The District had recently elected a reform-
5   oriented majority to its Board of Trustees, placed a recalcitrant Superintendent on leave, and
6   intended to appoint a widely respected interim superintendent to replace her.

7   That optimism was not misplaced.  The District made slow but consistent progress
8   toward compliance with many provisions in the RSIP.  As summarized in the Court Monitor's
9   "RSIP Compliance Trends Report, 2003-2008," (*See* Trends Report, 2003-08, October 28, 2008)
10  ("Trends Report, 2003-2008") (Electronic Filing Document 1311), the District improved
11  performance on many RSIP items directly affecting students and parents.

12  Until last year, the District continued to demonstrate progress – albeit uneven – across
13  various compliance measures.  For instance, the District made steady progress in involving
14  parents in their children's education.  More importantly, over the first four years of
15  implementation, the District made bumpy progress toward compliance with several RSIP items
16  that tracked whether students receive the special education and related services delineated in
17  their IEPs.  *Id.*

18  Last year, the positive momentum was lost.  Faced with mounting evidence of gaping
19  holes in staffing and service delivery, on October 18, 2007, the Court ordered Plaintiffs to
20  discuss, "in specific terms, what additional assistance, direction, support, and oversight
21  Defendant CDE could or should provide to the District with respect to the issues the Monitor has
22  identified" regarding recruitment of qualified staff and/or contractors to provide special
23  education services, collection of full and accurate information regarding service delivery,
24  recruitment of adequate staff and/or contractors to provide compensatory services, and

25  PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
    MODIFY FIRST AMENDED CONSENT DECREE
    *Emma C. v. Delaine Eastin* C-96-4179 (TEH)

3

development and implementation of effective methods of supervision and oversight sufficient to ensure implementation of IEPs.  (*See* Court Order Re: CDE Oversight, October 19, 2007) ("October 19, 2007 Order") (Electronic Filing Document 1134)**.**

Following a November 29, 2007 status conference in which the staffing crisis and service delivery failure were discussed, the Court issued a wide-ranging Order on December 20, 2007 that provided, *inter alia,* (1) that the Monitor have the authority to issue directives to the Defendants regarding compliance with the RSIP, (2) that the CDE conduct a staffing analysis for the District by January 28, 2007, (3) that, by February 15, 2007, the CDE determine the extent of service deprivations during this school year to children with disabilities in the District, (4) that CDE ensure provision of compensatory education services to those children, (5) that CDE place three staff/contractors in the District to serve as IEP coordinators and that, by May 31, 2008, Defendants develop methods of oversight to ensure full staffing, (6) that CDE appoint an individual to provide technical assistance and oversight to the District's human resources office for the remainder of this school year, and (7) that the CDE assist the District in applying for any available discretionary funding for special education and/or at-risk children.  (*See* December 20, 2007 Order).

The Defendants' compliance with the December 20, 2007 Order was spotty.  While certain requirements were met, the Court issued an Order to Show Cause and Order imposing sanctions regarding the CDE's failure to develop an appropriate staffing analysis by the Court's deadline, (*see* Court Order to Show Cause Why Sanctions Should Not be Imposed, January 31, 2008 & Court Order Imposing Sanctions on Defendant California Department of Education, March 17, 2008) (Electronic Filing Documents 1164 & 1200), and a further order re-iterating the CDE's obligation to ensure provision of certain compensatory education services to children denied services from September through December 2007.  (*See* Court Order Regarding Provision

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

4

of Compensatory Services, October 8, 2008) ("October 8, 2008 Order") (Electronic Filing Document 1300).

Investigation revealed that while the staffing crisis and service delivery failure for the September through December 2007 period were substantial—CDE calculations confirmed that tens of thousands of compensatory service hours were owed to District children for the Fall of 2007—the precipitous decline in District compliance and CDE oversight are not contained to that time period alone. Indeed, the Monitor's Trends Report, 2003-08, suggests children have been denied services for years and continued to be denied services for the duration of the 2007-08 school year. (*See* Trends Report, 2003-2008).

Perhaps most disturbing from Plaintiffs' perspective has been the steep drop in compliance with RSIP items directly linked to implementation of IEPs. In addition, the ongoing failure of Defendants to provide compensatory services for even the service denials during the discrete time period covering Fall of 2007 suggest an ongoing failure of service delivery and oversight in the District. *Id.*

The widespread and deep failure of the District to comply with the Consent Decree and RSIP forced Plaintiffs to contemplate more long-term systemic reforms to the special education governance and service delivery systems in the District. On May 28, 2008, the Court directed the Parties to meet and confer regarding an enhanced role for the CDE in the implementation of the RSIP. (See May 28, 2008 Order). Plaintiffs met and conferred with Defendants and the Court Monitor on four separate occasions in a good faith effort to discuss the enhanced role of the CDE in ensuring compliance with the RSIP. (The Declaration of William S. Koski accompanying this Motion describes the meet-and-confer process). (*See* Koki Decl. ¶¶ 2-13). Plaintiffs continue to believe an enhanced role would be beneficial as CDE is presumed to have the technical expertise to assist in service delivery and oversight.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

5

1    In response to the Court's directive, the Parties met and conferred on July 11, 2008. At
2 that meeting, there appeared to be general agreement on many principles for an enhanced CDE
3 role. Following-up on the meeting, Plaintiffs' counsel sent to CDE and the District on July 18,
4 2008 a draft stipulated modification to the Consent Decree that would embody the principles
5 discussed at the July 11 meeting. *Id.*

6    The District responded to the proposed language on July 21, 2008 with only one
7 substantive disagreement with Plaintiffs' language and an addition of another provision (to
8 which Plaintiffs did not object, but only noted that the provision required CDE approval). CDE
9 did not respond to Plaintiffs' proposed language until August 12, 2008. CDE's response was to
10 largely reject most of the previously discussed principles and propose a modification to the
11 Consent Decree that would in no way enhance CDE's role in RSIP implementation. *Id.*

12   In response to objections from Plaintiffs and the District, CDE again met with Plaintiffs
13 and the District on August 22, 2008. The Parties again seemed to agree on the general principles
14 for an enhanced CDE role. While CDE wanted further time to consider the Plaintiffs' proposed
15 language of July 18, CDE assured Plaintiffs and the District that it likely would have only
16 technical and minor objections to the proposed language. *Id.*

17   At the August 22, 2008 meet and confer, the CDE rejected language acceptable to both
18 Plaintiffs and the District but failed to propose alternative language which would contemplate an
19 enhanced role for the CDE in ensuring compliance with the RSIP. Despite various efforts by the
20 Plaintiffs, District, and Court Monitor, the CDE did not provide its comments on the proposed
21 modification to the RSIP prior to the filing of status conference statements on November 5,
22 2008. In their respective status conference statements, both Plaintiffs and the District detailed
23 the failure of the CDE to provide the promised comments to the agreement in principle that the
24 parties had reached. *Id.*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

6

1    On November 20, 2008, this Court issued an order directing the CDE to provide a written
2 response to the July 18, 2008 draft proposed modification to the Consent Decree and to meet-
3 and-confer with Plaintiffs and the District regarding the proposal.  (*See* November 20 Court
4 Order).  CDE circulated proposed language on November 26, 2008.  (*See* Letter from George
5 Prince to William Koski dated November 26, 2008) (Electronic Filing Document 1329).  The
6 Parties met and conferred via telephone on December 8, 2008.  Prior to that telephone
7 conference and at the request of the CDE's counsel, Plaintiffs and the District offered specific
8 written revisions to this CDE draft, which the CDE rejected.  (*See* Koski Decl. ¶¶ 2-13).
9    The CDE then suggested it could incorporate the concerns expressed by Plaintiffs and the
10 District in a revised draft.  The parties agreed to meet and confer once again via telephone on
11 December 11, 2008.  CDE never provided the parties with the promised revisions which
12 Plaintiffs hoped to review before the December 11, 2008 phone conference.  Instead, the CDE
13 offered a verbal description and recitation of proposed language which would incorporate the
14 Court's previous orders and limit CDE responsibility to its obligations as outlined by state and
15 federal law.  Without the benefit of a written draft to analyze and edit, the parties were prevented
16 from making further progress.  *Id.*
17    The CDE suggested acceptable language could be reviewed by its clients and made
18 available in writing within a week, and the Parties therefore agreed to request this Court grant a
19 brief extension of time to reach a stipulated agreement by December 17, 2008.  The Court
20 granted the extension.  (*See* Court Order Re: Extension of Time, December 11, 2008) (Electronic
21 Filing Document 1341).
22    On December 16, 2008, Plaintiffs' counsel spoke with CDE's counsel on the telephone.
23 CDE's counsel again told Plaintiffs that the CDE was preparing language that would address
24 Plaintiffs' concerns.  Regrettably, as of this date, CDE has still not offered alternative language

25 PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

but has instead acknowledged that six months of negotiation have failed to lead to agreement. (*See* Koski Decl. ¶ 13).

### III.   ARGUMENT

**A. This Court Has Inherent Power to Require CDE to Fulfill its Responsibility to Ensure Ravenswood's Performance of All Obligations Under the Consent Decree**

Though the Court is well aware that pursuant to the First Amended Consent Decree, the Court has full authority to compel the CDE to ensure that the District complies with all the expectations in the RSIP which guarantee that Ravenswood students receive the special education and related services to which they are entitled, the Plaintiffs again summarize the Court's authority to compel CDE performance.  The Consent Decree provides that the CDE must "ensure" implementation of the Consent Decree and RSIP and that the CDE is responsible under federal and state law to ensure that children with disabilities who reside in Ravenswood have a free appropriate public education ("FAPE") provided to them in the least restrictive environment ("LRE").  (*See* Consent Decree § 4.1)

This Court has already exercised its inherent judicial authority to force CDE to ensure compliance with the Consent Decree and the implementation of the RSIP.  Indeed, in its December 20, 2007 Order, this Court specifically recognized the CDE's obligation "to ensure Ravenswood's performance of all of its obligations under this Decree."  (*See* December 20, 2007 Order; *see also* Court Order, *Emma C. v. Eastin*, 2000 U.S. Dist. LEXIS 16099, note 1 at *4 (N.D. Cal. Oct. 4, 2001)).  Ravenswood is responsible in the first instance to provide FAPE in LRE.  However, as this Court has stated, the CDE is "ultimately responsible for compliance with statutory requirements."  *Id*.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

8

Federal law contemplates shared responsibility between the State Education Agency ("SEA") and the Local Education Agency ("LEA") in guaranteeing that disabled children receive the special educational services to which they are entitled. The IDEA requires the CDE "to provide special education and related services *directly* to children" if it determines that Ravenswood "is unable to establish and maintain programs of free appropriate public education that meet the requirements of" the IDEA. 20 U.S.C. § 1413(g)(1)(B) (2005) (emphasis added). *See also* 34 C.F.R. § 300.227(a)(2)(i) (2006) ("the SEA may provide special education and related services directly, by contract, or through other arrangements" in fulfilling IDEA obligations that are normally handled by a local education agency); 34 C.F.R. § 300.175 (2006) (discussing state education agency's rights and obligations when it "provides direct services" to children with disabilities). Both the language and the structure of the IDEA suggest the SEA and LEA may be held liable for the failure to provide a free and appropriate education. *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 955 (4th Cir. 1997) (citing *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 16 (1993)).

State law protects students with disabilities by establishing that the State of California is ultimately responsible for ensuring that the requirements of the IDEA are fulfilled. 34 C.F.R. § 300.149(a)(1) (2006) ("The SEA is responsible for ensuring [t]hat the requirements of this part are carried out . . . ."); Cal. Gov't Code § 7561 (1981) ("[T]here shall be a single line of responsibility with regard to the education of all handicapped children as required by [the Education for All Handicapped Children Act, now the IDEA]").

Courts have long recognized the need to hold SEAs accountable to rectify systemic failures of the LEAs to comply with the IDEA. This issue was fully briefed by Plaintiffs in November 2007. (*See* Plaintiffs' Status Conference Statement, November 14, 2007) (Electronic Filing Document 1136). Congress, in enacting the IDEA, places ultimate responsibility for the

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

9

provision of FAPE to each student on the SEA and desired a "central point of accountability." Resolution of interagency conflicts or delegation of duties from state to regional and local levels "may be left to state discretion." Even so, the SEA may not avoid responsibility for IEP development or implementation by claiming that its function is purely "supervisory." *Kruelle v. New Castle County Sch. Dist.*, 642 F.2d 687, 697 (3rd Cir. 1981). States face a broader duty to provide services directly whenever the local agency "refuses or wrongfully neglects" to provide a disabled child with a FAPE, or when the needs of one or more disabled students would be better served on a regional or state level. *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1492 (9th Cir. 1986).

It is therefore well-established that under the First Amended Consent Decree and federal and state law, this Court may compel the CDE to carry out any of the foregoing obligations to ensure that Ravenswood fulfills its obligations under the RSIP. Ravenswood has not complied with the RSIP and that this is a pervasive and long-standing problem which has deepened over the last year. Thus, the Court has ample authority to order that the CDE directly intervene and ensure Ravenswood's performance under the Consent Decree and RSIP.

### B. Plaintiffs Propose Adopting a Process-Oriented Approach to Clarifying the CDE's Responsibility to Ensure Compliance With the Consent Decree

CDE must assume a more active role in RSIP implementation. Defendants share equal responsibility for ensuring that District children receive services. Both Defendants are fully accountable to the children of Ravenswood, and the District's failure to provide those services mandates direct intervention by the CDE. CDE's reluctance to intercede on behalf of Ravenswood children has invited the service delivery free fall we witnessed over the past year. In addition to denying these students the services they need, this lack of accountability has

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

10

created an untenable situation where many Ravenswood students are unlikely to recapture the benefit of lost educational time and services.

Plaintiffs seek to avoid a recurrence of the uninterrupted downward slide in service delivery which occurred this past year. Because both Defendants are equally responsible for guaranteeing compliance with the RSIP, both Defendants are responsible for determining how that happens. Plaintiffs therefore propose a process-oriented approach to guarantee that Ravenswood children receive necessary special education services, built on collaboration between the CDE and the District. (*See* Exhibit A to Proposed Order, *infra*, "Plaintiffs' Proposed Amendment to First Amended Consent Decree"). The objective is to more closely track non-compliance with the RSIP and permit an immediate response to ongoing failures. This process will also permit the Parties to consider more significant reforms to the District's special education governance and service delivery systems.

Plaintiffs propose that within two weeks after the issuance of the Court Monitor's quarterly report tracking compliance with the RSIP, the CDE Liaison and a CDE representative with final authority to negotiate on behalf of CDE and to commit CDE resources participate in a meeting with the Court Monitor, the District's Assistant Superintendent of Special Education, and any other District personnel necessary to review the findings of the report. Plaintiffs reserve the right to participate in this meeting at their discretion. The purpose of this meeting will be to address the specific areas of non-compliance which demand immediate attention and establish corrective actions by Defendants in order to achieve full compliance with the RSIP.

This forum invites the Parties to propose an array of solutions and clarify responsibility. More importantly, Plaintiffs suggest that Defendants outline a specific plan assigning ultimate responsibility for each and every proposed corrective action, as well as a detailed time line for such action. CDE has traditionally limited its intervention to training, technical assistance and

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

11

consulting services.  Plaintiffs take a more expansive view of the range of CDE activities necessary to remedy non-compliance with the RSIP.  These activities may include, but would not be limited to, CDE's identification of or provision of consultants and service providers to implement the corrective actions, CDE's provision of administrative support to assist in the implementation of corrective actions, and CDE's provision of information and training to assist in the implementation of corrective actions.  Once Defendants agree upon such plan, the CDE will submit a written plan to the Monitor and all Parties within one week of the meeting.

Plaintiffs also outline a dispute resolution process should the Parties find themselves unable to agree to a plan of corrective action, or a party objects to the plan of corrective action.  This process is designed to resolve disputes in a timely manner.  If the Parties are unable to agree to the specific corrective action or the timeframe proposed for such action, or a party objects to the plan of corrective action, that Party may submit in writing a proposed plan to the Monitor and Parties within two weeks of the meeting.  The Party objecting to the proposed corrective action is invited to submit in writing to the Monitor and Parties specific reasons for refusing to undertake the proposed action.  The Monitor will review both the proposed corrective action and any objections and will issue a Directive within three weeks of the meeting by either ordering the action, modifying the action, or outlining the reasons for not ordering such action.  The Defendant subject to the Directive will then have one week to perform or state its commitment to perform the ordered action.  Should the Defendant disagree with the Directive, that Defendant may seek relief within two weeks of notifying the Monitor of its refusal to comply with the Directive by filing with this Court and serving on all Parties a memorandum or brief demonstrating why the Court should not issue an Order to enforce the Directive.

The Defendants would benefit from ongoing communication about challenges encountered in the successful implementation of the RSIP and Consent Decree.  Plaintiffs

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

propose that the CDE Liaison take advantage of numerous opportunities to participate in discussions at the District level which would allow more meaningful supervision and oversight. Plaintiffs suggest that the CDE Liaison attend meetings of the Assistant Superintendent identified in the Methods of Supervision filed with this Court by the CDE on May 30, 2008. (*See* CDE Memo from George Prince to Mark Mlawer Re: CDE Methods of Supervision) ("CDE Methods of Supervision") (Electronic Filing Document 1247).

Plaintiffs propose that the CDE bear the costs of all corrective actions agreed upon or it is directed to undertake by the Court Monitor or the Court. *See  St. Tammany Parish Sch. Bd. V. Louisiana*, 142 F.3d 776, 785 (5th Cir. 1986) ("the district court did not abuse its discretion by allocating financial responsibility to the Department, rather than the School Board, for the costs of [the student's interim] education").

The District's ability to track special education students and services has been hampered by the absence of a comprehensive special education information system.  Plaintiffs recommend that the CDE provide the District technical assistance and software development assistance at no charge to implement a web based information system.

### IV.     CONCLUSION

Plaintiffs respond to the Court's directive to articulate an amplified role for the CDE in ensuring the District's compliance with the Consent Decree and RSIP by offering the attached Proposed Amendment to the First Amended Consent Decree.  This process-oriented solution adopts a collaborative approach which permits all Parties to directly respond to non-compliance with the RSIP.  It further requires Defendants to articulate a clear and concrete plan to remedy systemic failures.  More importantly, that plan will be time limited and will assign ultimate responsibility between the Defendants for each required corrective action.  This process permits

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)

1  expansive and creative solutions to areas of non-compliance, including significant reforms to

2  special education governance and service delivery systems within the District.  It also offers a

3  dispute resolution process should Parties fail to agree to a corrective action plan.  Plaintiffs

4  request that this Court adopt the Plaintiffs' Proposed Amendment as submitted.

Dated:  December 22, 2008              Respectfully submitted,

/ s/
William S. Koski
MILLS LEGAL CLINIC
STANFORD LAW SCHOOL
YOUTH & EDUCATION LAW PROJECT
559 Nathan Abbott Way
Stanford, California  94305-8610
Telephone:  (650) 724-3718

Arlene B. Mayerson
Larisa Cummings
DISABILITY RIGHTS EDUCATION AND
  DEFENSE FUND INC.
2212 6th Street
Berkeley, California  94710
Telephone:   (510) 644-2555

*Attorneys for Plaintiffs*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY FIRST AMENDED CONSENT DECREE
*Emma C. v. Delaine Eastin* C-96-4179 (TEH)