IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EMMA C., et al.,

          Plaintiff,

v.

DELAINE EASTIN, et al.,

          Defendants.

NO. C 96-4179 TEH

**ORDER MODIFYING THE FIRST AMENDED CONSENT DECREE AND VACATING HEARING**

     This matter is before the Court on Plaintiffs' Motion to Modify the First Amended Consent Decree ("FACD"). A hearing is currently scheduled for this motion on March 4, 2009. The Plaintiff class, with the support of the Ravenswood School District, seeks to modify the First Amended Consent Decree and place greater responsibility on the California Department of Education to ensure compliance with federal law and the orders of this Court.

     Having carefully reviewed the parties' written submissions pursuant to this motion, the Court has concluded that a hearing is unnecessary. Accordingly, the scheduled hearing is VACATED. For the reasons discussed below, Plaintiffs' motion to modify is GRANTED in part; attached to this order is the text of the modification.

**FACTUAL AND PROCEDURAL BACKGROUND**

     As this case has been before the Court for over a decade, the facts are well-known and recorded elsewhere, and an exhaustive history is unnecessary for the resolution of this motion. However, a review of the facts pertinent to the present motion will be useful in understanding the Court's reasoning. Accordingly, these facts are primarily a procedural account of the precipitating events that led to the filing of this motion.

1  The Court approved the FACD and the Ravenswood Self Improvement Plan
2 ("RSIP"), which were intended to provide a roadmap for Defendants' compliance with their
3 legal obligation to provide a free appropriate public education in the least restrictive
4 environment ("FAPE in the LRE") to students with disabilities, in 2003. Between 2003 and
5 the end of the 2006-07 school year, compliance with the RSIP improved more or less
6 steadily. This progress essentially evaporated at the beginning of the 2007-08 school year, at
7 which time began a period of special educational service deprivations and conflict among the
8 parties.

9  On December 20, 2007, the Court issued an order that, among other things, instructed
10 the CDE 1) to conduct a staffing analysis for the District, 2) to determine the extent of
11 service deprivations during the first semester of the 2007-08 school year, 3) to ensure
12 provision of compensatory educational services to those children, 4) to place IEP services
13 coordinators in the District, 5) to appoint a person to provide technical assistance and
14 oversight to the District's human resources department for the remainder of the school year,
15 and 6) to assist the District in applying for additional funds for special education. The Court
16 observed that compliance with this order was inconsistent. On January 31, 2008, the Court
17 issued an Order to Show Cause and sanctions for the CDE's failure to timely complete its
18 staffing analysis. On October 8, 2008, the Court issued another order emphasizing the
19 CDE's responsibility to ensure provision of compensatory educational services.

20  In May of 2008, the Court directed the parties to meet and confer on an enhanced role
21 for the CDE in implementing the RSIP. The parties met and conferred multiple times with
22 the Court Monitor to discuss this issue, but Plaintiffs indicate that due to the CDE's failure to
23 respond to the final July iteration of a drafted proposal, a new agreement was never reached.
24 CDE submitted alternative language to the parties in November. On November 20, 2008, the
25 Court ordered the CDE to provide a written response to the July proposal no later than
26 November 26, 2008. The Court granted the parties until December 10, 2008, to resolve this
27 matter by stipulated modification to the consent decree; if an agreement was not reached, any
28 or all parties were to file a motion to amend with the Court on or before December 15. The

2

parties sought and received an extension of these deadlines to try to reach a stipulation. The CDE informed the Court on December 17 that such a stipulation was not reached. On December 22, 2008, the Plaintiffs filed this motion with the Court.

**DISCUSSION**

**Legal Standard**

The Court's legal authority to grant relief of various forms in IDEA cases is well-established and arises from multiple sources. IDEA provides that State Education Agencies ("SEAs") are "to provide special education and related services directly to children with disabilities . . . if the [SEA] determines that the local educational agency . . . is unable to establish and maintain programs of free appropriate public education that meet the requirements of subsection (a) of this section." 20 U.S.C. § 1413(g)(1)(B). IDEA further states that when a party brings a civil action pursuant to its provisions, the court, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).

The Supreme Court itself has highlighted that

> [t]he ordinary meaning of these words confers broad discretion on the court. The type of relief is not further specified, except that it must be "appropriate." Absent other reference, the only possible interpretation is that the relief is to be "appropriate" in light of the purpose of the Act [which is] principally to provide handicapped children with a [FAPE].

*Sch. Comm. of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985). IDEA litigation in the lower courts has reinforced the role of the courts in holding SEAs responsible for fulfilling their obligations under IDEA when local education agencies fail to do so. The Ninth Circuit has held that "[i]t would seem incontrovertable that, whenever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child 'can best be served' on the regional or state level." *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1492 (9th Cir. 1986). In the FACD, the parties in this case have agreed that the CDE is obligated to fulfill this responsibility as well:

3

4.1 Responsibilities to Class Members

CDE is responsible under federal and state law to ensure that children with disabilities who reside in Ravenswood have a free appropriate public education provided to them in the least restrictive environment. As part of this responsibility, CDE shall implement an effective monitoring system and complaint resolution procedure. CDE shall ensure Ravenswood's performance of all its obligations under this Decree. CDE's obligations shall continue until the Court makes the determination pursuant to Paragraph 18.10 below.

Aside from these particular provisions in statutory law, case law, and the FACD, that the Court has the authority to enforce its own orders and modify its own consent decrees is a well-established maxim of structural reform litigation. *See, e.g.*, *Rufo v. Inmates of Suffolk County*, 502 U.S. 367, 380-81 (1992) ("The upsurge in institutional reform litigation since *Brown v. Board of Education* . . . has made the ability of a district court to modify a decree in response to changed circumstances all the more important. Because such decrees often remain in place for extended periods of time, the likelihood of significant changes occurring during the life of the decree is increased . . . . The experience of the District Courts of Appeals in implementing and modifying such decrees has demonstrated that a flexible approach is often essential to achieving the goals of reform litigation.") (internal citations omitted). Furthermore, in this case, the FACD specified the role of the Court in the continued management of this case during the period of the applicability of the FACD:

7.1 The Court shall have continuing jurisdiction of this action to ensure compliance with this Decree.

7.2 If, at any time after the Monitor has issued at least two monitoring reports pursuant to Paragraph 6.1.2 above, the Monitor or a Party believes that the District or CDE has failed to comply with its obligations under this First Amended Decree (including any obligations under the Revised RCAP), the Monitor or the Party, after conferring with Ravenswood or CDE in an effort to resolve the dispute, may request that the Court issue an Order to Show Cause re Contempt.

7.3 The Monitor or a Party may request that the Court issue any other order at any time.

For all of these reasons, the Court is well within its legal authority to consider Plaintiffs' motion, possesses continuing jurisdiction to ensure compliance with the FACD, and is free to order whatever "appropriate" remedy it may choose to rectify the egregious

4

1  civil rights violations that continue to plague children with disabilities in Ravenswood City
2  Schools.
3  **Discussion**
4      In light of the Court's authority in this case to order an appropriate remedy in the
5  situation of IDEA litigation, and to modify a consent decree in the instance of changed
6  circumstances, that a new strategy for improving both service provision to the Plaintiff class
7  and implementation of the RSIP is necessary in this case is obvious to the Court. Service
8  deprivations and RSIP noncompliance are not merely pervasive, they are increasing. For
9  example, the Court Monitor's 2008 Compliance Trends Report concluded that during the
10 2007-08 school year, after removing the students for whom no determination could be made
11 from the data (due to the District's failure to comply with the RSIP's staff timelog
12 requirement; see below), the percentage of students who did not receive all adaptations,
13 supports, and modifications called for in their IEPs was 42%; the percentage of students who
14 did not receive all instructional and related services was 69.4%. These figures declined
15 dramatically from the prior year. In addition, the District's level of compliance with the staff
16 timelog requirement decreased dramatically, and the extent to which the District provided
17 parents with compliant quarterly progress reports declined significantly.
18     Further, the District's rate of notifying parents that their child was entitled to
19 compensatory education also declined significantly. In addition, the District's compliance
20 with the two RSIP IEP requirements declined significantly, by 20% with one and by 30%
21 with the other. Finally, the District's level of compliance with sending out compliant IEP
22 notices within timeline and in primary language declined precipitously to the lowest level
23 ever achieved by the District; the extent to which the District provided parents with
24 assessment reports five days prior to IEP meetings in their primary language declined
25 dramatically, also to the lowest level ever achieved by the District; and, after years of
26 progress, the District's compliance with the requirement concerning interpretation at IEP
27 meetings declined significantly. These painful facts paint a picture of a school district in dire
28 need of significant assistance from California's SEA, assistance clearly contemplated and

5

1  mandated by the IDEA statute.  Thus, whatever concerns any party may have with Plaintiffs'
2  proposal, it is clear to the Court that the existing language of the FACD and RSIP has thus
3  far been inadequate to achieve compliance with federal law.  As a result, remaining wedded
4  to the status quo of the existing FACD seems a prescription for continued failure to enforce
5  disabled students' civil rights to a free appropriate public education.

6  It is in recognition of these current facts in the case that the Court must assess the
7  proposed modification before it.  As an initial matter, it is important to note that both the
8  Plaintiff class and the District have thrown their support behind this proposal.  The substance
9  of the proposal before the Court is essentially a process-oriented solution to the current
10 problems.  In summary, the Plaintiffs' proposed plan entails two major changes from the
11 existing FACD.  First, it contains a mandatory process by which the parties will seek
12 agreement about how to rectify service deprivations and instances of noncompliance with the
13 FACD and RSIP.  Second, in instances where the parties are unable to reach an agreement, it
14 specifies a conflict-resolution process that relies on the Court Monitor as a first-line
15 mediator, with ultimate resort to the Court to order resolution.  The Court will refer to this
16 two-step process as the "Additional Corrective Actions Process," whereby the parties will
17 first meet and confer to agree on corrective actions to rectify instances of noncompliance;
18 and, second, if the parties cannot agree, the Court Monitor, and ultimately the Court, will
19 consider the proposed corrective actions and issue, respectively, a directive or order that sets
20 forth steps designed to ameliorate the noncompliance with the FACD and RSIP.

21 The Additional Corrective Actions Process proposal appears carefully tailored to
22 overcome the inaction that has recently prevented progress in compliance with the RSIP and
23 FACD.  When instances of noncompliance have been reported by the Court Monitor, it has
24 been unclear to the Court how the Defendants were working to change processes in order to
25 improve compliance.  The Additional Corrective Actions Process proposal here before the
26 Court offers a procedure through which the Defendants can commit to new methods for
27 working toward compliance.  Further, it removes the Court from constant substantive
28 engagement in the mundane details of the daily operation of the consent decree, and returns

6

the Court to its proper role of resolving conflict between the parties when they fail to reach agreement. In short, it appears that the Additional Corrective Actions Process will help the parties partner to achieve their collective goal of providing FAPE in the LRE to the disabled students of Ravenswood School District. Rather than being vague, as the CDE asserts, the Additional Corrective Actions Process appears to the Court to be adaptable to a wide variety of circumstances and to offer the kind of flexibility necessary to creatively work toward compliance.

The Court's residual concern with the Additional Corrective Actions Process as it is proposed is the allocation of the expenses associated with modification to the FACD. First, Plaintiffs seek to assign to the CDE all costs arising from any corrective action agreed to under or ordered by the Additional Corrective Actions Process. Second, the proposal further allocates to the CDE all costs associated with the provision of technical and software assistance to the CDE. These allocations are premature and fail to reflect the collective nature of the obligation jointly shouldered by the CDE and the District to provide FAPE in the LRE to the Plaintiff class.

As a result, the Court has modified the proposed Additional Corrective Actions Process to reflect a more equitable allocation of costs. First, as a general rule, the costs of any additional corrective action resulting from the Process shall be divided between the Defendants according to the cost allocation ratio for the RSIP budget for that school year. Any party objecting to the application of that allocation ratio in a specific instance may register its objections with the Court Monitor pursuant to the second step of the Additional Corrective Actions Process. The CDE may seek variance from this ratio by demonstrating that the District is already funded to perform the task agreed to as a corrective action; the District may seek variance from this ratio by demonstrating that its existing resources are insufficient to perform the corrective action competently. Second, as to the costs of technical and software assistance, the Court hereby instructs the parties to submit this need and its associated costs to the Additional Corrective Actions Process. Accordingly, the Court has adapted the proposed modification to reflect these alterations from the proposal.

7

**CONCLUSION AND RECOMMENDATION**

In light of continued noncompliance with the RSIP, the Court observes that the current language of the FACD has been insufficient to guarantee provision of a free appropriate public education to the Plaintiff class. For the foregoing reasons, the Court hereby MODIFIES the First Amended Consent Decree with the attached language of the Additional Corrective Actions Process. As the papers in this matter were sufficient to resolve the motion, no oral argument is necessary. Accordingly, the hearing currently scheduled for March 4, 2009, is VACATED.

**IT IS SO ORDERED.**

Dated: February 24, 2009

Thelton E. Henderson
United States District Judge