United States District Court

For the Northern District of California

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4

5    EMMA C., et al.,

6                         Plaintiff,                    NO. C96-4179 TEH

7              v.                                       ORDER DENYING MOTIONS
                                                        OBJECTING TO THE
8    DELAINE EASTIN, et al.,                            MONITOR'S JULY 16, 2012
                                                        DETERMINATIONS
9                         Defendants.

10

11         This matter comes before the Court on motions by Plaintiffs and Defendant California

12   Department of Education ("CDE") objecting in part to the Monitor's July 16, 2012

13   determinations.  Having carefully considered the parties' oral and written arguments, the

14   Court DENIES both motions for the reasons set forth below.

15

16   **BACKGROUND**

17         The current disputes between Plaintiffs and CDE center on Section 13.0 of the First

18   Amended Consent Decree ("FACD"), which sets out the process by which this case will

19   eventually be brought to a close.  That section provides as follows:

20

21         **13.0    Determination that [a free, appropriate public education
                     ("FAPE")] is Provided and that CDE has an Effective**
22         **Monitoring System in Place**

23         If, after considering motion(s) of Defendants and any opposition thereto,
           and after conducting an Evidentiary Hearing, if necessary, the Court
24         determines that (1) Ravenswood has complied with all the requirements of
           the Revised [Ravenswood Corrective Action Plan ("RCAP")]; and (2) **the**
25         **state-level system in place is capable of ensuring continued compliance**
           **with the law and the provision of FAPE to children with disabilities in**
26         **Ravenswood**, there shall be a rebuttable presumption that there exists in
           Ravenswood a system capable of providing FAPE to class members and in
27         CDE a system to adequately monitor, supervise and ensure FAPE to class
           members.  To overcome this presumption, the Class Members must

28

1    affirmatively demonstrate, with specific evidence, that Ravenswood does
2    not have a system capable of providing FAPE to Class Members.

     At any time after an appropriate hearing, the Court may order any
3    appropriate relief, including ordering the District to continue its efforts to
     comply with the Revised RCAP, modifying the scope and terms of the
4    revised RCAP, ordering the CDE to continue certain monitoring
     obligations, or dismissal with prejudice of Ravenswood and CDE in the
5    event that they have complied with the terms of this Decree and
     Ravenswood has a system capable of providing FAPE to Class Members.
6

7    FACD § 13.0 (emphasis added).

8        Over the past year and a half, the Court has issued several orders concerning Section

9    13.0 as it relates to CDE.  In a July 25, 2011 order, the Court directed the parties to address

10   in their next status conference statements, "the relevance of [Section 13.0], how [CDE's]

11   compliance with this requirement should be measured, and when such measurement should

12   begin."  (Docket No. 1640.)  The status conference statements filed by CDE and Plaintiffs on

13   November 30, 2011 set forth the parties' divergent views about how CDE's compliance with

14   Section 13.0 should be assessed.  CDE asserted that Section 13.0's requirement that its

15   system be "capable of ensuring continued compliance with the law and the provision of

16   FAPE to children with disabilities in Ravenswood" was met by its state-level monitoring

17   system and requested that the Court so find.  (Docket No. 1670 at 5-7.)  Plaintiffs argued that

18   CDE should be required to demonstrate that its monitoring system (1) conforms with the

19   requirements of the Individuals with Disabilities Education Act ("IDEA"), the Americans

20   with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("RA"); (2) is

21   effective in ensuring Ravenswood's current compliance with the applicable laws; and (3) is

22   capable of ensuring Ravenswood's future compliance.  Plaintiffs also requested that the

23   Court expand the Monitor's role to include reviewing and reporting on CDE's statewide

24   monitoring system as it applies to Ravenswood.  (Docket No. 1669 at 10-11.)

25       Noting this disagreement, the Court issued an order on December 12, 2011 directing

26   the parties to meet and confer about how CDE's compliance with Section 13.0 should be

27   assessed and to report on their progress in a joint statement to the Monitor.  Between January

28   and June of this year, Plaintiffs, Ravenswood, and the California Department of Education

("CDE") met and conferred, producing a series of four joint statements documenting their progress toward reaching an agreement.

In their Fourth Joint Statement, the parties reported that they had agreed to a general plan for CDE's monitoring work in Ravenswood.  However, they were unable to agree on standards and processes for evaluating the design and effectiveness of CDE's monitoring system.  Additionally, the Parties highlighted CDE's "assertion that recent federal decisions may indicate that the federal Office of Special Education Programs' acceptance of CDE's statewide monitoring system establishes its sufficiency to ensure FAPE in the district." (Docket No. 1728 at 4.)  In short, while the parties had made significant progress in their negotiations, they continued to disagree about the basic criteria for determining whether CDE had fulfilled its obligations under Section 13.0 and about the Court's role in that determination.

The Court's December 12, 2011 Order tasked the Monitor with issuing a report setting out his determinations with regard to any disagreements between the parties and directed the parties to raise any objections they had to the Monitor's determinations in the form of a motion to the Court.  On July 16, 2012, the Monitor issued his report.

The parties' objections to the Monitor's July 16, 2012 determinations are currently before the court.  Plaintiffs object only to the Monitor's determination that they had not demonstrated a present need for a court-appointed expert to evaluate and report on CDE's monitoring of Ravenswood.  CDE makes a global argument that the Court should decline to exercise jurisdiction over CDE's monitoring system because the Office of Special Education Programs ("OSEP") under the United States Department of Education ("USDOE") evaluates CDE's statewide monitoring system and continues to fund CDE.  In addition, CDE raises two specific objections to the Monitor's determinations: the first to the general standard for evaluating CDE's statewide monitoring system as set out in the Monitor's July 16, 2012 determinations, and the second to the Monitor's determination that Plaintiffs should have broad access to documentation relating to CDE's monitoring of Ravenswood.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

**DISCUSSION**

**I.   Plaintiffs' objection[1]**

Plaintiffs request that the Court appoint "an independent expert, either the Court Monitor or an individual selected by the Court Monitor, to make periodic assessments of the appropriateness and efficiency of State Defendants' actual monitoring work in Ravenswood as it is carried out." (Docket No. 1743 at 4.) They contend that "[w]ithout the benefit of any expert review, all parties will be at a loss as to the efficacy of the State's monitoring system and the ultimate determinations that have to be made about it." (Docket No. 1734 at 5.)

Plaintiffs have not demonstrated any exceptional condition or factual dispute that warrants the addition of expert assessments of the appropriateness and efficiency of CDE's monitoring work in Ravenswood at this time.[2] No dispute currently exists between the parties concerning the adequacy or efficacy of CDE's monitoring work. It is possible that such a dispute will arise during the course of the monitoring work that is now being performed and will be performed in the 2013-14 school year. But it would be inappropriate for the Court to presume that a dispute will arise, particularly since no concerns about CDE's monitoring arose during the most recent prior monitoring events, which took place in 2006 and 2007. While Plaintiffs have informed the Court that they have hired an expert to evaluate the design of CDE's monitoring system, they have not yet put any evidence in the

_____

[1] The current Monitor in this case was appointed under Rule 53. Under Rule 53, the Court reviews *de novo* the Monitor's legal conclusions and any findings of fact to which a party has objected. Fed. R. Civ. P. 53(f)(3) & (4).

[2] The parties disagree about whether the Court should apply Rule 53 or Rule 706 of the Federal Rules of Civil Procedure in deciding whether to add expert evaluation of CDE's monitoring work. But the Court need not rule on this issue because Plaintiffs have not demonstrated to the Court's satisfaction that expert assessments of CDE's monitoring work are warranted under either Rule. Both Rules afford the Court broad discretion to appoint an independent expert and to determine the scope of the expert's duties. *See Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 558 F.3d 1341, 1346 (Fed. Cir. 2009); *Jaros v. E.I. DuPont* (*In re Hanford Nuclear Reservation Litig.*), 292 F.3d 1124, 1138 (9th Cir. 2002). However, courts "strictly apply Rule 53 to require a showing of exceptional conditions to justify the appointment." *Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.2d 1064, 1071 (9th Cir. 1991). Similarly, courts generally invoke Rule 706 only when a factual dispute arises that independent expert testimony would be helpful in resolving. *See Gorton v. Todd*, 793 F.Supp. 2d 1171, 1181 (E.D. Cal. 2011).

United States District Court

For the Northern District of California

record demonstrating design deficiencies that might render CDE's monitoring system incapable of ensuring compliance with the law and the provision of FAPE to children with disabilities in Ravenswood.  In short, Plaintiffs have not yet demonstrated to the Court's satisfaction that the addition of expert monitoring of CDE's monitoring is warranted.[3]

## II.     CDE's objections

### A.    Objection to the Court's exercise of jurisdiction over CDE's monitoring

CDE argues that, since Congress has vested the USDOE with jurisdiction to evaluate the adequacy of CDE's statewide system for monitoring the provision of FAPE, this Court should defer to the USDOE's OSEP and decline to exercise its own jurisdiction.  CDE purports to base this argument on the Supreme Court's recent decision in *Douglas v. Independent Living Center of Southern California*, 132 S. Ct. 1204 (2012), but *Douglas* is inapposite.  In *Douglas*, the Court considered whether a Supremacy Clause challenge to a state statute could be maintained after the federal agency tasked with administering the relevant federal statute determined that the state statute was a valid implementation of the federal statute.  *Id.* at 1211.  Suggesting that deference might be due to the federal agency's intervening interpretation of the statute, and that the case should perhaps proceed under the Administrative Procedure Act rather than the Supremacy Clause, the Court remanded the case for further proceedings.  *Id.* at 1210-11.  CDE's attempt to draw an analogy between the agency decision in *Douglas* and OSEP's approval of CDE's monitoring system in the present case falls flat.  CDE has not presented any evidence that OSEP has issued a ruling on the question presented in this case – whether CDE's monitoring system is "capable of ensuring continued compliance with the law and the provision of FAPE to children with disabilities in Ravenswood."  FACD § 13.0.  And even if OSEP had ruled on that precise question, *Douglas* at most suggests that OSEP's decision would be entitled to some level of deference

---

[3] The Monitor, through the dispute resolution process, is to make initial determinations related to any future disputes that might arise with regard to the design and implementation of CDE's monitoring system, including whether any deficiencies that may be identified therein warrant the addition of expert assessments of CDE's monitoring work. Any objections to the Monitor's determinations may be brought to the Court in the form of a properly noticed motion.

United States District Court

For the Northern District of California

1    – it in no way implies that the Court should decline to exercise its jurisdiction.  *See id.* at

2    1210 ("All parties agree that the agency's approval . . . does not make these cases moot.").

3         Alternately, CDE contends that the Tenth Amendment precludes the Court from

4    exercising jurisdiction over CDE's monitoring.  In support of this argument, CDE cites to the

5    Ninth Circuit's recent opinion in *Sauer v. United States Department of Education*, 668 F.3d

6    644 (9th Cir. 2012).  *Sauer* presented an issue of statutory construction: whether the

7    Randolph-Sheppard Vending Stand Act should be interpreted to impose upon a state agency

8    a duty to sue a federal agency to enforce an arbitration award in favor of an individual

9    vendor.  *Id.* at 654.  After concluding that the Act's plain language did not impose such a

10   duty, the court further observed that the Tenth Amendment's anti-commandeering principle

11   may be violated if "legislation compels a state to participate in a federal program without its

12   knowing agreement to the conditions of participation."  *Id.* at 652-53.  Because the Act at

13   issue in *Sauer* did not "clearly require participating states to sue federal agencies that refuse

14   to comply with an arbitration award," the state did not knowingly agree to file such suits

15   when it accepted federal funding under the Act.  *Id.*  On this basis, the court concluded that

16   "the canon of constitutional avoidance counsels us to interpret the Act as not imposing such a

17   condition on the states' participation in the vendor program."  *Id.*

18        CDE argues that, under *Sauer*, "as a recipient of Spending Clause funds, CDE is

19   protected by the Tenth Amendment from this Court's imposition of new or additional

20   conditions upon its participation in the IDEA."  (Docket No. 1774 at 9.)  Setting aside the

21   fact that *Sauer* does not hold that the Tenth Amendment precludes courts from interpreting

22   spending clause legislation in a way that contradicts a federal agency's interpretation, the

23   Court's exercise of its jurisdiction in the present case in no way entails the imposition of new

24   or additional conditions upon CDE's participation in the IDEA.  Section 13.0 of the consent

25   decree requires CDE to demonstrate that it has in place a system "capable of ensuring

26   continued compliance with the law and the provision of FAPE to children with disabilities in

27   Ravenswood," as it is required to do by the IDEA.  *See* 20 U.S.C. § 1412(a)(11) (tasking

28   state education agencies with the responsibility of ensuring that the IDEA's requirements are

6

United States District Court

For the Northern District of California

met).  The *Sauer* court's concern about reading federal spending clause legislation to implicitly impose on a state a duty not found in the words of the statute does not come into play here.

Moreover, to the extent that Section 13.0 could be interpreted as compelling CDE to do something beyond what it already is required to do in order to comply with federal law, CDE agreed to comply with Section 13.0 when it entered into the First Amended Consent Decree in 2003.  This commitment does not constitute a condition on CDE's participation in the IDEA of which it was previously unaware.

Finally, CDE points out that the IDEA does not provide a private right of action for challenging the DOE's approval of a state plan, and that no such right of action is available under the APA.  This argument is irrelevant to the questions before the Court.  Plaintiffs do not seek to challenge OSEP's alleged approval of CDE's monitoring plan.  Rather, they seek to hold CDE to its obligations under federal law and the First Amended Consent Decree. The IDEA expressly gives disabled children and their parents a private right of action to enforce their substantive and procedural rights under the Act, which is available in a suit against a state to the same extent that it is available in a suit against a school district.  20 U.S.C. §§ 1403(b), 1415.  And the provisions of a consent decree are judicially enforceable in and of themselves.  *See Local No. 93*, *Intern. Ass'n of Firefighters*, *AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986) ("[I]n addition to the law that forms the basis of the claim, the parties' consent animates the legal force of a consent decree.").

For the above reasons, the Court concludes that the OSEP's evaluation and continued funding of CDE does not, and should not, constrain the Court's jurisdiction to determine whether CDE has met its obligations under federal law and under Section 13.0 of the First Amended Consent Decree.[4]

**B.   Objection to the general standard for evaluating CDE's monitoring system**

---

[4]  Of course, the Court may take into consideration any relevant OSEP findings in determining whether CDE has satisfied § 13.0.

In their Fourth Joint Statement, the parties agreed that CDE's fulfillment of Section 13.0 would be assessed by determining whether CDE's monitoring is capable of ensuring compliance in 26 RSIP areas selected by the parties as well as "educational benefit." However, they disagreed about the standard to be used for determining whether CDE's monitoring system was capable of ensuring compliance in each of these areas.  The Monitor determined that the following general standard should apply:

> [For each of the twenty-six (26) RSIP areas and the education benefit addressed in this Framework,] whether CDE's statewide monitoring system, as applied to Ravenswood, has been implemented **adequately**; has identified both compliance and noncompliance **appropriately** based on **adequate** evidence and reasoning; and has resulted in **appropriate** corrective actions, the implementation of required corrective actions, and the **timely** correction of identified noncompliance.

(Docket No. 1734 at p. 6.) (emphasis added).

CDE objects to the Monitor's inclusion of the terms "adequately," "appropriately," "appropriate," and "timely" in the general standard.  In line with its arguments related to the Court's jurisdiction, discussed above, CDE argues that these terms should not be included because the Court "need only determine the existence of a statewide monitoring system, and may defer to the responsible federal agency, the United States Department of Education, on its sufficiency and adequacy."  (Docket No. 1766 at p. 5.)  The Court rejects this argument for the reasons discussed above: the USDOE has not made a specific determination that CDE's monitoring system is capable of ensuring compliance with the law and provision of FAPE in Ravenswood, and even if it had, such a determination would not be dispositive.

CDE also argues, in a cursory manner, that the qualifiers to which it objects "do not provide a specific and objective measure necessary for determining the adequacy of the monitoring system."  (Docket No. 1766 at p. 5.)  But rather than proposing more specific language, CDE advocates the removal of the only words in the general standard that provide a basis for evaluating whether CDE's monitoring system is "capable of ensuring continued compliance with the law and the provision of FAPE to children with disabilities in Ravenswood," as required by Section 13.0.  The Court rejects CDE's invitation to gut

**United States District Court**
For the Northern District of California

1 Section 13.0.  The fact that CDE has a monitoring system in place is insufficient to support a

2 finding that CDE can meet its legal responsibilities to children with disabilities in

3 Ravenswood.

4      **C.**    **Objection to mandatory disclosure of documents**

5      CDE objects to the Monitor's determinations that: (1) Plaintiffs, upon request, must be

6 provided with "all evidence" for the purpose of evaluating the adequacy of the Special

7 Education Self Review to be conducted by the District or the Verification Review to be

8 conducted by CDE; and (2) "Plaintiffs should be granted full access to information necessary

9 to form judgments regarding the effectiveness of CDE's monitoring efforts in the District."

10 (Docket No. 1374 at 8.)  For the reasons discussed above, the Court is unpersuaded by

11 CDE's contention that the information it has already produced regarding the design of its

12 statewide monitoring system and OSEP's evaluation of its monitoring system is sufficient.

13 Access to evidence and information relating to CDE's monitoring activities in Ravenswood

14 is crucial to Plaintiffs', and ultimately the Court's, evaluation of CDE's monitoring system as

15 it is implemented in Ravenswood.

16      CDE also contends that responding to plaintiffs' requests for evidence and information

17 may be overly burdensome or may implicate disclosure of privileged information.  These

18 eventualities are not valid grounds for limiting Plaintiffs' access to information about CDE's

19 monitoring activities in Ravenswood as a general matter.  If CDE objects to any specific

20 request for information or evidence, it may raise its objection with the Monitor pursuant to

21 the dispute resolution process.

22

23 **CONCLUSION**

24      For the reasons elaborated above, the Court DENIES both parties' motions and

25 overrules their objections to the Monitor's determinations in their entirety.  The Court

26 expects that its ruling on these motions will allow the parties to reach full agreement on

27 CDE's obligations under Section 13.0 of the First Amended Consent Decree.  Accordingly,

28 IT IS HEREBY ORDERED that the parties shall consult with the Monitor and file, on or

1    before **December 21, 2012**, a stipulation and proposed order describing the process by which

2    CDE's compliance with Section 13.0 will be evaluated.  The stipulation and proposed order

3    shall incorporate relevant agreements set out in the Fourth Joint Statement and the October

4    24, 2012 Joint Supplemental Brief and shall account for the Monitor's determinations and

5    this Order.  If the parties cannot reach full agreement by that date, they shall file a joint

6    statement discussing the areas of agreement and disagreement.

8    **IT IS SO ORDERED.**

10   Dated:      11/26/2012

     THELTON E. HENDERSON, JUDGE
     UNITED STATES DISTRICT COURT