UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMMA C., et al.,

             Plaintiffs,

       v.

DELAINE EASTIN, et al.,

             Defendants.

Case No.  96-cv-04179-TEH

**ORDER DENYING STATE
DEFENDANTS' MOTION TO STAY
IMPLEMENTATION OF THE
FINAL CDE CORRECTIVE ACTION
PLAN**

United States District Court
Northern District of California

     This matter came before the Court on November 23, 2015 for a hearing on State Defendants' Motion to Stay Implementation of the Final CDE Corrective Action Plan. After carefully reviewing the parties' written and oral arguments, the Court hereby DENIES State Defendants' motion, for the reasons stated below.  However, recognizing that clarification was needed, the Court hereby ORDERS that the effective date of the Final Corrective Action Plan shall be the date of this Order.

**BACKGROUND**

     As this case has been before the Court for almost two decades, the facts are well-known and recorded elsewhere, and an exhaustive history is unnecessary for this motion. Thus, the Court provides only a brief summary of the pertinent procedural background.

     The Court approved the First Amended Consent Decree ("FACD") and the Ravenswood Self Improvement Plan ("RSIP"), which provided a roadmap for Defendants' compliance with their legal obligation to provide free appropriate public education ("FAPE") in the lease restrictive environment ("LRE").  Section 13.0 of the FACD established the standard for determining whether the State Defendants should be released from Court supervision:

> If, after considering the motion(s) of Defendants and any opposition thereto, and after conducting an Evidentiary Hearing, if necessary, the Court determines: … the state-level system in place is capable of ensuring continued compliance with the law and the provision of FAPE to children with disabilities in Ravenswood, there shall be a rebuttable presumption that there exists in … CDE a system to adequately monitor, supervise and ensure FAPE to Class Members.

FACD § 13.0 (Docket No. 833).

On July 25, 2011, the Court recognized that "[u]nder FACD section 13.0, the Court must also eventually determine whether the state-level monitoring system in place is capable of ensuring continued compliance with the law and provision of a [FAPE] to children with disabilities in Ravenswood."  July 25, 2011 Order at 1 (Docket No. 1640). The Court instructed the Parties to address "the relevance of [Section 13.0], how [CDE's] compliance with this requirement should be measured, and when such measurement should begin."  *Id.*

The Parties met and conferred on the issue of state monitoring, and on December 12, 2011, the Court tasked the Monitor with issuing a report containing his determinations on the issues on which the Parties had not yet agreed.  (Docket No. 1674).  The Parties were invited to raise any objections to the determinations in a motion.  *Id.*  On July 26, 2012, in response to briefing and oral arguments by the Parties, the Court denied the Parties' objections to the Monitor's determinations and adopted the Monitor's "General Standard" to assist in determining CDE's compliance with Section 13.0.  Order Denying Objections at 7-9 (Docket No. 1793).  The "General Standard" requires that the CDE's statewide monitoring system is implemented adequately; identifies compliance/noncompliance appropriately based on adequate evidence and reasoning; and results in appropriate corrective actions, implementation of required corrective actions, and the timely correction of identified noncompliance.  *Id.* at 7-9.

On December 21, 2012, after negotiating through a series of joint statements, the Parties stipulated to a framework for evaluating the adequacy of CDE's state-level system for ensuring FAPE.  Fifth Joint Statement at 2 (Docket No. 1799).  Over the ensuing

2

United States District Court
Northern District of California

1    months, the Parties followed this framework, which included Plaintiffs' submission of

2    objections to the state-level monitoring system, State Defendants' responses, and the

3    Monitor's issuance of Determinations, which recommended the development of a CAP.

4    Monitor's Determinations at 87 (Docket No. 1890).  Pursuant to the framework adopted in

5    the Fifth Joint Statement, State Defendants filed a motion objecting to and seeking to set

6    aside the determinations.  (Docket No. 1911).

7          On July 2, 2014, the Court denied the State's motion and approved the

8    Determinations in full, ordering the Parties to proceed with the steps outlined in the

9    Monitor's determinations report.  After almost two months[1], on August 20, 2014, State

10   Defendants appealed the July 2, 2014 Order, and also sought an "expedited ruling" on a

11   motion to stay corrective actions pending its appeal.  (Docket No. 1980).  This Court

12   denied the State Defendants' stay request, and a stay was also denied by the Ninth Circuit.

13   (Docket Nos. 1968, 1971, 1982).

14         The Court issued an Order on January 15, 2015, providing the process for

15   developing a Draft CAP that would allow the Parties an opportunity to provide input to the

16   Monitor and be heard on any objections.  (Docket No. 2013).  However, the Court

17   specifically instructed the parties not to re-argue the "substance of the Determinations."

18   *Id.* at 1.

19         The Monitor issued the Draft CAP on February 12, 2015, which was met by

20   objections by the State Defendants.  The Monitor addressed those objections in a May 14,

21   2015 Memorandum, noting that many of the objections were aimed at the substance of the

22   Determinations "in the guise of objections to the CAP," or were objections to the Court's

23   imposition of a CAP in general.  Monitor's May 14, 2015 Memorandum at 2.  (Docket No.

24   2043).  In response, State Defendants filed a motion to set aside the Draft CAP, which –

25   after carefully considering the Parties' briefing and oral arguments – the Court denied in an

26

27   _____

[1] Plaintiffs highlight this delay in their briefing because they believe the State Defendants
are unduly delaying the process through a series of motions and appeals, and systematic
rejection of the Monitor and Court's findings and orders.  Opp'n at 5-6 (Docket No. 2113).
28   The Court need not comment on this argument.

3

1   Order on August 25, 2015.[2]  (Docket No. 2095).  The State Defendants appealed the

2   August 25, 2015 Order, and moved to consolidate the appeal with the appeal already

3   pending before the Ninth Circuit.  Notice of Appeal (Docket No. 2102).

4        On October 12, 2015, the State Defendants filed this motion to stay implementation

5   of the Final CAP.  (Docket No. 2108).  Plaintiffs timely filed an opposition, and

6   Defendants timely replied.

7

8   **LEGAL STANDARD**

9        A district court has "inherent power to control … its docket in a manner which will

10  promote economy of time and effort for itself, for counsel, and for litigants."  *CMAX, Inc.*

11  *v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  In considering whether to grant a stay, the

12  Court weighs the following factors, using its discretion to decide how much weight to

13  afford each factor:

15        (1) whether the stay applicant has made a strong showing that
16        he is likely to succeed on the merits; (2) whether the applicant
          will be irreparably injured absent a stay; (3) whether issuance
          of the stay will substantially injure the other parties interested
17        in the proceeding; and (4) where the public interest lies.

18  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  State Defendants, as the party requesting

19  the stay, bear the burden of showing that the circumstances justify an exercise of the

20  Court's discretion.  *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)

21        A stay is "an exercise of judicial discretion."  *Id.* at 433.  However, stays must be

22  denied to all moving parties who do not meet a threshold showing of irreparable harm,

23  regardless of their showing on the other factors.  *Leiva-Perrez v. Holder*, 640 F.3d 962,

24  965 (9th Cir. 2011) (citing *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998).  But, "[b]y

25  the same token, even certainty of irreparable harm has never *entitled* one to a stay."  *Id.*

26  (citing *Nken*, 556 U.S. at 432).

27  ────────────────

28  [2] Notably, neither the Monitor's May 14, 2015 Memorandum nor the Court's August 25, 2015 Order explicitly stated a date when the Draft CAP would become the Final CAP.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**DISCUSSION**

The Court addresses each of the stay factors in turn.

**I.      Likelihood of Success on the Merits**

The State Defendants argue that they are likely to prevail on appeal, mainly because the CAP is unenforceable.  They contend that (1) neither the FACD's plain language nor the equitable powers that flow from the FACD provide authority for the CAP's implementation, and the State Defendants never consented to a CAP; (2) the CAP is not supported by evidentiary findings of liability; and (3) Plaintiffs lack a private right of action to challenge CDE's state monitoring system."  Mot. at 2, 5 (Docket No. 2108).  For the reasons stated below, the Court finds that State Defendants have not made a strong showing of likelihood of success on the merits.

**A.      The CAP Is Enforceable**

State Defendants note that the Court previously confirmed its authority to order implementation of the CAP based on the parties' agreement to enter into the FACD, which signified consent to the Court's authority.  *See* August 25, 2015 Order at 7-8 (Docket No. 2095).  State Defendants contend that the Court, in its August 25, 2015 Order, "cobbles together provisions from various parts of the [FACD]…[to] grant[] broad authority over CDE's state monitoring system," and that such a reading alters the agreement as written. Mot. at 6.  State Defendants argue that if the Court were to correctly read the FACD in its entirety and give it context, the Court would see that the FACD is "focused primarily on the District's fulfillment of the Revised RCAP, and secondarily on CDE's oversight of the District's compliance," and that "any orders under Section 6.1.7 to implement the FACD must serve on of these purposes."  Mot. at 7.

The Court finds that the CAP is a valid order under both the plain language of the FACD and pursuant to the Court's equitable powers to enforce its own orders.  *See, e.g.,* FACD § 6.1.7 ("The Monitor or the Plaintiffs may request that the Court issue an order to

5

United States District Court
Northern District of California

1   implement [the FACD]."); § 7.1 ("The Court shall have continuing jurisdiction over this

2   action to ensure compliance [with the FACD]."); § 15.0 ("[The FACD] shall become a

3   Decree of the Court, and shall be enforced as an order entered by [the Court].").  The

4   enforceability of the CAP is examined at length in the Court's August 25, 2015 Order at

5   pages 6-10, and as State Defendants have presented no new arguments since that Order,

6   the Court sees no need to re-address the arguments.

7

8             **B.      The Court Was Not Required to Hold an Evidentiary Hearing**

9             State Defendants argue that the Court initiated a process for evaluating CDE's state

10  monitoring system in its July 25, 2011 order, and that the process gave State Defendants a

11  right to an evidentiary hearing to determine whether "the state-level monitoring system is

12  capable of ensuring continued compliance with the law."  July 25, 2011 Order (Docket No.

13  1640).  State Defendants contend that they were deprived the right to an evidentiary

14  hearing, and thus the CAP may not be enforced.

15            The Court addressed this issue in its August 25, 2015 Order, and reiterates here that

16  the evidentiary hearing is only afforded to State Defendants "if necessary for the Court to

17  determine whether they have met their legal obligations in this case such that they are

18  entitled to release."  August 25, 2015 Order at 10 (internal quotation marks omitted).  This

19  language is taken directly from Section 13.0 of the FACD.  While the Fifth Joint Statement

20  references the possibility of an evidentiary hearing, the section at issue is couched in

21  permissive language[3] that makes it clear the Court is not bound to a mandatory evidentiary

22  hearing.

23            As the Court has stated before, a judicial determination of liability is not necessary,

24  due to the Parties' agreement to enter the FACD.  See August 25, 2015 Order at 9 ("By

25

26  _____

27  [3] "Alternatively if the CDE does not meet its initial burden of proof, pursuant to the
    framework outlined in the Fourth Joint Statement, then a rebuttable presumption never
    arises and the parties anticipate the matter will be resolved in an alternate fashion by the
28  Court and the parties, such as an evidentiary hearing at CDE's request."  Fifth Joint
    Statement at 10.

6

United States District Court
Northern District of California

1    entering into the FACD and subsequent joint stipulations … State Defendants consented to

2    the Court's authority in this matter," and "[h]aving consented to the Court's authority to

3    avoid a finding of liability, State Defendants cannot now eschew the Court's authority

4    because no finding of liability was made.").

5

6    **C.     The Court Does Not Need to Find a Private Right of Action for Plaintiffs**

7    **to Have Standing to Enforce the Terms of the FACD.**

8    Finally, State Defendants argue that because the FACD does not permit the

9    imposition of a CAP on CDE's state monitoring system, that in order to seek a remedy,

10   Plaintiffs must assert a new right of action.  This argument fails because it is premised on

11   an assertion – that the CAP is unenforceable – which the Court has rejected time and time

12   again.  *See* Section I.A., *supra*.  As the Court has previously stated, "[w]hether Plaintiffs

13   have a private right of action to challenge the CDE's monitoring system is irrelevant in

14   light of the FACD."  August 25, 2015 Order at 9.

15   Furthermore, the Court finds that the FACD does in fact permit the imposition of a

16   CAP.  State Defendants agreed in Section 4.1 of the FACD that CDE would "implement

17   an effective monitoring system and complaint resolution procedure."  The Court is

18   unconvinced that an agreement to implement an "effective" monitoring system does not

19   also imply an agreement to be subject to evaluation and correction of a monitoring system

20   that is ineffective.

21

22   **D.     Thus, State Defendants Fail to Make a Strong Showing of Likelihood of**

23   **Success on the Merits**

24   As outlined above, State Defendants present no new arguments in the instant

25   motion that should cause the Court to delay implementation of the CAP on likelihood of

26   success grounds.  All of the arguments Defendants offer to support the "strong showing of

27   likelihood of success on the merits" are recycled arguments that have been dismissed by

28   this Court multiple times, and are pending before the Ninth Circuit.

United States District Court
Northern District of California

Finally, the level of deference afforded to district courts in institutional reform cases weighs against a finding of likelihood of success on appeal. The Ninth Circuit has acknowledged that, "[o]ver time, the district court gains an intimate understanding of the workings of an institution and learns what specific changes are needed within that institution in order to achieve the goals of the consent decree." *Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1121 (9th Cir. 2007) (quoting *Thompson v. U.S. Dep't of Hous. & Urban Devel.*, 404 F.3d 821, 827 (4th Cir. 2005)) (internal citations and quotations omitted). Based on its "extensive oversight" of a matter, the district court is "armed with a decade of knowledge about the case" – or, in this case, almost two decades of knowledge – that makes it "uniquely positioned" to evaluate defendants' efforts to comply with a consent decree. *Id.* at 1119, 1121.

The Court's finding that CDE's monitoring system was incapable of complying with the law was based on extensive briefing, the Court's own institutional knowledge, and the Monitor's comprehensive factual determinations,[4] which would not be overturned on appeal unless they are "clearly erroneous." Fed. R. Civ. Proc. 52(a)(6). For these reasons, there is not a strong showing of likelihood of success on the merits.

## II.    Irreparable Injury Absent a Stay

Although the Court finds that State Defendants' failed to meet their burden on the likelihood of success on the merits, a stay could nonetheless be warranted if State Defendants demonstrate irreparable harm in the absence of a stay. However, State Defendants continue to recycle arguments that have already been considered and rejected by the Court, and the one new argument they present only appears in their reply brief. State Defendants' two main arguments that they will suffer irreparable harm absent a stay

---

[4] It is worth noting that the Monitor himself also has extensive institutional knowledge of the case, as he has been involved in the case for over fifteen years. State Defendants not only refuse to acknowledge the Monitor's expertise, but go as far as accusing the Monitor (as well as Plaintiffs and the Ravenswood School District) of prolonging the case for pecuniary gain – an accusation that this Court finds erroneous and offensive. *See* CDE's Reply at 1 n.1 (Docket No. 2114).

United States District Court
Northern District of California

1    are (1) that the CAP will obstruct the CDE's exercise of discretion; and (2) that the CAP

2    denies the State due process.  CDE's Mot. at 12-16; CDE's Reply at 9-11.

3

4           **A.      The CAP Does Not Irreparably Injure State Defendants by Usurping**

5                     **Their Discretion or Denying Due Process Rights**

6           State Defendants argue that the CAP limits CDE's decision-making authority,

7    requires CDE to engage in corrective actions not required by the United States Department

8    of Education, requires CDE to maintain an outdated system, and provides no provision for

9    modification to accommodate acceptable alternative approaches.[5]  State Defendants cite

10   *Horne v. Flores*, 557 U.S. 433 (2009), for the proposition that harm results when state

11   officials are obstructed from carrying out their duties based on the overbroad application of

12   a consent decree – namely, that the CAP dictates state budget priorities and takes funds

13   away from other important programs state-wide, when the only deficiency was found in

14   Ravenswood.  State Defendants also argue that the FACD and the CAP are insufficiently

15   specific to be enforceable, and that their vagueness denies State Defendants due process.

16          State Defendants' arguments regarding discretion and due process have been

17   addressed and rejected by the Court.  *See* August 25, 2015 Order at 12-16.  Furthermore,

18   the contention that the CAP requires the CDE to maintain an outdated system is

19   unfounded.  The parties, through extensive negotiations, agreed on a meet-and-confer

20   process, outlined in the Fifth Joint Statement.  Simply because State Defendants regret the

21   results of a prior meet-and-confer (because it resulted in the CAP) does not mean that the

22   process is "capricious," or that the lack of a process in the CAP itself means that the

23   CDE's discretion has been violated.

24          The Court has also previously rejected State Defendants' claim that the CAP will

25   "frustrate CDE's transition to a Result-Driven Accountability system," because the CAP's

26   ────────────────

27   [5] State Defendants acknowledge that there is a meet-and-confer process in the Fifth Joint
     Statement, but contends that the CAP itself does not provide a process, and the meet-and-
28   confer process is "capricious," because it is the same process that led to the CAP.  Mot. At
     13 n.8.

1   "focus is almost exclusively on procedural compliance" as opposed to achieving results.

2   Reply at 10-11; *see also* Mot. at 13.  The Court has stated:

3

4           CDE argues that by even looking at components of CDE's
            monitoring system, the Monitor is focusing on "procedural
5           compliance" instead of on overall outcomes, as would be
            mandated under the RDA [].  In fact, in his determinations, the
6           Monitor states that the RDA will be outcome-focused.  He
            describes how CDE's procedural-focused approach to
7           monitoring is out of line with the regulations…

8   July 2, 2014 Order at 5.  If State Defendants perceive a problem with a specific

9   requirement of the CAP in terms of alignment with Results-Driven Accountability

10  ("RDA"), they may use the process created by the Fifth Joint Statement to work with the

11  Monitor, Plaintiffs, and the District to amend the CAP to better ensure compliance with

12  RDA and FAPE.  The solution is *not*, however, to overturn the CAP completely.

13          The Court reiterates that State Defendants' argument that they do not agree with the

14  CAP's system and that it does not afford them sufficient discretion is unconvincing when

15  the reason that the CAP was implemented in the first place was because the state

16  monitoring system was faulty.  *See* August 25, 2015 Order at 16 ("placing limitations on

17  the flexibility and discretion of a defendant is the entire purpose of a corrective action

18  plan").

19          State Defendants raise an argument for the first time in their Reply Brief – that

20  implementing the CAP would require additional activities "not otherwise required by law,"

21  thus imposing additional costs.   Reply at 10.  State Defendants point specifically to costs

22  of classroom observations that are not currently included in verification reviews, which

23  would allegedly add an additional two days to the review, "at a cost of $1,655 per day per

24  team (without travel expenses)."  *Id.*  First, the Court notes that it need not consider this

25  argument, as it was raised for the first time in a reply brief.  *See United States v. Romm*,

26  455 F.3d 990, 997 (9th Cir. 2006); *Citizens for Free Speech, LLC v. Cnty of Alameda*, 62

27  F. Supp. 3d 1129, 1132 n.1 (N.D. Cal. 2014).

28

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    Furthermore, the CAP does not require State Defendants to perform observations in

2    all verification reviews.  The observations are only required "when necessary" according

3    to the CAP.  The Monitor has already refuted this argument succinctly:

4

5    However, student observations should be included if the review
     results in questions that can be answered best through
     observations, such as poor student outcomes that may be due to

6    flaws in service delivery.  Competent reviews of educational
     benefit must follow evidence where it leads, including to

7    observations if and when necessary, but a rule that
     observations always be conducted would lead to an inefficient

8    use of monitoring resources in exchange for little gain.

9

10   Monitor's Determinations at 41.  State Defendants' argument that the CAP forces the State

11   to expend scarce resources to comply with a plan with which they do not agree is equally

12   unconvincing, because "[m]onetary harm does not constitute irreparable injury."

13   *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (citing *Cal. Pharmacists*

14   *Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009)).

15   For these reasons, State Defendants have not established that they would suffer

16   irreparable injury from implementation of the CAP.

17

18   **III.    Injury to Other Interested Parties; The Public Interest**

19   In the absence of a showing of likelihood of success or irreparable harm, the

20   remaining two factors become less important.  However, the Court addresses them briefly

21   for the sake of completeness.

22

23   **A.    Injury to Other Interested Parties**

24   Defendants argue that the general statement that "children with disabilities in the

25   District are harmed by being denied the protection of an adequate monitoring system"

26   means class members are not specifically harmed by the monitoring system.  CDE's Mot.

27   at 17 (citing Plaintiffs' Opposition to Defendants motion to set aside the Draft CAP,

28   Docket No. 2062).

United States District Court
Northern District of California

1    The Court, like many of State Defendants' arguments, has encountered the

2 argument that Plaintiffs will not be injured by a stay before.  In the August 25, 2014 Order

3 denying State Defendants' motion to stay the Court's July 2, 2014 Order, the Court stated:

> Resistance to, and failure to comply with, the orders of this Court has served to delay the necessary institutional reforms long identified and thereby **deny the rights of Ravenswood students to receive the education they are entitled to by law.** While the State Defendants are correct that some progress could continue even if a stay were granted, that does not mean that Plaintiffs would suffer no injury.  A stay would unnecessarily prolong the development of a CAP to address the deficiencies identified [by the Monitor] – in direct contravention of the expediency the Court determined was warranted when it directed the engagement of consultants to assist the Monitor.  The Court finds that **such undue delay in effective CDE general supervision and oversight would result in substantial injury to Plaintiffs**.

August 25, 2014 Order at 6 (Docket No. 1982) (emphasis added).

### B.    Where the Public Interest Lies

Defendants argue that the public interest – namely, children with disabilities – is best served by "permitting CDE to move forward with a results-driven approach to monitoring," unimpeded by the CAP.  Defendants repeat their arguments about the lack of fitness of the CAP and the Monitor's determinations with the new RDA.  Furthermore, Defendants argue that "compelling CDE to alter its entire state monitoring system based on observations made in just one school district is … an imprudent use of scarce public resources."  The Court need not revisit these arguments,[6] but instead reiterates that "the public interest [] weigh[s] in favor of enforcing Plaintiffs' rights under federal law. August 25, 2014 Order at 7.

---

[6] The Court notes, however that these arguments are unconvincing, as CDE stipulated in the Fifth Joint Statement to a challenge to the design of its *state-level* monitoring system, and the Monitor's Determinations were not based on observations in only one district, but rather the bulk of the Determinations addressed state-wide issues.  *See* Fifth Joint Statement at 7; Monitor's Determinations at 2-51.

**IV.     Effective Date of the Final CAP**

As stated in the Background section, neither the Monitor nor the Court explicitly stated that the Draft CAP would become the Final CAP on August 25, 2015, when the Court issued its Order denying Defendants' motion to set aside the Draft CAP.  The Court is convinced through the Parties' briefing and oral argument that clarification was needed, and it would be unjust to hold State Defendants to a shortened timeframe to complete its deadlines when it did not have ample notice.  If the Court were to hold that the Draft CAP became the Final CAP on August 25, 2015, State Defendants would have only twelve days to complete its first set of CAP implementation deadlines – for which they should have been afforded sixty days.

Thus, in the interest of fairness, the Court holds that the Final CAP shall be effective on the date of this Order, and the implementation deadlines shall be calculated accordingly.  The Court notes, however, that any deadlines in the CAP that are specified by date will not be adjusted.[7]

///
///
///
///
///
///
///
///
///
///
///

---

[7] *E.g.*, data collection in Determination 3; results of determination process application in Determination 6; SESR results in Determination 17; VR results in Determination 18.

13

1

**CONCLUSION**

2

      For the reasons stated above, the State Defendants have failed to meet their burden

3

of showing that a stay is justified; thus, State Defendants' Motion to Stay Implementation

4

of the Final CDE Corrective Action Plan is DENIED.

5

      The latest version of the Draft CAP (Docket No. 2043) is now effective as the Final

6

CAP, and is attached to this Order as Exhibit A for the Parties' convenience.  The effective

7

date of the Final CAP is **December 3, 2015**.

8

9

**IT IS SO ORDERED.**

10

11

Dated: 12/03/15

12

                THELTON E. HENDERSON
                United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California