UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMMA C., et al.,

    Plaintiffs,

v.

DELAINE EASTIN, et al.,

    Defendants.

Case No. 96-cv-04179-TEH

**ORDER RE: ALLOCATION OF PLAINTIFFS' ATTORNEYS' FEES AND COSTS FOR JANUARY 1, 2015 THROUGH JUNE 30, 2015**

Defendants Ravenswood City School District ("Ravenswood") and the California Department of Education ("CDE") are at an impasse on the appropriate allocation of Plaintiffs' attorneys' fees and costs for the period of January 1, 2015 through June 30, 2015. The Court received opening and responsive briefs from both Defendants, as well as a responsive brief from Plaintiffs. The Court heard oral argument on February 29, 2016. After consulting with the Court Monitor and carefully considering the parties' written and oral arguments, the Court now ORDERS allocation of Plaintiffs' attorneys' fees and costs as provided below.

**BACKGROUND**

On April 3, 2003, the Court approved the First Amended Consent Decree ("FACD"), which was signed by the parties. The FACD specifically addresses the payment of Plaintiffs' attorneys' fees and costs, as follows:

> *17.0   Costs of Implementation Efforts*
> The Defendants shall pay all the costs of implementing this First Amended Consent Decree until the Court determines that they have complied with all of the requirements under this Decree, pursuant to Paragraph 18.10 below. Allocation of responsibility for such payments between the Defendants shall be determined by agreement of Defendants, or if they are unable to agree, by further order of the Court. These payments shall include, but are not limited to, the following:

> [. . .]
> 17.6  Attorneys' Fees.  In the event attorneys' fees and/or costs are agreed upon or are awarded by the Court to Plaintiffs, the Defendants shall pay for such fees and costs.

FACD § 17.0, 17.6 (Docket No. 832).  Over the course of the past decade, the Defendants have stipulated to share Plaintiffs' attorneys' costs and fees equally.  However, regarding Plaintiffs' most recent billing statements and pursuant to discussions among the parties, the Defendants have been unable to agree upon allocation of payment for Plaintiffs' attorneys' fees and costs for the period of January 1, 2015 through June 30, 2015.

**LEGAL STANDARD**

The Court has broad discretion to determine the allocation of attorneys' fees and costs among multiple defendants.  *Koster v. Perales*, 903 F.2d 131, 139 (2d. Cir. 1990).  Fee allocation decisions are afforded great deference by appellate courts because of the district courts' "superior understanding of the litigation," as well the need to avoid "appellate review of minutia" and avoid "a second major litigation" over attorneys' fees.  *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th Cir. 1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  In allocating attorneys' fees and costs among multiple defendants, a district court "should make every effort to achieve the most fair and sensible solution that is possible."  *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 960 (1st Cir. 1984); *see also Sable Commc'ns of Cal., Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 194 (9th Cir. 1989).

**DISCUSSION**

**I.  Plaintiffs' Attorneys' Fees and Costs Shall Be Disaggregated**

CDE requests that the allocation of Plaintiffs' attorneys' fees continue to be split equally between the Defendants as has been past practice, and that the fees and costs not be disaggregated between statewide monitoring fees and District-related fees.  CDE Opening Brief ("CDE Brief") at 3 (Docket No. 2150).  CDE contends that disaggregation

would be unduly complicated, would add an extra layer of litigation to *Emma C.* over the categorization of particular billing items, and would result in delay for Plaintiffs. CDE Brief at 4; CDE Response at 7-8.

It is undisputed that the focus and nature of this litigation has changed drastically since *Emma C.*'s inception almost twenty years ago. Historically, the majority of Plaintiffs' attorneys' fees and costs have been incurred in connection with the implementation of, and compliance with, the RSIP. However, in recent years, in accordance with processes agreed to by the parties in joint statements and Section 13.0 of the FACD, the focus of the litigation has shifted toward greater attention to the State Defendant and its statewide monitoring system. This Court's orders regarding the statewide monitoring system and the necessity of a Corrective Action Plan ("CAP") have been appealed by CDE at every turn. As a result, Plaintiffs' most recent billing statements revealed that approximately 85% of Plaintiffs' attorneys' fees and costs were dedicated to litigating the statewide monitoring system and opposing CDE's appeals, while only approximately 15% of the fees and costs were related to the RSIP.[1] Pls.' Response at 2-3. The parties could not have anticipated such a shift when agreeing to the FACD. *See Pauma Band of Liuseno Mission Indians of the Pauma v. California*, 804 F.3d 1031, 1041 (9th Cir. 2015) (fundamental goal of contract interpretation is to give effect to the parties' mutual intent as it existed at the time of formation). Furthermore, in briefing and at oral argument, Plaintiffs' counsel contended that disaggregation would not be difficult, and while there were some disputes as to particular billing items in the statement at issue before the Court, such disputes were partially due to the fact that Plaintiffs were tracking their time without disaggregation in mind.

For these reasons, the Court finds that the allocation that has been agreed upon in past years by the Defendants is no longer fair or sensible. Plaintiffs shall disaggregate their

---

[1] Furthermore, between June 30, 2015 and the date of this Order, CDE has appealed two more of this Court's orders (both relating to the CAP) to the Ninth Circuit; thus, the amount of time spent by Plaintiffs briefing for, and participating in, Ninth Circuit appeals will likely grow exponentially in future billing statements.

3

attorneys' fees and costs between those that are "State-related" and those that are "District-related." State-related fees and costs include fees and costs related to the statewide monitoring system (including those related to the CAP) as well as fees and costs related to any appeals of this Court's orders to the Ninth Circuit initiated by CDE. District-related fees and costs include all other fees and costs, including but not limited to fees and costs related to implementation of, and compliance with, the RSIP.

### A. CDE shall pay for the entirety of Plaintiffs' State-related attorneys' fees and costs.

As discussed above, the drastic change in the nature of the *Emma C.* litigation constitutes changed circumstances such that the Court no longer finds an equal split of Plaintiffs' attorneys' fees and costs between the Defendants to be equitable. Such a drastic change is in part due to CDE's aggressive appellate strategy of late. It is not equitable, or logical, to require that Ravenswood pay for CDE's strategic decisions, when Ravenswood takes no part in making such decisions. The Ninth Circuit has made clear that when allocating fees and costs between multiple defendants, a district court should allocate in accordance with the amount of time the plaintiffs spend litigating against each particular defendant. *E.g., Se. Legal Defense Grp. v. Adams*, 657 F.2d 1118, 1125-26 (9th Cir. 1981); *Sable*, 890 F.2d at 194; *Woods v. Graphic Commc'ns, Inc.*, 925 F.2d 1195, 1207 (9th Cir. 1991); *Corder v. Gates*, 947 F.2d 374, 382-83 (9th Cir. 1991). Here, it is apparent that when considering the statewide monitoring system, the CAP, and CDE's appeals, Plaintiffs' time spent litigating these issues is directed exclusively toward CDE.[2] Thus, CDE shall bear Plaintiffs' State-related attorneys' fees and costs entirely.

---

[2] At oral argument, CDE's counsel contended that even categorizing Plaintiffs' Ninth Circuit work as State-related is problematic, as Ravenswood was present at the Ninth Circuit mediations. However, the Court finds this argument unconvincing, as the only reason Plaintiffs' attorneys were required to travel to, and participate in, mediation was because CDE appealed this Court's orders to the Ninth Circuit – a decision in which Ravenswood took no part. Thus, Plaintiffs' time spent litigating in the Ninth Circuit, thus far, is entirely CDE's responsibility.

4

### B. Plaintiffs' District-related attorneys' fees and costs shall remain equally shared by the Defendants.

While the state-related fees reflect a drastic change in recent years, the District-related fees and costs, including the RSIP, have remained substantially similar in nature. CDE has presented no argument to convince the Court that equity requires a change in allocation of District-related fees and costs.

CDE argues that CDE's share of Plaintiffs' District-related fees and costs should decrease so that Plaintiffs' attorneys' fees and costs are allocated in the same way as the RSIP budget. CDE Brief at 6. In the past, the RSIP budget was allocated mostly to CDE, but the budget has shifted steadily. As of the date of this Order, the RSIP budget is allocated such that Ravenswood pays for 80% and CDE 20% of the RSIP funds. *See* Orders on FY 2015-2016 Budget (Docket Nos. 2064, 2065). The rationale behind shifting the percentage for the RSIP budget such that Ravenswood shoulders 80% of the budget is "to ensure that improvements in the District's provision of FAPE are financially sustainable at the close of the case." Order on FY 2015-2016 Budget at 3 (Docket No. 2064). Such a rationale does not apply to attorneys' fees, which do not need to be "sustained" at the close of the case, as they will cease to accrue when the litigation is over. Likewise, there is no need for Ravenswood to shoulder more attorneys' fees in order to become accustomed to doing so, as the Court directed with regard to the RSIP budget.

The Court agrees that imposing a disproportionate share of Plaintiffs' attorneys fees and costs for RSIP implementation has no impact on ensuring Ravenswood's ability to serve students, as contrasted with Ravenswood's payment of the RSIP budget. *See* Dist. Response at 6. The Court sees no other change in circumstances in the District-related aspects of this case that would necessitate a reallocation of Plaintiffs' District-related attorney's fees and costs. For these reasons, the allocation of Plaintiffs' District-related attorneys' fees and costs shall remain the same: split equally between the Defendants.

Such equal allocation is consistent with the Defendants' equal responsibility under IDEA to provide free and appropriate public education in the least restrictive environment

5

to students in the District. 20 U.S.C. § 1400, *et seq*. "[T]here shall be a single line of responsibility with regard to the education of all handicapped children as required by [the Education For All Handicapped Children Act, now IDEA]." Cal. Gov. Code § 7561. While California Government Code Section 7561 does not specifically concern attorneys' fees, it does express the California Legislature's intent in implementing IDEA, which unquestionably applies to the case at hand and is a helpful reference point for the Court to determine what responsibilities each Defendant may equitably shoulder.

For these reasons, the Court shall allocate Plaintiffs' District- related attorneys' fees and costs equally between the two Defendants. This is the allocation that has been agreed upon and has worked for the past two decades, it echoes the Defendants' responsibility for the District's system, and the Court does not see any circumstances warranting a different allocation.

## II. In Future Instances Where Defendants Cannot Agree Upon Allocation, This Order's Allocation Shall Apply

The FACD provides that the Defendants may agree upon allocation of attorneys' fees by stipulation. This Order does not eliminate the Defendants' ability to expedite this process by agreement; however, if in the future Defendants are unable to stipulate to an allocation, the allocation set forth in Section I of this Order shall apply. Plaintiffs shall categorize each billing item going forward as either State-related or District-related to assist this process. The Court anticipates that there may be disputes over Plaintiffs' categorization of particular billing items. Thus, the Court finds it necessary to set forth a dispute resolution process for the parties, as follows:

Plaintiffs shall submit disaggregated and categorized billing statements to Defendants in accordance with this Order. Within 30 days of Plaintiffs' submission, the parties shall meet and confer regarding the categorization of the billing items. The parties shall include the Monitor on all correspondence relating to fees that precede the meet and confer, and the Monitor shall also participate in the meet and confer with the parties.

Within 14 days of the meet and confer, the parties shall submit a joint statement to the Monitor summarizing the areas of agreement reached by the parties and any remaining areas of disagreement. Following submission of the joint statement to the Monitor, the Monitor shall make determinations regarding the categorization of any disputed billing items. Should the parties dispute the determinations of the Monitor, they may raise their objection in a motion, to be filed within 14 days of issuance of the Monitor's determinations.

**CONCLUSION**

For the reasons stated above, the Court hereby ORDERS that payment of Plaintiffs' attorneys' fees and costs for the period of January 1, 2015 through June 30, 2015 be allocated as follows: (1) CDE shall pay for 100% of Plaintiffs' state-related attorneys' fees and costs; and (2) Defendants shall each pay for 50% of Plaintiffs' remaining attorneys' fees and costs, including fees and costs related to the RSIP and any other District-related issues that arise that are not related to CDE's monitoring of the District.

Plaintiffs shall provide Defendants and the Monitor with a new billing statement that is disaggregated and categorized in accordance with this Order and reflects the total amount to which the parties stipulated for the period of January 1, 2015 through June 30, 2015. The parties shall then continue to follow the process outlined in Section II of this Order.

Going forward, if Defendants cannot agree upon an allocation of attorney's fees, the allocation set forth in this Order shall apply, and Defendants shall follow the process outlined in Section II of this Order to resolve any disputes.

**IT IS SO ORDERED.**

Dated: 03/09/16   _____
THELTON E. HENDERSON
United States District Judge