JOHN C. BEIERS
County Counsel (SBN 144282)
BY: AIMEE ARMSBY, DEPUTY (SBN 226967)
San Mateo Office of County Counsel
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
Telephone: (650) 363-4768
Facsimile: (650) 363-4034
Email: aarmsby@smcgov.org
*Attorneys for Defendant Ravenswood City School District and Related Defendants*

KAMALA D. HARRIS
Attorney General of California
ISMAEL A. CASTRO
Supervising Deputy Attorney General
R. MATTHEW WISE (SBN 238485)
DARRELL SPENCE (SBN 248011
KARLI EISENBERG (SBN 281923)
Deputy Attorneys General
1300 I Street, Suite 125
P.O. Box 944255 Sacramento, CA 94244-2550
Telephone: (916) 323-8549
Fax: (916) 324-5567
E-mails: Matthew.Wise@doj.ca.gov
         Karli.Eisenberg@doj.ca.gov
*Attorneys for Defendants Delaine Eastin, Superintendent of Public Instruction, the State Board of Education, and the California Department of Education*

WILLIAM KOSKI, Esq. (SBN 166061)
CARLY J. MUNSON, Esq. (SBN 254598)
STANFORD LAW SCHOOL
YOUTH & EDUCATION LAW PROJECT
MILLS LEGAL CLINIC
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-3718
Facsimile: (650) 723-4426
Email: bkoski@stanford.edu
*Attorneys for Plaintiffs*

Arlene B. Mayerson, Esq. (SBN 79310)
Larisa M. Cummings, Esq. (SBN131076)
DISABILITY RIGHTS EDUCATION
& DEFENSE FUND, INC.
3075 Adeline Street, Suite 210
Berkeley, CA 94703
Telephone: (510) 644-2555
Facsimile: (510) 841-8645
Emails: amayerson@dredf.org
        lcummings@dredf.org
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA C., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> DELAINE EASTIN, et al. <br><br> Defendants. | Case No. C-96-4179 TEH <br><br> **JOINT STIPULATION AND [PROPOSED] ORDER RE: MODIFICATIONS TO RSIP RE ITEMS 1.5.2, 1.5.3, 8.2.1, 8.3.1, 9.2.1, 12.1.2, 12.1.3, 12.2.1, 14.1.1, 14.1.2 AND 14.2.1** <br><br> Judge: The Honorable Thelton E. Henderson |

## I. INTRODUCTION

On March 22, 2016, in accordance with a recommendation of the Court Monitor in his Concluding Report issued December 17, 2015, the parties and the Court Monitor met and conferred concerning the current status of the Ravenswood Self Improvement Plan ("RSIP") and progress toward completion of its requirements. The meet-and-confer process was productive and collaborative, and the parties have reached agreement concerning the matters set forth below. The parties stipulate that this agreement will not be considered a waiver of any of the arguments made in the State Defendants' Request for RSIP Concluding Report, [Docket No. ("Dkt. No.") 2115], except to the extent rendered moot by this stipulation.

## II. AGREEMENTS CONCERNING RSIP COMPLIANCE

After presentation of data analysis by the District, and discussion and careful consideration by all parties, agreement was reached concerning several RSIP Items. They are addressed below in numerical order.

### A. Items 1.5.2 and 1.5.3

The parties discussed the requirements of Items 1.5.2 and 1.5.3 of the RSIP, which relate to the District's annual description of the organization of its service delivery system, and submission of that description and any revisions for District Governing Board review and approval. These requirements, as written in the RSIP, are not subject to a maintenance period. In view of the District's near-perfect compliance with these requirements for many years, and the District's continued demonstration that it has developed and maintained a comprehensive service delivery system, the parties agree to modify the RSIP to deem Items 1.5.2 and 1.5.3 fully compliant, and discontinue monitoring these requirements, effective immediately. Thus, the District will no longer be monitored on Items 1.5.2 or 1.5.3.

### B. Item 8.2.1

The parties discussed the District's compliance history for Item 8.2.1 for the past two-and-a-half years. The Court Monitor's Trends Report, most recently updated in October 2015, documents the District's compliance average for the 2013-14 school year at 95.4%, and the average for the 2014-15 school years was 96.5%. Because quarterly compliance dipped slightly below 95% in certain quarters,

the District has not yet posted four consecutive semesters at 95% or higher, and thus has not been deemed to have satisfied the maintenance period. For Quarters 1 and 2 ("Q1" and "Q2") of the current 2015-16 school year, the District was again slightly below the 95% compliance mark. The parties agreed that on the basis of consistently strong compliance data for the past two-and-a-half years, the District will be deemed to have satisfied the maintenance period with a showing of 95% compliance for Q3 and Q4 of the 2015-16 school year, using the average compliance percentage based on raw data for the two quarters. Thus, the Court Monitor will combine the total number of compliant files for Q3 and Q4 combined, and divide by the total number of files assessed for compliance, to arrive at a compliance percentage. If the resulting percentage is 95% or more, the District will be deemed to have complied with the applicable maintenance period for Item 8.2.1 without the need for further discussion among the parties or action by the Court, and this Item will no longer be monitored under the RSIP.

### C. Item 8.3.1

For this RSIP requirement, the parties had previously agreed to modify the methodology by which the Court Monitor determined compliance. While the evidence of performance had been documentation that parents received a translated assessment report at least 5 days prior to the IEP meeting, the parties previously agreed that for up to 30% of eligible files, the District could satisfy the evidence of performance requirement with a showing that a District assessor had met with a parent at least 2 days prior to the IEP meeting to review the report in the parent's primary language and answer questions, if any, about the report. After discussions among the parties, it was agreed that the District could utilize either option without limitation to satisfy the evidence of performance requirement.

### D. Item 9.2.1(j) and (k)

These subparts relating to the use of curriculum-based assessments ("CBAs") are the only remaining portions of Item 9.2.1 still being monitored. The parties have reviewed and discussed recent monitoring results, from Q1 and Q2. The District was compliant for Q1 in both subparts, with 95.2% compliance in each. For Q2, the District narrowly missed the 95% compliance mark, with a 92.5% compliance rate in each subpart. The District noted that the Q2 results were disproportionately impacted by a single service provider who left her position without notice for a time period during the quarter. It was observed that in at least some of the noncompliant files, there was evidence that appropriate CBAs

were used, but the files were not found compliant because the CBAs were not sufficiently identified.  The parties agreed that the District could resubmit its data to the Monitor, and to the extent sufficient evidence was submitted to the Monitor that appropriate CBAs were used, the files would be deemed compliant.

In accordance with the parties' agreement, the District resubmitted evidence of performance, verifying where applicable that approved CBAs had been used.  As a result, the Monitor changed his finding as to Item 9.2.1(j) to compliant, at a 96.2% rate.

**E.  Item 12.1.2**

For this item, the District posted compliance percentages of 100% for both Q3 and Q4 of 2013-14.  The District's average compliance rate for 2014-15, as documented in the Trends Report, was 98.4%.  The District's compliance percentages for Q1 and Q2 of the current year are 94.4% and 100%, respectively.  In light of the consistent high level of performance on this Item, the parties agreed that the District is deemed to have been found compliant for four consecutive semesters, and therefore the District is deemed to have complied with the maintenance period of this requirement.  Accordingly, Item 12.1.2 will no longer be monitored.

**F.  Item 12.1.3**

For this item, the District has shown a high level of compliance since the second half of 2013-14.  In Q3 of 2013-14, the compliance percentage was 94.4% and in Q4 it was 94.2%.  For 2014-15, the parties agreed by court-approved stipulation to adjust the methodology for measuring compliance, a change that, applied retroactively, would have rendered the District compliant in Q3 and Q4 of 2013-14.  The District's average for 2014-15, as documented in the Trends Report, was 95.7%, with a single quarter, Q4, dipping below 95% to 91%.  For Q1 of the current year, the District has achieved 99% compliance, and for Q2, the compliance is 98.8%, representing a semester of compliance.  In view of the District's consistently high level of performance in this category, the parties agreed that the District would be deemed to have achieved compliance for four consecutive semesters, and thus to have met the maintenance period for this Item.  Accordingly, Item 12.1.3 will no longer be monitored.

**G. Item 12.2.1**

The District has achieved similarly high levels of compliance in this category.  Reviewing the two and a half years' data for Item 12.2.1, for which data is monitored for Q2-Q4 only, the District was over 95% compliant for all three quarters in 2013-14, averaging 96.1% average for the year, as per the Trends Report.  Then for 2014-15, the District achieved an average of 95.5% compliance, also per the Trends Report.  For Q2 of the current year, the District has a 94.1% compliance rate.  In view of the District's consistently high level of performance in this category, the parties agreed that the District would be deemed to have achieved compliance for four consecutive semesters, and thus to have met the maintenance period for this Item.  Accordingly, Item 12.2.1 will no longer be monitored.

**H. Items 14.1.1, 14.1.2 and 14.2.1**

These items are intended to monitor the District's compliance with a set of procedures it established for investigating parent complaints.  However, the absence of parent complaints received through the established procedures has led to the repeated deferral of findings with regard to these items.  In view of the lack of data to be monitored in these categories, the parties agree that these items shall no longer be monitored under the RSIP, and for purposes of a future Concluding Report pursuant to Section 6.1.3 of the First Amended Consent Decree, are deemed concluded.

### III.   CONCLUSION

The parties hereby submit this joint stipulation and respectfully request that this Court approve and so order the modifications and benchmarks set forth herein.

Dated: May 2, 2016                JOHN C. BEIERS, COUNTY COUNSEL
                                  COUNTY OF SAN MATEO


                                  By:   /s/  Aimee B. Armsby
                                        Aimee B. Armsby
                                        Deputy County Counsel
                                        *Attorneys for Ravenswood City School District and Related Defendants.*

Dated: May 2, 2016          YOUTH & EDUCATION LAW PROJECT

By:   /s/ *William S. Koski*
       William S. Koski
       *Attorneys for Plaintiffs*

Dated: May 2, 2016          OFFICE OF THE ATTORNEY GENERAL

By:   /s/ *Karli Eisenberg*
       Karli Eisenberg
       *Attorneys for Defendants Delaine Eastin, Superintendent of Public Instruction, State Board of Education and the California Department of Education*

### [~~PROPOSED~~] ORDER

The Court has reviewed the parties' Joint Stipulation regarding RSIP modifications.

For good cause shown, the parties' request to approve the agreements contained herein and order the parties' Joint Stipulation concerning RSIP modifications as set forth herein is GRANTED.

IT IS SO ORDERED.

Dated:   5/4/2016

_____
THE HON. THELTON E. HENDERSON
UNITED STATES DISTRICT COURT JUDGE