UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA C., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DELAINE EASTIN, et al.,<br><br>    Defendants. | Case No. 96-cv-04179-TEH<br><br>**ORDER ON JUNE 13, 2016<br>SHOW CAUSE HEARING** |

This matter came before the Court on June 13, 2016, for a hearing on the Court's Order for Defendant California Department of Education ("CDE") to Show Cause regarding its apparent failure to comply with the Court's order adopting the Fifth Joint Statement. For the reasons stated below, the Court discharges the Order to Show Cause without a finding of contempt or imposition of sanctions.

**BACKGROUND**

The parties are by now familiar with the facts of this case. The Court provides the following brief summary to provide context for this Order.

On December 21, 2012, the parties stipulated to the Fifth Joint Statement, which provided a framework for evaluating the adequacy of CDE's state-level system for ensuring FAPE. Docket No. 1799. The Court approved the Fifth Joint Statement on January 12, 2013. Docket No. 1803. The Fifth Joint Statement requires that CDE provide notice via email to the parties and the Monitor 30 days in advance of "any proposed substantive changes in the design of its state-level monitoring system that will be applied to the District," and calls for a 21-day timeline for any objections to the proposed changes, a meet-and-confer discussion within 10 days of objections, and determinations by the Monitor regarding any objections should the parties not reach agreement. Fifth Joint Stmt. §§ VII. A-G.

On January 9, 2014, having followed the Fifth Joint Statement's framework, the Monitor issued determinations, which recommended the development of a Corrective Action Plan ("CAP") for CDE's statewide monitoring system. Docket No. 1890. On July 2, 2014, the Court approved the Monitor's determinations in full, after denying CDE's motion objecting to and seeking to set aside the determinations.[1] Docket No. 1958. On January 15, 2015, the Court issued an Order providing the process for developing a Draft CAP that would allow the Parties opportunity to provide input to the Monitor and be heard on any objections. Docket No. 2013. Accordingly, the Monitor issued the Draft CAP on February 12, 2015, CDE objected to the Draft CAP, and the Monitor addressed CDE's objections in a Memorandum dated May 14, 2015. CDE then moved to set aside the Draft CAP, which the Court denied on August 25, 2015. Docket No. 2095. CDE then moved to stay implementation of the Final CAP, which the Court denied. Docket No. 2130. The CAP became final as of December 3, 2015. *Id.*

CDE has appealed the Court's July 2, 2014 Order (denying CDE's motion to set aside the Monitor's determinations), August 25, 2015 Order (denying CDE's motion to set aside the Draft CAP), and December 3, 2015 Order (denying CDE's motion to stay implementation of the Final CAP). The Ninth Circuit has denied CDE's motions to stay the action in this Court twice (on September 2, 2014, and on January 15, 2016), and has consolidated all three pending appeals. Because the appeals are pending and no stays have been granted, the CAP is currently in full force.

In CDE's February 1, 2016 responses to CAP Sections 1, 10, 12 and 15, CDE stated that it "will be phasing in a comprehensive, integrated set of results-driven measures" in the District "in the upcoming year." Instead of the Special Education Self Review (SESR) process, CDE stated that it "will require" an Annual Submission Process (ASP), and then listed the components of the ASP process. CDE also included in a footnote that "…LEAs will no longer conduct the SESR on a cyclical basis. Instead, the SESR will be reserved as

---

[1] CDE's motion was made pursuant to the framework adopted in the Fifth Joint Statement. Docket No. 1911.

a tool that LEAs can use, in their discretion, or as directed by CDE as part of the ASP or other quality assurance activities." Further, CDE states that it "has also converted" its Verification Review (VR) into a Comprehensive Review.

As the Monitor noted, "CDE did not provide advance notice of what appear to be important substantive changes to its monitoring system," as required by the Fifth Joint Statement. Monitor's March 29, 2016 Memo (Docket No. 2167). Plaintiffs submitted comments on CDE's submission on March 2, 2016, but did not mention the Fifth Joint Statement issue. Instead, the Monitor submitted his March 29, 2016 Memorandum, and the Court ordered CDE to show cause "as to why it should not be held in civil contempt and sanctioned for failure to comply [with the Court's order approving the Fifth Joint Statement]." Docket No. 2170. The Order to Show Cause instructed CDE and Plaintiffs to submit responses that would serve as the notice and objection requirements of the Fifth Joint Statement, and to state their positions on how CDE's proposed changes affect CDE's compliance with the CAP going forward.

## DISCUSSION

### I. The Order to Show Cause is Discharged without a Finding of Contempt.

In order for the Court to find CDE in contempt of Court, three requirements must be met beyond a reasonable doubt: (1) there was a clear and definite order of the Court; (2) CDE knew of the order; and (3) CDE willfully disobeyed the order. *Chapman v. Pac Tel. & Tel. Co.*, 613 F.2d 193, 195 (9th Cir. 1979); *Bloom v. State of Ill.*, 391 U.S. 194, 205 (1968). Thus, the Court cannot impose contempt sanctions if it finds that CDE's violation was accidental, inadvertent, or negligent. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir. 1983).

CDE argues that it did not violate the Court's order adopting the Fifth Joint Statement, because the notice requirements were not triggered. CDE OSC Resp. at 10. CDE states: "In contrast to the statewide CAP devised by the Monitor – which requires CDE to provide information to the Monitor and the parties concerning its' statewide

3

system – the Fifth Joint Statement was specifically drafted to require thirty days' advance notice of changes which would be applied *to the District.*" *Id.* at 10 (emphasis in original). Thus, CDE asserts that because none of the four proposed changes at issue would be *implemented* in the District within 30 days, CDE was not required to give notice under the Fifth Joint Statement. Rather, the changes were discussed only in response to CDE's obligations under the CAP.

Plaintiffs contend that CDE's interpretation of the Fifth Joint Statement's 30 day notice requirement is "untenable and forced," due to the other timelines set forth in the Fifth Joint Statement, which would likely take well over 30 days to comply with. Pls. OSC Resp. at 2-3. At the June 13, 2016 hearing, the Court asked Plaintiffs what they believed the "thirty days" meant in the context of the Fifth Joint Statement. Plaintiffs responded that Plaintiffs' interpretation is that CDE would give the parties and the Monitor 30 days advance notice of a proposed policy before it would be "formalized."

The Court finds itself in the undesirable, but sometimes necessary, position of interpreting language that was not drafted by the Court, but rather was drafted by the parties and approved by the Court. Therefore, the Court does not have any information – besides the parties' arguments at the June 13, 2016 hearing – as to the intent behind the provision at issue. That being said, the Court is inclined to agree with Plaintiffs' interpretation that the "thirty days advance notice" was intended to mean 30 days prior to formalization or adoption,[2] not implementation, of statewide monitoring system changes that would be applied to the District. Plaintiffs' interpretation is the only one that makes sense when considering the paragraphs following the "thirty days" provision in the Fifth Joint Statement – namely, that after CDE gives its notice, Plaintiffs and the District make objections within 21 days; then if necessary, the parties engage in what can be an extensive

---

[2] While Plaintiffs' counsel used the term "formalization" at the June 13, 2016 hearing, having conferred with the Monitor, the Court believes that "adoption" would better reflect Plaintiffs' contention – that the notice is required 30 days prior to CDE's adoption of a particular change to aspects of its statewide monitoring system that would be applied to the District. Therefore, the Court will use the term "adoption."

4

meet-and-confer process, the Monitor makes determinations if necessary, and the parties engage in motion practice before the Court if necessary. Fifth Joint Stmt. at 9-10. CDE's interpretation would not allow the parties sufficient time to engage in this process.

However, the Court recognizes that the terms "formalization" or "adoption" are not present in the Fifth Joint Statement's provision at issue. Therefore, it would be strained for the Court to find that CDE willfully disobeyed the Order adopting the Fifth Joint Statement, when the language was unclear, at the very least. Given the imprecise nature of Section VII. A. of the Fifth Joint Statement, the Court finds that CDE was operating under a reasonable, though unworkable, interpretation of its requirements. Therefore, the Court hereby DISCHARGES the Order to Show Cause without a finding of contempt on the part of CDE. The Court notes, however, that the above interpretation – that the 30 days' notice is prior to *adoption* of any proposed changes to aspects of CDE's monitoring system that would be applied to the District – is what the parties shall operate under going forward, unless otherwise stipulated.

## II.     The Fifth Joint Statement May Potentially Disrupt the CAP-Related Appeals Pending Before the Ninth Circuit

"A federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed. *Id.*; *see also McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982). Exceptions to the rule have been recognized, such as the right of a trial court "to make orders appropriate to preserve the status quo while the case is pending in the appellate court." Fed. R. Civ. Proc. 62(c); *United States v. El-O-Pathic Pharm.*, 192 F.2d 62, 79 (9th Cir. 1951). However, this exception does not give the trial court "jurisdiction . . . to adjudicate anew the merits of the case." *McClatchy*, 686 F.2d at 734. Thus, any action taken by the district court

1  "may not materially alter the status of the case on appeal." *Nat. Res. Def. Council, Inc. v.*
2  *Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).

3  In response to the Court's instructions in its Order to Show Cause, Plaintiffs
4  conditionally waived objections to CDE's proposed changes – the waiver was conditioned
5  upon the Court finding that CDE's proposed changes fall under Corrective Action 1 of the
6  CAP. Pls.' OSC Resp. at 1. If the Court were to not find that the proposed changes fall
7  under the purview of the CAP, Plaintiffs "reluctantly" object to each of the proposed
8  changes. *Id*. It appears to the Court that Plaintiffs' main concern regarding whether
9  CDE's proposed changes fall under the Fifth Joint Statement or the CAP is Plaintiffs' view
10 that the Fifth Joint Statement "curtails the Court Monitor's essential independent authority
11 to evaluate CDE's compliance with the CAP," because it limits the Monitor's review to
12 those objections raised by Plaintiffs and/or the District, rather than allowing the Monitor to
13 make his own findings. Pls.' OSC Resp. at 12.

14 While the Monitor clearly has the independent authority to evaluate CDE's
15 compliance with the CAP, the Court disagrees with Plaintiffs' view of the Monitor's
16 position with respect to CDE proposals to alter its monitoring system in respects not
17 covered by the CAP. The Fifth Joint Statement process – as well as other aspects of this
18 litigation, such as the First Amended Consent Decree and the creation of the CAP itself –
19 is driven by the parties' stipulations, objections, and motion practice, with the Court
20 overseeing the processes. The Monitor is an arm of the Court; as such, it would be
21 inappropriate for the Monitor to step in and make independent "findings" regarding CDE
22 proposals to alter its monitoring system in areas not covered by the CAP absent any
23 objections from the Plaintiffs. Such a framework would place the Monitor in the position
24 of first raising objections to CDE's actions, then ruling on his own objections through the
25 determination process. This would be a transgression of the Monitor's role as a neutral.[3]

---

[3] The Court further disagrees with Plaintiffs' portrayal of the Monitor's actions in setting new compliance deadlines in his report as to CDE's CAP submissions as "issu[ing] a directive." Pls.' OSC Resp. at 8. The Monitor's "directive" authority is specific and limited, and is not applicable to a situation in which the Monitor extends a deadline for

1    Thus, this Order shall serve as notice to Plaintiffs that they must object going forward, or
2    risk waiving potential objections, even if the Monitor does not raise the issues of concern
3    to Plaintiffs in his monitoring reports.
4        Furthermore, because this Show Cause Hearing only concerned the Fifth Joint
5    Statement and the parties' obligations thereunder – not the CAP – the Court need not
6    decide the issue of the scope of Corrective Action 1, which has not been fully briefed
7    before the Court.  Because the Court declines to decide the issue forming the condition of
8    Plaintiffs' "conditional waiver," the Court notes that Plaintiffs have not waived their
9    objections under the Fifth Joint Statement.
10       The Court notes, however, that the Fifth Joint Statement process has the potential to
11   disrupt the pending CAP-related appeals.  If the Fifth Joint Statement process is followed
12   to the point where the Monitor makes determinations recommending additional corrective
13   actions and/or modifications to the CAP,[4] the process would run the risk of disrupting the
14   appeals currently before the Ninth Circuit.  If and when this situation occurs, the Court will
15   decide how to proceed – likely by putting implementation of the Monitor's determinations
16   and recommendations on hold during the pendency of the appeals.

### III.    Allocation of Monitor's Budget for Fiscal Year 2016-17

19       With regard to Fiscal Year 2016-17, the Court has signed the parties' stipulation as
20   to Defendants' payment schedule for the RSIP Budget and the Monitor's budget; the
21   remaining issue is allocation among the Defendants of the Monitor's budget for purposes
22   of making deposits and disbursements for Fiscal Year 2016-17.  The Court reiterates its
23   previous observation that "the prospective nature of budgets makes it difficult to assess the
24   appropriate allocation of the Monitor's budget for the coming year."  *See* Docket No. 2064

---

CDE to comply with a corrective action.  *See generally* Dec. 20, 2007 Order at 4 (Docket No. 1151); Aug. 25, 2015 Order at 17 (Docket No. 2095).
[4] This situation was posed as a hypothetical by the Monitor to the parties at the June 13, 2016 hearing.

7

at 4. However, as was the practice for Fiscal Year 2015-16,[5] the Monitor has provided his best estimates as to allocation percentages, and the Court hereby ORDERS the allocation of the Monitor's budget as set forth below. Defendants shall make deposits in accordance with their stipulated schedule. Docket No. 2189.

| **Budget Items** | | CDE | | District | |
| --- | --- | --- | --- | --- | --- |
| | | Allocation | Amount | Allocation | Amount |
| Office | $51,290.00 | 58.75% | $30,132.87 | 41.25% | $21,157.13 |
| Consultants | $30,000.00 | 25.75% | $7,725.00 | 74.25% | $22,275.00 |
| Parent Advocacy | $74,000.00 | 17.50% | $12,950.00 | 82.50% | $61,050.00 |
| Monitor's Salary | $140,000.00 | 75.25% | $105,350.00 | 24.75% | $34,650.00 |
| **Budget Totals** | **$295,290.00** | **52.88%** | **$156,157.87** | **47.12%** | **$139,132.13** |

**CONCLUSION**

The Order to Show Cause is hereby discharged without a finding of contempt or imposition of sanctions. Going forward, CDE shall give notice of proposed changes applicable in the District thirty days prior to adoption of the changes, unless the parties stipulate otherwise. Furthermore, the parties shall proceed with the meet-and-confer as required by the Court's Order to Show Cause, which was suspended by stipulated Order. Docket No. 2188. The 10 day timeline for the meet-and-confer shall commence the day after the date of this Order. The Monitor shall adjust the applicable CAP deadlines to a date 30 days after this order, as was also stipulated. *Id.*

**IT IS SO ORDERED.**

Dated: 06/23/16                                     _____
                                                                    THELTON E. HENDERSON
                                                                    United States District Judge

---

[5] As noted at the June 13, 2016 hearing, the Court is currently engaged in the budget reconciliation process for Fiscal Year 2015-16, and will file an order updating the parties when it is completed.