UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA C., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>TOM TORLAKSON, et al.,<br><br>    Defendants. | Case No. 96-cv-04179-VC<br><br>**ORDER RE STATE'S OBLIGATIONS UNDER CONSENT DECREE** |

   As set forth in the consent decree, the state must demonstrate that it has a monitoring and enforcement system adequate to ensure that the Ravenswood City School District is providing an education to children with disabilities that complies with the requirements of the Individuals with Disabilities Education Act ("IDEA"). The state has explained that it intends to establish compliance with the consent decree with reference to its normal statewide system for monitoring school districts in California, as opposed to adopting a special monitoring system for Ravenswood. Accordingly, as a practical matter, the task for the Court is to review the state's system for monitoring school districts throughout California, to ensure that the system is adequate to ensure that districts like Ravenswood are complying with federal law.

   The purpose of this order is to provide a clear explanation, without reference to prior documents, of the showing the state must make to establish compliance with federal law, thereby allowing for dissolution of the consent decree. This order supersedes the "Corrective Action Plan" under which the parties have been operating for the past several years. Furthermore, in the event of conflict between this order and any other prior order of the Court, this order controls.

   The process for attempting to establish compliance with federal law will proceed in four

phases.  Phase 1 will be a review of the state's system for collecting data from school districts.  Phase 2 will be a review of the state's system for analyzing the data and using it to identify school districts that may not be doing an adequate job of educating children with disabilities.  Phase 3 will be a review of the state's monitoring and enforcement activities.  Phase 4 will be a review of the written policies adopted by the state to memorialize and explain to school districts the systems discussed in the first three phases.  At each phase, the Court will issue a ruling explaining whether the state has established compliance with federal law in the area at issue.

If the state is able to show substantial compliance with federal law at each of the four phases, it is anticipated that the consent decree will be lifted in 2020.  If the Court determines that the state has failed to establish substantial compliance with federal law at any phase, further proceedings will presumably be necessary.

The following is a detailed description for the process by which the state must establish compliance in Phase 1 and Phase 2.  With respect to the subsequent phases, the Court will issue a detailed order at a later time.

## PHASE 1: ANNUAL DATA COLLECTION

A hearing on whether the state adequately collects data will take place on August 1, 2018, at 10:00 a.m. (unless the parties prefer an earlier start time).  The state must file a report, backed by evidence, explaining how it believes it complies with its data collection obligations by June 1, 2018.  The Court Monitor will file his report on areas where the state does and does not comply with its data collection obligations by July 2, 2018.  The plaintiffs must (and Ravenswood may, if it wishes) file a response to the state's report and the Court Monitor's report by July 16, 2018.  The state may, if it wishes, file a response to the Court Monitor's report by July 16 as well.  All submissions must be filed on the public docket.

In its report and at the hearing, the state must do the following:

A.  The state must demonstrate that it collects the data necessary to meet the federal reporting requirements in the state performance plan.  The federal reporting requirements that are

2

relevant to students who have not yet reached high school and matter here concern: statewide assessments, suspension and expulsion, least restrictive environment, preschool least restrictive environment, preschool assessment, parent involvement, overall disproportionality, disproportionality by disability, timely eligibility evaluation, Part C to Part B transition, resolution sessions, mediation agreements, and the state systemic improvement plan.[1]

    B. The state must demonstrate that it collects the quantitative and qualitative data necessary to adequately measure how well school districts are providing an appropriate education in the least restrictive environment to students with disabilities in the priority areas for monitoring. The state must demonstrate that it collects the data in a way that it can be sufficiently disaggregated to meet its monitoring and enforcement obligations.[2] This includes the following:

1. The state must demonstrate it collects the data necessary to adequately assess the extent to which children with disabilities are placed in a regular education environment.[3]

2. The state must demonstrate it collects data necessary to adequately assess school discipline of children with disabilities, including suspensions, expulsions, and the degree to which positive behavioral supports are used, or demonstrate why this data collection is not necessary to effectively monitor school districts as required by federal law.[4]

3. The state must demonstrate it collects the data necessary to adequately assess student

---

[1] 20 U.S.C. § 1416(b); *Part B State Performance Plan (SPP) and Annual Performance Report (APR) – Part B Indicator Measurement Table*, https://osep.grads360.org/services/PDCService.svc/GetPDCDocumentFile?fileId=28247 [https://perma.cc/J33A-54W2]. The citations to the statute and relevant regulations in this order do not imply that other obligations that the state may have under federal law are irrelevant. Other relevant provisions of the IDEA may be raised at the hearings so long as they are related to the showings the state is required to make under this order.
[2] 20 U.S.C. §§ 1416(a)(3), 1418(a); 34 C.F.R. §§ 300.114, 300.120, 300.600(c)-(d).
[3] 20 U.S.C. §§ 1412(a)(1)(A), 1412(a)(5), 1412(a)(15)-(16), 1414(d)(1)(A)(i)(IV)(bb)-(cc), 1414(d)(1)(A)(i)(V).
[4] 20 U.S.C. §§ 1412(a)(22), 1418(a)(1)(D)-(E).

participation in assessments, including alternate assessments.[5]

4. The state must demonstrate it collects the data necessary to adequately assess student performance on assessments, including alternate assessments.[6]

5. The state must demonstrate it collects the data necessary to assess whether school districts are adopting and reevaluating individualized education programs ("IEPs") in a timely fashion.[7]

6. The state must demonstrate it collects the data necessary to adequately assess whether school districts are adequately implementing IEPs, or demonstrate why this data collection is not necessary to effectively monitor school districts as required by federal law.[8]

7. The state must demonstrate it collects the data necessary to adequately assess parent participation and input, or demonstrate why this data collection is not necessary to effectively monitor school districts as required by federal law.[9]

8. The state must demonstrate it collects the data necessary to adequately assess whether restraint or seclusion is used in a way that interferes with the provision of an appropriate education in the least restrictive environment, or demonstrate why this data collection is not necessary to effectively monitor school districts as required by federal law.[10]

C. The state must demonstrate that it collects the quantitative and qualitative data necessary to assess whether school districts are adequately identifying children in need of special education and related services. (The law refers to this concept as "Child Find.") The state must demonstrate that it collects this data in a way that it can be sufficiently disaggregated to meet its

---

[5] 20 U.S.C. §§ 1412(a)(16), 1414(d)(1)(A)(i)(VI).
[6] *Id.*
[7] 20 U.S.C. § 1414(a)-(e).
[8] 20 U.S.C. §§ 1412(a)(1)(A), 1412(a)(5)-(6), 1412(a)(15)-(16), 1412(a)(22), 1414, 1415, 1416(a)(3), 1418(a), 1418(d).
[9] 20 U.S.C. §§ 1412(a)(6), 1412(a)(19), 1414, 1415.
[10] 20 U.S.C. §§ 1412(a), 1414, 1416(a)-(b).

monitoring and enforcement obligations.[11] This includes data in the following areas:

1. The total number of students in each school district
2. The percentage of children with disabilities
3. The number and rate of referrals that resulted in the identification of children with disabilities
4. The number and rate of refusals by a school district to evaluate a child after a parent or staff referral
5. Participation and performance on state assessments of students who do not currently have IEPs
6. School discipline of students who do not currently have IEPs
7. Parent input

D. The state must demonstrate that it collects the data necessary to assess whether it is effectively monitoring school districts as required by federal law.[12]

E. The state must demonstrate that it collects the data necessary to adequately evaluate the use of resolution meetings.[13]

F. The state must demonstrate that it collects the data necessary to adequately assess the use of mediation.[14]

G. The state must demonstrate that it collects the data necessary to assess the effectiveness of the state's complaint management and due process systems.[15]

H. The state must demonstrate that it collects the data necessary to adequately assess how well school districts are providing for the transition for infants and toddlers to Part B IDEA services.[16]

---

[11] 20 U.S.C. §§ 1412(a)(3), 1412(a)(10), 1414, 1415, 1416(a)(3), 1418(a)(2); 34 C.F.R. §§ 300.600(d)(2), 300.646(d)(1)(iii).
[12] 20 U.S.C. § 1416(a)(3); 34 C.F.R. § 300.600(d)(2).
[13] *Id.*
[14] *Id.*
[15] 20 U.S.C. § 1416(a)(3); 34 C.F.R. §§ 300.151-300.153, 300.600(d)(2).
[16] 20 U.S.C. §§ 1416(a)(3), 1437(a)(9); 34 C.F.R. §§ 300.43, 300.600(d)(2).

I. The state must demonstrate that it collects data adequate to identify the disproportionate representation of racial and ethnic groups in special education and related services.[17]

J. The state must demonstrate that the data mentioned in the above paragraphs are valid and reliable. In addition, the state must demonstrate that it timely corrects the identified errors in data reporting by school districts.[18]

PHASE 2: ANNUAL DATA USE

The Court will set a hearing and briefing schedule for the state to attempt to establish compliance with its data use obligations at the tail end of Phase 1. During Phase 2, the state must do the following:

A. The state must demonstrate that it is effectively analyzing and using the data it is obliged to collect under Phase 1.[19]

B. The state must demonstrate that it is adequately using the data to select school districts for monitoring activities.

C. The state must demonstrate that it is adequately and timely making annual compliance determinations as required by federal law.[20]

D. The state must demonstrate that it is taking adequate and timely enforcement action in response to its annual compliance determinations.[21]

**IT IS SO ORDERED.**

Dated: May 18, 2018

VINCE CHHABRIA
United States District Judge

---

[17] 20 U.S.C. §§ 1416(a)(3)(C), 1416(b), 1418(d); 34 C.F.R. § 300.600(d)(3).
[18] 20 U.S.C. §§ 1412(a), 1416(a)-(b); 34 C.F.R. §§ 300.600(b)-(d), 300.601(b).
[19] 20 U.S.C. §§ 1412(a), 1416(a)-(b); 34 C.F.R. §§ 300.600(a)-(e), 300.602, 300.604.
[20] *Id.*
[21] 20 U.S.C. § 1416(a); 34 C.F.R. § 300.600(e).