XAVIER BECERRA
Attorney General of California
ISMAEL A. CASTRO, State Bar No. 85452
Supervising Deputy Attorney General
DARRELL W. SPENCE, State Bar No. 248011
KIRIN K. GILL, State Bar No. 259968
Deputy Attorneys General
State Bar No. 259968
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-6172
  Fax: (916) 324-5567
  E-mail: Darrell.Spence@doj.ca.gov
  E-mail: Kirin.Gill@doj.ca.gov
*Attorneys for Defendants
California Department of Education, Tony Thurmond, in his official capacity as the State Superintendent of Public Instruction, and State Board of Education*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EMMA C., et al.,** | 3:96-cv-04179-VC |
| Plaintiffs, | **STATE DEFENDANTS' RESPONSE TO COURT'S REQUESTS REGARDING ADDITIONAL INFORMATION AT PHASE 2 HEARING** |
| v. | |
| **THURMOND, et al.,** | Date: April 29, 2019 and May 1, 2019 |
| | Time: 9:30 a.m. |
| Defendants. | Judge: The Honorable Vince Chhabria |

Defendants California Department of Education ("CDE"), Tony Thurmond, in his official capacity as the State Superintendent of Public Instruction, and State Board of Education (collectively, "State Defendants" or the "State") hereby submit the following information in accordance with the Court's requests during the April 29, 2019 portion of the Phase 2 hearing:

As for the requests seeking additional information regarding Differentiated Assistance, additional information can be located at the following links:

(1) https://www.cde.ca.gov/sp/sw/t1/csss.asp; and

(2) https://www.cde.ca.gov/ta/ac/cm/leaproposedcrit2018.asp.

As for the requests seeking additional information regarding Dashboard aggregation and disaggregation, additional information can be located at the following link: https://www.cde.ca.gov/ta/ac/cm/index.asp.

Finally, the Court raised questions regarding (1) whether CDE's Comprehensive Review selection methodology selects the worst performing local educational agencies in California for the most intensive level of review; (2) whether the exclusion of preschool achievement as a selection criteria for Performance Indicator Review means that local educational agencies that are not meeting targets on the six elements of the preschool indicator are not selected for additional monitoring; and, (3) whether the application of a minimum N-size criteria results in CDE "failing" to monitor the outcomes of a majority of students with disabilities in the State. The answers to those questions are attached hereto as **Exhibit 1**.

| | | |
|---|---|---|
| 1 | Dated: April 30, 2019 | Respectfully Submitted, |
| 2 | | XAVIER BECERRA<br>Attorney General of California |
| 3 | | ISMAEL A. CASTRO<br>Supervising Deputy Attorney General |

*/s/ Darrell W. Spence*
*/s/ Kirin K. Gill*
DARRELL W. SPENCE
KIRIN K. GILL
Deputy Attorneys General
*Attorneys for Defendants*

SA2005104070
13693006.docx

**EXHIBIT 1**

The purpose of this document is to address three questions raised by the Court at the April 29, 2019 Phase 2 hearing.  First, does the methodology CDE uses to select local educational agencies (LEAs) for Comprehensive Review select the "right" LEAs; i.e., does the methodology truly select the worst-performing LEAs in the state for the most intensive level of review?  Second, does CDE's policy decision to exclude preschool achievement as a selection criteria for Performance Indicator Review mean that LEAs that are not meeting targets on the six elements of the preschool indicator are not selected for additional monitoring, and therefore are given a "meets requirements" determination?  Third, does the use of a N-size criteria mean that CDE is not monitoring for FAPE in the LRE for a significant number of children in California?

**Question 1:  Does CDE's Comprehensive Review selection methodology select the worst performing LEAs in California for most intensive level of review?**

**Answer:**
Yes.  For the 2018-2019 monitoring year, CDE selected 35 LEAs for Comprehensive Review.  The selection is based on a score of 62% or below.  As discussed by the Monitor in his report and at the April 29, 2019 hearing, there were an additional 94 LEAs that scored between 62.1% and 64.99% that CDE did not select for Comprehensive Review.  Below is a comparison of data from those groups on 8 of the 28 selection elements for Comprehensive Review.  At the recommendation of the Court, CDE also included an analysis of LEAs that had a selection score of between 65% and 75%; there were 345 such LEAs.

Comparison of LEAs selected for Comprehensive Review (62%) to those LEAs scoring between 62.1% and 64.99%.

Thirty-five LEAs selected for Comprehensive Review, using a 62% cut score
Number of Students with Disabilities in LEAs selected for Comprehensive Review: 162,580.[1]
22 Unified School Districts
7 High School Districts
3 Elementary School Districts
3 Charter Schools

Ninety-four LEAs, between 62.1% and 64.99% score
Number of Students with Disabilities in LEAs selected for Comprehensive Review: 65,565.
18 Unified School Districts
4 High School Districts
5 Elementary School Districts
67 Charter Schools

*Assessment Comparison*
More LEAs selected for Comprehensive Review are in red than LEAs not selected in the next higher scores comparison groups.

---

[1] Los Angeles Unified was selected for Comprehensive Review.  The number of children with disabilities in Los Angeles Unified is 67,977.



Using the Comprehensive Scoring and a cut score of 62%, LEAs selected for review are 5.24% more red on the on the Dashboard than higher scoring LEAs for the English Language Arts Assessment.



Using the Comprehensive Scoring and a cut score of 62%, LEAs selected for review are 17.14% more red on the on the Dashboard than higher scoring LEAs on the CR selection calculation for the Mathematics Assessment.

*Suspension Comparison*

Seventy-four percent (74%) of LEAs in the selection group for Comprehensive Review are Red or Orange in the Dashboard, while 58% of LEAs in the next grouping (with a selection score greater than 62%) are Red and Orange for the Dashboard for suspension.



*Least Restrictive Environment*

LEAs selected for Comprehensive Review have fewer students ages 6-22 in a regular class and more students in more restrictive settings than those LEAs scoring greater than 62%.



LEAs selected for Comprehensive Review have fewer students ages 3-5 who receive a majority of services in a regular early childhood program; however, fewer students are in a separate setting than LEAs scoring greater than 62%.  The difference between the two groups for students with disabilities ages 3-5 in a separate setting is 1.83%.



*Monitoring Activities*

LEAs not selected for Comprehensive Review may be selected for other monitoring activities.  All of the LEAs scoring between 62.1-64.99% are in one or more monitoring activities other than Comprehensive Review.  The following chart shows the monitoring activities for those LEAs:

| Monitoring Activity | Number of LEAs |
|---|---|
| Disproportionate | 18 |
| Significantly Disproportionate | 8 |
| Noncompliant Records | 89 |
| Performance Indicator Review | 94 |

**Question 2: Does the exclusion of preschool achievement as a selection criteria for Performance Indicator Review mean that LEAs that are not meeting targets on the six elements of the preschool indicator are not selected for additional monitoring?**

**Answer:**
No.  There were 191 LEAs that did not meet one or more of the preschool assessment targets.[2]  All of those LEAs are involved in one or more monitoring activities,[3] and none of them will receive an annual determination of Meets Requirements.



Of the 172 LEAs selected for Performance Indicator Review, 99 did not meet targets for preschool least restrictive environment.



---

[2] There are six preschool assessment targets.  41 LEAs missed all six targets, 22 missed five targets, 21 missed four targets, 45 missed three targets, 37 missed two targets, 25 missed one target.
[3] 180 of the LEAs are involved in two or more activities and 108 are involved in three or more.

pg. 5

**Question 3: Does the application of a minimum N-size criteria result in CDE "failing" to monitor the outcomes of a majority of students with disabilities in the State?**

**Answer:**
No.  As noted at the April 29, 2019 hearing, CDE applies an N-size criteria in the application of its indicator calculations that are part of monitoring selection.  Though it may appear concerning that 1,100 Districts and Charter Schools were excluded from the Dashboard calculations for the determination of a color, further analysis shows that the LEAs that were given a color represented 92% of all students with disabilities in California.

The chart below demonstrates that in a sampling of three FAPE indicators, CDE is consistently aggregating over 92% of all students with disabilities in the State into LEA calculations.



As noted at the April 29, 2019 hearing, CDE is developing a current small LEA selection methodology for application in the 2019-2020 monitoring year.

pg. 6

# CERTIFICATE OF SERVICE

Case Name: **Emma C., et al. v. Thurmond, et al.**   No. **3:96-cv-04179-VC**

I hereby certify that on <u>April 30, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' RESPONSE TO COURT'S REQUESTS REGARDING ADDITIONAL INFORMATION AT PHASE 2 HEARING**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>April 30, 2019</u>, at Sacramento, California.

| K. Spight | */s/ K. Spight* |
|---|---|
| Declarant | Signature |

SA2005104070
13693134.docx