Pages 1 - 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

EMMA C.; et al.,                    )
                                    )
            Plaintiffs,             )
                                    )
    VS.                             )    **NO. C 96-04179 VC**
                                    )
TOM TORLAKSON; et al.,              )
                                    )
            Defendants.             )
_____    )

                      San Francisco, California
                      Wednesday, February 19, 2020


          **TRANSCRIPT OF TELEPHONIC PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    STANFORD LAW SCHOOL
                    YOUTH & EDUCATION LAW PROJECT
                    559 Nathan Abbott Way
                    Stanford, California  94305
              **BY:  WILLIAM S. KOSKI, ATTORNEY AT LAW**

                    NATIONAL CENTER FOR YOUTH LAW
                    1212 Broadway - Suite 600
                    Oakland, California  94612
              **BY:  LEECIA JO WELCH, ATTORNEY AT LAW**
                  **FREYA E.K. PITTS, ATTORNEY AT LAW**

              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Marla F. Knox, RPR, CRR, RMR
              United States Official Court Reporter

1   **APPEARANCES**:   (CONTINUED)

2   For Defendants:

3                           OFFICE OF THE ATTORNEY GENERAL
                            State of California
                            1300 I Street
4                           Sacramento, California  95814
                     BY:   **KIRIN K. GILL, DEPUTY ATTORNEY GENERAL**
5

6
    Also Present:          **Kristin Wright, Director, Special
7                           Education Division, California
                            Department of Education**
8
                            **Shiyloh Duncan-Becerril, Education
9                           Administrator I, California Department
                            of Education**
10
                            **Scott A. Mlawer, Special Master**
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | <u>**Wednesday - February 19, 2020**</u>                    <u>**2:18 p.m.**</u> |
| 2 | <u>P R O C E E D I N G S</u> |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Calling Case Number 96-CV-4179, Emma C., |
| 5 | et al. versus Thurmond, et al. |
| 6 | Mr. Mlawer. |
| 7 | **MR. MLAWER:**  Mark Mlawer, the court monitor. |
| 8 | **THE CLERK:**  Thank you.  And for Plaintiffs. |
| 9 | **MR. KOSKI:**  William Koski from the Youth & Education |
| 10 | Law Project on behalf of the Plaintiffs, and I'm here with my |
| 11 | colleague Tara Ford. |
| 12 | **MS. WELCH:**  Leecia Welch at the National Center For |
| 13 | Youth Law on behalf of the Plaintiffs. |
| 14 | **MS. PITTS:**  Freya Pitts at the National Center For |
| 15 | Youth Law on behalf of the Plaintiffs. |
| 16 | **MS. GILL:**  Deputy Attorney General Karen Gill on |
| 17 | behalf of State Defendants. |
| 18 | **MS. DUNCAN-BECCERRIL:**  Shiyloh Duncan-Beccerril for |
| 19 | Defendants. |
| 20 | **MS. WRIGHT:**  Kristin Wright, State Director at |
| 21 | California Department of Education Special Education. |
| 22 | **THE CLERK:**  Okay. |
| 23 | **THE COURT:**  All right.  Is that everybody? |
| 24 | (No response.) |
| 25 | **THE COURT:**  Okay.  Let me start by telling you what I |

 1    have read and what I have not read so you just -- so that you

 2    know where I am; what I know and what I don't know.

 3         I read the CD's request to reschedule the April CMC.  As

 4    you see for now, I kept the April CMC on there just kind of --

 5    just so it would be on there for now; but we have scheduled

 6    this conversation with you.

 7         I have also read -- I pulled up the Phase II -- the

 8    further Phase II compliance report, and I read through most of

 9    that.  I have to admit to you that I didn't get through all of

10    it last night before falling asleep; but -- and not because it

11    was boring.  I actually thought it was quite interesting.  And

12    the most interesting thing, of course, is that Shiyloh's data

13    identified -- what was it called?

14              MS. DUNCAN-BECCERRIL:  Noncompliance.

15              THE COURT:  Data identified noncompliance, that is

16    now -- that can now rest in piece, I guess; is that right?

17              MS. DUNCAN-BECCERRIL:  Yes, that's correct.

18              THE COURT:  No more data identified noncompliance.

19              MS. DUNCAN-BECCERRIL:  Well, we are still going to

20    monitor for compliance elements.  We are just not going to call

21    it that anymore.

22              THE COURT:  Right, that's what I meant.

23              MS. DUNCAN-BECCERRIL:  New improved version.

24              THE COURT:  And so I see from the parts that I read,

25    you know, some of the reforms that the State is it

```
 1   implementing.  And in particular it sounds like the State is
 2   going to adopt a methodology somewhat similar to the
 3   methodology that Mark adopted for, you know, identifying
 4   districts that are in need of what we previously called
 5   comprehensive review.
 6        I didn't quite understand -- and maybe part of it is I
 7   just haven't -- I didn't get to the parts of the report that
 8   discuss it -- I didn't quite understand the discussion of the
 9   targets.  I didn't have a -- I didn't have a great
10   understanding of why the target -- why the creation of the new
11   six-year targets are being delayed and why we have these sort
12   of temporary targets in place.  And there was something about
13   not being able to go public with the new six-year targets in
14   time for the June review that we had scheduled.  I didn't
15   really understand any of that stuff very well.
16        So, anyway, that is -- that is kind of the basic
17   description of what I have looked at so far and what I
18   understand and what I don't understand.  And I guess the
19   primary purpose of this discussion is to figure out whether we
20   are indeed plowing ahead in June or not.
21        So could I may be start with an explanation from the folks
22   at the State with what is going on and why we might -- why you
23   have put on the table this possibility of not going forward in
24   June.
25             MS. GILL:  Good afternoon, Your Honor.  This is Karen
```

1  Gill.  I'm going to start and turn it over to Ms. Beccerril to

2  provide a more fuller explanation.

3       Just so it is clear, State Defendants absolutely want to

4  plow ahead.

5       For clarity, the whole discussion about the targets as it

6  concerns the next six-year cycle, going all the way back to

7  August of 2019, we were talking about setting a schedule for

8  further Phase II hearings.  And at the time one of the things

9  that State Defendants had raised as an issue in terms of timing

10  was that there were stakeholder discussions underway concerning

11  the next cycle -- six-year cycle target that we were going to

12  be submitting.

13       And one of the things we identified was that if we had a

14  targeted June 2020 set of hearings, in terms of the

15  submissions, the targets wouldn't be publicly released in time

16  for either our initial submission or a response to the

17  monitor's report.

18       So we had set an April 22nd CMC to discuss -- you know, to

19  the extent the Monitor had concerns with how to analyze targets

20  that would be released at that time and if he felt he had

21  sufficient time to address them in advance of the hearing; and

22  everybody had sort of agreed to table the issue for that

23  discussion in April.  And I think everybody agreed that it was

24  a somewhat discrete issue on the targets.

25       In terms of -- in terms of now what has happened, frankly,

1    the Feds have delayed the next six-year cycle.  They announced

2    that in late October of 2019, and that was after several

3    stakeholder meetings in which I think Mr. Koski and Ms. Pitts

4    were a part of as well concerning the next cycle.

5        This is all to say that the Feds had directed all the

6    states including California to create extension targets that go

7    as part of the current six-year cycle, I guess, turn it into a

8    seven-year cycle.

9        So we have submitted those targets to the stakeholder

10   group for input.  They have been publicly released; submitted

11   to the State Board earlier this year, and they were approved I

12   think in January of 2020.

13       And so we are ready to plow ahead with those targets; but

14   because the whole issue of the targets had come up last time,

15   we just wanted to make sure that the Court was fine moving

16   forward.

17           **THE COURT:**  Well, let me -- okay.  So explain to me

18   again, what is it that the Feds did?

19           **MS. DUNCAN-BECCERRIL:**  This is Shiyloh Beccerril.  I

20   can sort of give you an idea.

21       So when we met in August, we -- I believe we had said we

22   were waiting for the U.S. Department of Education to publish

23   its new six-year packet, and they had assured us it would be at

24   any time.  So we took the current set of --

25           **THE COURT:**  What is the -- when you say the -- sorry,

1    to interrupt -- but when you say "waiting for the Department of

2    Education to publish its new six-year packet," what does that

3    mean.

4          **MS. DUNCAN-BECCERRIL:**  Yeah.  So the U.S. Department

5    of Education prohibits us from creating new benchmarks -- new

6    baselines and new targets on indicators unless there has been a

7    significant change in the data collection of the data

8    calculation; neither of which occurred.

9          And so we cannot set new targets unless those two elements

10   occur.  We have to wait until a new set of -- until that cycle

11   ends and a new cycle begins.  And so when we were discussing it

12   with you, it was pretty fortuitous because the cycle was ending

13   this year; and we had expected to have a new set of targets for

14   the next six years.

15         So we began to meet with stakeholder -- with our

16   stakeholder groups in August and September to set new targets

17   for the next six-year cycle so that we could present them to

18   the Advisory Commission On Special Education and to the State

19   Board Of Education for approval.  And then it would be

20   submitted to the Court around April.  That was our anticipation

21   because the current cycle was ending.

22         **THE COURT:**  Okay.

23         **MS. DUNCAN-BECCERRIL:**  And then -- and then we went

24   through that process.  We held five stakeholder meetings.  We

25   had some draft targets and then the U.S. Department of

1   Education said:  We will not be publishing the new set of --

2   the new round of targets for you to set this year.  We are not

3   ready.  We are requiring you to set extension targets which

4   means we can't set new baselines; we can't set a new set of

5   targets.  We simply must extend the current targets.

6       So what we did was we took the current targets as they

7   were and extended them as -- so if it was 1 percent per year,

8   we extended them an additional lower 1 percent.  We didn't keep

9   them stagnant.  We continued to try make them ambitious but in

10  the same vein that they had already been reducing.

11          **THE COURT:**  But the upshot is that these extension

12  targets are far more similar to the old targets that we already

13  started looking at than they will be to the new targets that

14  you were working on this past fall and presumably will resume

15  working on once you get the green light from the Feds; is that

16  correct?

17          **MS. DUNCAN-BECCERRIL:**  That's correct.

18          **THE COURT:**  Okay.

19          **MS. DUNCAN-BECCERRIL:**  And so just for your knowledge,

20  the U.S. Department of Education published today the new set of

21  indicators for the next six years.  And so those are published

22  today in the Federal Register.

23      They did make some changes to indicators; most

24  significantly to our assessment indicator.  So it should be

25  noted that we will need to reconvene the stakeholder groups to

1   review those targets and to determine baselines and targets for

2   those new indicators.

3          **THE COURT:**  Okay.  But so if we were to go -- if we

4   were to plow ahead in June, we would look at all the other

5   changes you have made as reflected in this report that I read

6   most of last night, and we would also look -- we would still, I

7   gather, be looking at what you are planning for the new

8   six-year cycle for targets for the new six-year cycle.

9          **MS. GILL:**  Your Honor, this is Karen Gill.  No.  In

10  terms of the look for this particular phase in anticipation of

11  the June hearings, we would be looking at the extension

12  targets.  The delay that -- the Federal Government's delay in

13  terms of the next cycle means it would be about a whole other

14  year before we would publicly release targets for that next

15  cycle.

16         **THE COURT:**  Well --

17         **MS. DUNCAN-BECCERRIL:**  This is Shiyloh Beccerril.  The

18  U.S. Department of Education anticipates that -- so, first,

19  they have to go through a 60-day comment period with the

20  information that was published today.  They must respond to all

21  the comments.  Then they will publish another 30-day comment

22  period with any revisions, and they anticipate finalizing the

23  packet for us to actually act on prior to August 30th, 2020.

24         So it's still not a finalized packet.  It gives us an idea

25  of where they are heading, but there are some changes that they

1  intend to make around the assessment indicators and the LRE

2  indicators; but it is not a final packet.

3      **THE COURT:**  So the work that you did in the fall with

4  the stakeholders and coming up with your -- you know, getting

5  to the point -- I think you said you had come up with targets

6  already.  Is that -- did I hear that correctly?

7      **MS. DUNCAN-BECCERRIL:**  We had developed draft targets

8  and had a draft report.  Did not go to the Advisory Commission

9  On Special Education, and it did not go to the State Board.  It

10  was shared solely amongst the stakeholder group.

11      **THE COURT:**  So that work that you did, how relevant is

12  that going to be to the work that you need to do going forward

13  in the next year on these targets?

14      **MS. DUNCAN-BECCERRIL:**  So I think it is pretty

15  relevant.  We -- there is only a few indicators that are

16  changing.  Again, like I said, Indicator 3 is an assessment

17  indicator.  It looks like it will be changing.  Indicator 1 is

18  changing if they keep it the same way as it is written now in

19  the Federal Register.  And then there are some small changes

20  made to the least restrictive environment indicators.  However,

21  they are not making any changes to the indicator -- to the

22  dropout indicators, the suspension indicators, the parent input

23  indicator, the pre-qual assessment and then the resolution

24  sessions indicator; Indicators 15 and 16.  Those they are not

25  making --

1        But it should be noted that it is something that I think

2   we talked a little bit about prior to your joining the call

3   with the monitor is the only targets that are really addressed

4   in our monitoring that would be affected by this delay would be

5   assessing Indicators 5 and 6, which are the least restrictive

6   environment indicators.

7        **THE COURT:**  Okay.

8        And so what is it that you are proposing that we do or not

9   do in June?

10       **MS. GILL:**  Your Honor, this is Karen Gill.  We are

11  proposing to just plow ahead as scheduled.  We just want to be

12  sure that the Court doesn't feel that we had informed them too

13  late of the delay or that the Court may have had a different

14  timeline or expectation for when and how the new cycle's

15  targets would be addressed; but State Defendants are

16  comfortable moving forward as is based on the extension targets

17  and really based on all the other changes we have made to our

18  monitoring system.

19       **THE COURT:**  But I guess the question is --

20       **MS. GILL:**  Sorry, selection.

21       **THE COURT:**  Selection system.  So what -- so I guess

22  the only question I have is:  What is the point of reviewing

23  the extension targets?  What value is there in doing that?

24       **MS. GILL:**  So I -- go ahead, Mr. Koski.

25       **MR. KOSKI:**  Your Honor, this is William Koski on

behalf of the Plaintiffs.

Just so you know, the Plaintiffs' general position is that we are fine with moving ahead on the current schedule to finish up Phase II and then more on to Phase III.  What we would like to do, though, is -- we feel that the Court and the Court Monitor and Plaintiffs should have an opportunity to ultimately weigh in on the indicators that are going to be used for the six-year renewal.

As it is, the extension indicators, as you pointed out, basically continue on with slight -- slightly more rigorous targets from the prior targets; but the new targets in some areas are going to be substantially more rigorous than that. And, specifically, least restrictive environment is one place where the stakeholders really pushed hard to ensure that the State set much, much higher targets than the current targets and extension targets.

So it would be Plaintiffs' position that it is okay to push ahead with the rest of the Phase II process so long as when the ultimate targets are set, there is an opportunity for the Plaintiffs and the Court and the Court Monitor to evaluate whether or not those targets are rigorous enough.

**THE COURT:**  Well, and then -- you know, the question is:  Could there be any kind of front-end discussion of that given where the State is?

I got the sense from the State's filings that its answer

to that is no; that we just -- we are not going to be at a

point where we can examine -- you know, where we can be vetting

issues in June regarding the new six-year targets.  By the same

taken --

     **MS. GILL:**  This is Karen Gill.  That's correct in

terms of -- again, this has to do with the ability for the

State to publicly release those targets given the series of

approvals they have to go through first.

     **THE COURT:**  Okay.

     **MS. GILL:**  Right.

     **THE COURT:**  But by the same token, isn't it just a

waste of time for us to be drilling down on the extension

targets in June?  I mean, shouldn't -- maybe it would make more

sense -- I think this might be what Mr. Koski was suggesting

although I'm not certain -- maybe it would make more sense to

just do everything that we were planning on doing in June

except put aside the targets because they are not ready yet.

And then we will have to circle back to those maybe when we get

to Phase III or whatever.

     **MR. KOSKI:**  Your Honor, this is William Koski again.

Yes, that is exactly what Plaintiffs would propose.

     **MS. GILL:**  Your Honor, this is Karen Gill.  That's

fine.  And I think there may be some value in using the

extension targets for some of the analyses that are going to be

performed with the new methodology.  So for that reason, we

1   weren't ready to completely jettison them.   We are not opposed

2   to that proposal.

3          THE COURT:   I mean, I guess what I would say is I will

4   leave to you to decide whether you want to tee that up.   It

5   seems to me that we shouldn't be reviewing those and discussing

6   those just for the sake of reviewing those, if you know what I

7   mean; right.   I mean --

8          MS. GILL:   Understood.

9          THE COURT:   It is only if our discussion about those

10  somehow will assist you in the work you are going to be

11  performing in the coming months on the new targets that it

12  makes sense to have a discussion of that.

13       And then the question I have to ask myself is, you know,

14  this stuff -- like, to get to a point where I can discuss this

15  stuff meaningfully with you guys, I have to do a ton of

16  drilling down; right.

17       So the question is:   Does it make sense for me to do that

18  ton of drilling down on the extension targets with an eye

19  towards assisting you and informing your discussions as you go

20  forward; but what I would say is I will leave that to you.

21       If you want to try to tee some of that up as part of this

22  June Phase II process, go ahead and tee it up.   And if I

23  conclude that I'm just not in the position to drill down on it

24  nor be helpful on it, I can let you know and if --

25          MS. GILL:   Your Honor, this is Karen Gill.   That's

1    fine with us.  And I think one of the things that was mentioned

2    a few minutes ago by Ms. Beccerril is the bigger changes I

3    think are really to Indicators 5 and 6.  And it may be that we

4    are in a position to move forward on everything else with the

5    exception of those two which we expect will change in the next

6    cycle.

7        So, again, with your guidance, we are fine continuing to

8    move ahead on everything.  And we are fine allowing the Court

9    and the Plaintiffs and the Court Monitor to address the new

10   targets when they are released next year too.

11       THE COURT:  Okay.

12       MS. GILL:  I think -- part of it is that State

13   Defendants want to make sure the Court knows that we are

14   mindful of the Court's resources.  We are ready to keep moving

15   forward.  We don't want to delay anything, and we don't want

16   the fact that events outside of the State's control, for

17   example, may have caused some unanticipated delays.

18       THE COURT:  Well, that all sounds fine to me.  And, as

19   I said, I mean, if you-all think there is value in teeing that

20   up now or teeing up as much as you can of that now, then I

21   would say go ahead and do it.

22       And, you know, if I conclude that I'm not operating with

23   enough information to have a meaningful discussion with you-all

24   about it, I won't be shy about -- I won't be shy to say so.

25       Mark, do you have any --

1          **MS. GILL:**  Thank you, Your Honor.

2       **THE COURT:**  -- thoughts that you want to offer or

3    questions that you want to pose?

4       **MR. MLAWER:**  I do have a couple of questions about the

5    extension targets, but I'm not -- I am a little bit confused

6    about whether I have already written some parts of that section

7    of this report.

8          **THE COURT:**  Having a little trouble hearing you, Mark.

9          **MR. MLAWER:**  I'm sorry.  Is this better, Judge?

10         **THE COURT:**  Yeah, that sounds a little better.

11         **MR. MLAWER:**  I have already written parts of the

12   target section of this report based on the extension targets.

13   One target -- this is not an extension target.  There is one

14   target that is still relevant that does not have anything to do

15   with the State performance plan and that is the child find

16   target because that is not part of the State performance plan;

17   but I was proceeding as if -- to analyze the extension targets.

18      So I would just like to understand whether we are moving

19   ahead with that or not so I can strike the section from the

20   report or not.

21      In addition, with respect to the extension targets,

22   Shiyloh mentioned a couple of things about the needs to be a

23   change in baseline, for example, in order for a State to set

24   new targets during a cycle --

25         **THE COURT:**  You are fading out again, Mark.

1          **MR. MLAWER:**  I'm sorry.  Any better?

2          **THE COURT:**  Yeah.

3          **MR. MLAWER:**  I have not yet found that in any of the

4    relevant documents a reference to a set of rules.  I believe

5    Shiyloh mentioned two rules that would govern extension

6    targets.  So I would appreciate with respect to the extension

7    targets if Cindy could send me links to whatever documents have

8    that assertion in them.

9          As far as proceeding now, I'm happy -- if the consensus is

10   let's analyze and discuss the extension targets, that's fine

11   with me.  If the preference is not to deal with targets again

12   until next year when the six year runs out, that is also fine

13   with me.

14         **THE COURT:**  Well, what I'm hearing from you --

15         **MR. KOSKI:**  To be clear, Your Honor -- this is William

16   Koski again -- Plaintiffs don't concede that makes sense to

17   actually analyze the extension targets right now because the

18   stakeholder group has in many, if not most, instances proposed

19   much more rigorous targets for the six-year cycle coming up.

20         Again, if the State wants to run calculations and models

21   based on the extension targets to try to demonstrate that its

22   new formula is effective, by all means; but I do want to, you

23   know, reserve the ability to criticize the fact that the

24   extension targets are too low in some instances.

25         **THE COURT:**  Well, I thought that what I heard the

1  State saying just now -- just most recently was that we will be

2  able to figure out a way to tee up most of what we need to tee

3  up with respect to the six-year targets, and that we will -- we

4  are happy to plow ahead that way.  Did I misunderstand what the

5  State was saying?

6        **MS. GILL:**  Pardon me, Your Honor.  This is Karen Gill.

7  The last part unfortunately cut out and we weren't able to hear

8  you correctly when you said what you understood the State to be

9  saying.

10       **THE COURT:**  Okay.  I understood the State to be

11  saying:  Look, actually on reflection, we can tee up, you know,

12  most of what we need to tee up with respect to the six year --

13  the new six-year targets for June.

14       **MS. DUNCAN-BECCERRIL:**  So -- this is Shiyloh

15  Beccerril.  So really the only targets we are talking about are

16  the school-age least restrictive environment and the preschool

17  least-restrictive environment.  Those are the only two current

18  APR indicators that we would use for monitoring that.  And

19  obviously there is some changes that are being made to the way

20  that they are being calculated.

21       So could we analyze data -- you know, could we provide

22  information based on the stakeholder group?  Yes, absolutely.

23  I'm not opposed to any of that.  Do we have a feeling of what

24  the stakeholders did say when they thought they were the

25  original targets?  Absolutely.  So all of that can be

discussed.

Here is the only caveat:  They are making changes to
indicate the school -- age least restrictive environment and
the preschool least-restrictive environment.  So their
request -- the U.S. Department of Education has published just
today an intent to remove all 5-year-old preschoolers or
5-year-old kindergarteners from the preschool least-restrictive
environment and put them in school-age.

So now we have a new set of students who are now going to
be part of that data that we would have to analyze that.  Can
we present that?

THE COURT:  Shiyloh, can you slow down a little bit
for the court reporter?

MS. DUNCAN-BECCERRIL:  Oh, my God.  It's been too long
since I have been in the court.  That's the problem.  And I
can't see her because that's usually how I would see --

THE COURT:  Well, if you could see her, you would feel
for her.

(Laughter)

MS. DUNCAN-BECCERRIL:  I do feel for her.

Okay.  So can we provide the data?  Yes.  Can we show what
the data looks like?  Can we talk about what the indicate --
the stakeholders said at the time we held the stakeholder
meeting?  Yes.

The concern that I have is that I don't want to come in

1   and bring you data and then a month later U.S. Department of

2   Education publishes its final rules around these indicators,

3   and they make some kind of change that we are not prepared for.

4        So we can provide you that with the anticipation of this

5   is where we are looking towards.  This is our intent.  Our

6   intent is to make them more rigorous.  Our intent is to make

7   them much more true to where the data is at and to hold them

8   strict to a level of liability that it is rigorous that is

9   outlined in law.

10       However, I want to make sure it is going to be based on --

11  what we present is going to be based on what is real.  So we

12  can present something to you with the caveat that this might

13  change and that we should potentially table it until they have

14  finalized it.

15       But, again, we are only talking about two indicators that

16  are used for our selection of monitoring.

17            **THE COURT:**  Okay.  I think I understand that.

18            **MS. DUNCAN-BECCERRIL:**  School-age LRE and preschool

19  LRE.

20            **THE COURT:**  Yeah, I think I understand that; and I

21  think that you-all should just try to plow ahead and -- I mean,

22  I don't -- I don't see the point of just going in in June and

23  conducting an analysis of these extension targets, which is --

24  is going to be more or less the same -- I mean, it is such a

25  temporary situation.  And it's more or less the same as the

1   situation we were looking at last time.

2       So I'm just -- I'm just not sure what is the benefit of

3   doing that.  So why not do it the way that you are proposing

4   with the -- with all of the appropriate caveats.  And it may be

5   that a final pronouncement can't be made on the issue of

6   targets.

7       It may be that, you know, there has to be -- you know, a

8   mechanism in place like maybe during Phase III or wherever

9   where we look back to what the State has adopted, but it seems

10  to me that there could be some value in sort of having a review

11  of what is coming down the pike and, you know, having that be

12  part of the process.

13      It could be that Mark identifies some major problem with

14  something that you-all haven't thought of or the -- or not.  I

15  mean, there may be value in having Mark express a view that

16  this is, you know, that this is in my view compliant.

17      So I don't think we would be looking to make any

18  definitive pronouncements on the targets given the posture, but

19  why not at least begin the process of analyzing them?

20          **MS. GILL:**  Your Honor, this is Karen Gill.  That's

21  fine.  That's fine.  And we are glad that the Court made time

22  to talk to us about this issue today.

23          **MR. MLAWER:**  Can I interrupt for one moment?  In order

24  for us to do that, if the expectation would be that I would

25  have some analysis about those draft targets, I would need to

1   have the draft targets really quickly since my report is due in

2   less than three weeks from now.

3         **THE COURT:**  I'm having a real hard time hearing you,

4   Mark.

5         **MR. MLAWER:**  I'm sorry, Judge.  I was just asking that

6   if we are going to plow ahead and discuss draft targets for

7   example, for the six, then I would need to have them in time to

8   put them in my report or to do a supplemental report that is

9   going to come down the pike later because my report is due in

10  less than three weeks.

11        **THE COURT:**  I'm going to let you-all work that out

12  amongst yourselves.

13        **MS. GILL:**  Thank you, Your Honor.  This is Karen Gill.

14  Your Honor, just to clarify, do we still need to proceed with

15  the CMC set for April 22nd?

16        **THE COURT:**  I don't know.  The question is whether

17  that is necessary now.  Like I said, I just kept it on there as

18  a placeholder --

19        **MS. GILL:**  Right.

20        **THE COURT:**  -- in case we thought we would need it.

21        **MS. GILL:**  But --

22        **THE COURT:**  I will defer to you on whether we need it.

23        **MS. DUNCAN-BECCERRIL:**  From the State Defendants'

24  vantage point, we don't need that further case management

25  conference; and we can discuss with the Court Monitor and the

```
 1    Plaintiffs some of these issues around the targets going

 2    forward so --

 3              THE COURT:  Okay.  Everybody okay with taking the case

 4    management conference off for April?

 5              MR. KOSKI:  Plaintiffs are fine with that, Your Honor.

 6              MR. MLAWER:  Yes, Your Honor.

 7              THE COURT:  Anything you-all want to discuss right

 8    now?

 9              MR. KOSKI:  Nothing from Plaintiffs, Your Honor.

10              MS. DUNCAN-BECCERRIL:  Nothing from State Defendants,

11    Your Honor.

12              THE COURT:  Thank you very much.  We will plan on

13    seeing you-all in June then.  Maybe I should take a glance,

14    while I have you-all here, and make sure that nothing weird has

15    happened to our schedule.  I hear Kristen chuckling in the

16    background.

17                        (Pause in proceedings.)

18              THE COURT:  I think we should still be a go.  It looks

19    like we haven't had anything major happen with us that would

20    interfere with the June 8th and June 10th.  It looks like that

21    is probably still a go from our end.  So we will plan on seeing

22    you then.

23              MS. GILL:  Great.  We look forward to seeing you.

24              MR. KOSKI:  Thank you, Your Honor.

25                   (Proceedings adjourned at 2:51 p.m.)
```

<u>**CERTIFICATE OF REPORTER**</u>

        We certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled matter.


DATE:   Tuesday, March 17, 2020




_Marla Knox_
_____

        Marla F. Knox, RPR, CRR, RMR
          United States Court Reporter