XAVIER BECERRA
Attorney General of California
DARRELL W. SPENCE, State Bar No. 248011
Supervising Deputy Attorney General
KIRIN K. GILL, State Bar No. 259968
CHRISTINE M. MURPHY, State Bar No. 183835
Deputy Attorneys General
State Bar No. 259968
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6172
 Fax: (916) 324-5567
 E-mail: Kirin.Gill@doj.ca.gov
 E-mail: Christine.Murphy@doj.ca.gov
*Attorneys for Defendants
California Department of Education, Tony
Thurmond, in his official capacity as the State
Superintendent of Public Instruction, and
State Board of Education*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA C., et al., <br><br> Plaintiffs, <br><br> v. <br><br> THURMOND, et al., <br><br> Defendants. | 3:96-cv-04179-VC <br><br> **STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)** <br><br> Judge: The Honorable Vince Chhabria |

1

STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL
DISTRICTS FOR MONITORING (3:96-cv-04179-VC)

Pursuant to the Court's June 18, 2020 Order re Further Filings on Selection of Small Districts for Monitoring (Dkt. 2584) (the "6/18/20 Order"), Defendants California Department of Education ("CDE"), Tony Thurmond, in his official capacity as the State Superintendent of Public Instruction, and State Board of Education ("SBE") (collectively, "State Defendants" or the "State") hereby submit their Response, attached hereto as **Exhibit 1**. The State submits this Response to further show that the State's data analysis activities and proposed data analysis activities with respect to small districts are sufficient to allow the State to effectively fulfill its monitoring and enforcement duties under the Individuals with Disabilities Act (the "IDEA"); to address the Court's concerns as set forth in the Court's July 5, 2019 Order re State's Compliance at Phase 2 (Dkt. 2520), the 6/18/20 Order, and during the hearings on June 8 and June 10, 2020; as well as to address and respond to the points raised by the Monitor and the parties in connection with the Further Phase 2 Proceedings.[1]

As stated at the June 10, 2020 hearing, the State confirms that CDE's policymakers are available to discuss the information presented in the attached Response on Wednesday, July 1, 2020 and Wednesday, July 8, 2020.

//
//
//
//
//
//
//
//
//

---

[1] The State hereby incorporates by reference its Further Phase 2 Submission (Dkt. 2545), CDE's Request to Reschedule the April 22, 2020 Telephonic Case Management Conference (Dkt. 2546), the State's Response to the Monitor's February 10, 2020 Information Request (Dkt. 2553), the State's Response to the Monitor's Review of Further Phase 2 Submission (Dkt. 2563), as well as any and all testimonial evidence provided on the State's behalf on September 3, 2019, February 19, 2020, June 8, 2020, and June 10, 2020.

2

Dated: June 26, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General

/s/ Kirin K. Gill
/s/ Christine M. Murphy
KIRIN K. GILL
CHRISTINE M. MURPHY
Deputy Attorneys General
*Attorneys for Defendants California Department of Education, Tony Thurmond, in his official capacity as the State Superintendent of Public Instruction, and State Board of Education*

SA2005104070
34181011.docx

3

STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (3:96-cv-04179-VC)

**EXHIBIT 1**

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

## TABLE OF CONTENTS

Introduction ................................................................................................................. 2
Revised Proposed Model ............................................................................................ 4
    Grouping ................................................................................................................. 5
    Secondary Analysis ............................................................................................... 6
Alternative Option – Cyclical Monitoring of Small LEAs ............................................. 8
Summary .................................................................................................................. 10

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

**Introduction**

Over the last year, California Department of Education's (CDE's) policymakers have actively attempted to address the concerns raised in the July 5, 2019 Order (7/5/19 Order, Dkt. 2520). CDE generated several data models and methods of analysis to ensure that students with disabilities (SWD) served by small local educational agencies (LEAs) are included in the data analyses used to select LEAs for targeted and intensive monitoring, while simultaneously ensuring equity and fairness in the selection of LEAs of all sizes.

A major concern – and one that was discussed at length during the June 8 and 10, 2020 evidentiary hearings – is the methodology CDE uses to group and disaggregate individual small LEAs to identify for targeted and intensive monitoring in performance indicators. The Court shared its concerns that CDE's current grouping methodology would prevent the State from identifying smaller LEAs for Intensive Monitoring, as well as the reasonableness of the secondary criteria applied to individual LEAs included in a group.[1] The Court shared an additional concern that the grouping methodology currently selected by CDE results in a wide range of small LEA group sizes, both in the number of SWD and small LEAs contained therein.

Since the June 10, 2020 evidentiary hearing, and in an effort to respond to the Court's continued concerns, CDE has created and considered multiple additional models for selecting small LEAs for further monitoring activities. Each model presented benefits and drawbacks. CDE provides the findings below:

- CDE considered alternative grouping structures. CDE's policymakers considered grouping by congressional district boundaries[2] and aggregating multiple years of data, but these options would not be feasible for the State. Grouping small LEAs by congressional districts does not work because a single LEA can span across multiple congressional district boundaries. The Plaintiffs' suggestion of aggregating multiple years' data[3] is also not feasible. Data for small LEAs that are charter schools may not be available for each year, and because these LEAs may be so small that, even aggregating three years of available data still would not yield an adequate SWD count to apply a data calculation and obtain an adequate result.

- A few other grouping options were suggested and modeled, but are not feasible for the State to perform. Two options CDE considered involved (1) grouping small LEAs by California County Superintendents Educational Services

---

[1] CDE maintains that its previously proposed grouping methodology with respect to small LEAs is rational and therefore compliant with federal law.
[2] See 6/10/20 Hr. Tr. at 53:22-24, 55:25 and 90:3.
[3] See Dkt. 2568 at p. 10.

Page 2 of 11

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

Association (CCSESA) regions,[4] and, (2) grouping small LEAs by their county.[5] (6/10/20 Hr. Tr. at 54:13-21). But neither of these options necessarily addressed all of the concerns articulated around grouping small LEAs, as grouping by CCSESA Regions would result in very differently sized groups, and grouping by the county would generate small LEA groups of fewer than 100 SWD.

- CDE ran models suggested by the Plaintiffs[6] that would omit grouping and secondary analysis of small LEAs altogether, and separate out LEAs into three tiers. This model simplifies the process, but also allows for each student to count for more than one percent of the calculation, potentially identifying very small LEAs (1-10) for intensive monitoring unnecessarily. This option would not be feasible for the State.

- Finally, CDE developed models to adjust the grouping using a random methodology and made adjustments to the secondary analysis. This model, described below as CDE's Revised Proposed Model, addresses the concerns of the Court related to grouping and secondary analysis and identifies LEAs CDE believes are in need of intensive and targeted monitoring.

CDE's policymakers reiterate that there is no perfect method to address this issue, because of the vast differences in size and demographics of the more than 2,200 LEAs (including charter schools) in California. The difference between large and small districts presents two concerns: When using percentages to measure performance, smaller LEAs may be flagged for issues that are actually episodic, while larger LEAs are more likely to be flagged for more systemic issues. Further, 92% of SWD are served by large LEAs; however, small LEAs comprise 70% of LEAs in the State.[7] CDE's policymakers are concerned with how to ensure that small LEAs are appropriately included in the

---

[4] California Department of Education's Focused Monitoring and Technical Assistance Consultants are assigned geographically and by quality assurance activity to align with the eleven California County Superintendents Educational Services Association (CCSESA) regions. A map of the regions is accessible on CDE's Webpage at https://www.cde.ca.gov/sp/se/qa/fmtacncnt.asp.

[5] This grouping methodology groups small LEAs by the county for which the LEA is located, or in the case of a charter school, the county the charter school's authorizing agency is located. This differs from CDE's current grouping methodology that groups small LEAs by county, unless the charter school LEA is a member of a charter SELPA.

[6] Because State Performance Plan (SPP) targets used to select LEAs for Targeted Monitoring are a product of stakeholder engagement, public review and comment, California State Board of Education review and approval, and ultimately, review and approval by the federal Office of Special Education Programs, CDE did not generate any models using different targets for SPP Indicators to apply specifically to small LEAs.

[7] CASEMIS December 2018, ages 6-21. Large LEAs served 648,444 of the total SWD count of 702,413. Small LEAs comprise of 1,581 of the total 2,247 LEAs.

Case 3:96-cv-04179-VC   Document 2590   Filed 06/26/20   Page 8 of 16

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

selection and monitoring process without redirecting resources that could be better used for LEAs with larger numbers of low-performing students, as the performance of the 8% of SWD served by small LEAs is not comparative to the performance of the other 92% of SWD served by large LEAs. CDE has a limited number of resources and cannot conduct an intensive review of every LEA in the State annually.

In the following sections, CDE provides its revised proposed model to address the Court's concerns shared during the June 2020 hearings and outlined in the June 18, 2020 Order (Dkt. 2584). Due to time constraints, this model and the findings summarized below utilized existing statistical software programs[8] used in CDE's previous submission. (Dkt. 2545). The State further analyzed this model for the State to use in future monitoring activities, and applied to the selection for the Intensive Monitoring – Preschool Age and Targeted Monitoring – Performance monitoring activities.[9] CDE's policymakers believe that this revised proposed model applies rational methodologies for analyzing small LEAs and is therefore compliant with federal law.

**Revised Proposed Model**

The Court expressed concerns with CDE's methodology to group and disaggregate individual small LEAs to identify and select for targeted and intensive monitoring in performance indicators. CDE's current methodology for selecting small LEAs for intensive monitoring is a multi-step process. At a high level, the process components to analyze, identify, and select LEAs as follows, and apply to selection for both intensive and targeted monitoring:

- Gather requisite data for each indicator
- Categorize by age
- Determine LEA size by count of SWD
- Group small LEAs
- Apply data calculations for each indicator

---

[8] CDE created the models presented here with existing statistical software programs and used school year 2018-2019 data. CDE expects two changes in the next monitoring year, but these changes were not incorporated in the models including in this filing due to time constraints: 1) for Intensive Monitoring – School Age, CDE will replace Indicator 5c in favor of Indicator 5b to measure school age least restrictive environment (LRE) (See Dkt. 2563 at p. 3); and 2) Students age 5 and served in Kindergarten will be included in Indicator 5, school age LRE. These students were previously included in Indicator 6, preschool age LRE. OSEP has proposed incorporating these students in Indicator 5, school age LRE, but as of this date, OSEP has not issued final guidance.

[9] This submission only addresses selection of small LEAs for Intensive Monitoring – Preschool Age, Intensive Monitoring – School Age, and Targeting Monitoring – Performance. The proposed selection methodologies would not affect CDE's selection with respect to the other monitoring activities discussed in its January 31, 2020 Further Phase 2 Submission (Dkt. 2545).

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

- Rank Performance
    - Intensive: Decile, sum rank scores, and calculate percentage
    - Targeted: SPP Targets/Dashboard/Sped student rate
- Initial identification
    - Intensive: Order percent low to high, select bottom 10% (and same scoring)
    - Targeted: Met criteria
- Secondary analysis for small LEA groups

CDE's revised proposed model retains the definition of a small LEA—fewer than or equal to 100 SWD -- and leverages the same processes that CDE proposed in its January 31, 2020 Further Phase 2 Submission. (Dkt. 2545). However, this model proposes to group small LEAs randomly, bifurcate small LEA groups and large LEAs, and then apply the data calculations, and alter the secondary selection to require individual small LEAs in selected small groups to meet half of the criteria instead of just one of the criteria.

**Grouping**

CDE's revised proposed model would replace the current methodology of grouping by county and charter SELPAs with randomized grouping. Grouping small LEAs randomly evens out the size of both the small LEA group and the total SWD count contained therein. This change addresses the Court's concern regarding El Dorado County Charter SELPA--that CDE's previous grouping methodology resulted in one group of 338 small charter LEAs, totaling 13,457 SWD, and another small LEA group of two small LEAs, totaling 44 SWD.

Under the revised proposed model, each iteration will generate a new group of LEAs with varying total SWD counts. **Figure 1** below displays the results of CDE's proposed randomized grouping methodology of small LEAs for Intensive Review – School Age two separate times, as well as the results of CDE current grouping method.

**Figure 1**

|  | # of Small Groups | Large LEAs | Min SWD | Small LEA Groups | | |
|---|---|---|---|---|---|---|
|  |  |  |  | # of Individual Small LEAs in the Small LEA Group with minimum SWD size | Max SWD | # of Individual Small LEAs in the Small LEA Group with maximum SWD size |
| *Current Methodology* | 62 Groups | 666 | 44 | 2 | 13,457 | 338 |

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

|  |  |  | Small LEA Groups | | | |
|---|---|---|---|---|---|---|
|  | # of Small Groups | Large LEAs | Min SWD | # of Individual Small LEAs in the Small LEA Group with minimum SWD size | Max SWD | # of Individual Small LEAs in the Small LEA Group with maximum SWD size |
| Random Grouping Methodology - First Data Output | 60 Random Groups | 666 | 658 | 26 | 1,052 | 27 |
| Random Grouping Methodology - Second Data Output | 60 Random Groups | 666 | 773 | 26 | 1,052 | 27 |

With respect to this proposed grouping methodology, CDE discovered one issue for which it proposes a solution. That issue arises because CDE modeled the random grouping of small LEAs with a pre-determined count of 60 groups. Using a pre-determined count of small LEA groups worked when modeling potential small LEA selection for Intensive Monitoring – School Age and Targeted Monitoring, but not for Intensive Monitoring - Preschool Age, as there are only 281 small LEAs in the preschool age category. CDE proposes using a percentage to identify the count of small LEA groups instead of a static number of groups. The proposal stems from the State's desire to apply the random grouping methodology to the small LEAs included under Intensive Monitoring – Preschool Age activity, which only consist of 281 small LEAs. Using a percentage, as opposed to a static number of 60 groups, ensures that no matter the total number of small LEAs, small LEA groups can be formed with at least 100 SWD.

**Secondary Analysis**

CDE's current methodology applies a secondary analysis to small LEAs contained in a group. The application of this secondary analysis ultimately determines whether individual small LEAs are selected for further monitoring activities. As part of its revised proposed model, CDE proposes to change its secondary selection methodology to require an individual small LEA to meet half of the criteria, as opposed to just one of the criteria.

To illustrate this proposed methodology, CDE again used existing statistical software programs for Intensive Monitoring – School Age and the secondary criteria used to select for that activity. CDE notes that this proposed methodology would also apply to

Case 3:96-cv-04179-VC   Document 2590   Filed 06/26/20   Page 11 of 16

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

selection for Intensive Monitoring – Preschool Age and Targeted Monitoring – Performance.

In the current methodology, there are six secondary criteria applied to individual small LEAs when a small LEA group is identified:

- No students proficient in English Language Arts assessment
- No students proficient in Math assessments
- No students in regular class 80% or more
- Any student in separate schools and placement[10]
- Any student suspended
- Any student identified as chronically absent

Building upon the first proposed change, CDE modeled the proposed secondary selection model by grouping small LEAs randomly. Instead of joining the 60 random small LEA groups with the 666 large LEAs, and then applying the data calculation to decile and rank performance, small LEA groups and large LEAs would remain separate. The same data calculations for each indicator would then be applied, and the results decile-ranked and summed, and a percentage calculated for each small LEA group and large LEA. As it does in CDE's current methodology, CDE identifies the bottom 10%[11] of small LEA groups and large LEAs for Intensive Monitoring – School Age. Because this model would separate small LEA groups from large LEAs, CDE identified the bottom 10% in each of those two categories.

CDE applied its proposed secondary selection to the nine small LEA groups identified as the poorest performing across the six indicators. In total, 69 individual small LEAs met the criteria to be selected for Intensive Monitoring – School Age. **Figure 2** below displays the results of this model.

---

[10] CDE will replace Indicator 5c in favor of Indicator 5b to measure school-age least restrictive environment (LRE). (See Dkt. 2563 at p. 3). However, current statistical software programs were used for these analyses, as CDE has not yet revised its measurements as part of the replaced indicator.

[11] CDE notes that because it retained the process to identify the bottom 10% and any same scoring small LEA groups and large LEAs for identification for further monitoring, 9 (and not the expected 6) small LEA groups are identified as poorest performing in this particular model.

Case 3:96-cv-04179-VC   Document 2590   Filed 06/26/20   Page 12 of 16

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

<u>Figure 2</u>

|  |  |  | Final Results of Selection | | |
|---|---|---|---|---|---|
|  | # of Small Groups | Large LEAs | Groups of Small LEAs | Individual Small LEAs | Large LEAs |
| *Current Methodology* | 62 Groups | 666 | 1 | 2 | 82 |
| Meet 3 out of 6 criteria | 60 Random Groups | 666 | 9 | 69 | 70 |

This methodology—random grouping, separate analyses and ranking of small LEAs and large LEAs, and using the alternative secondary selection criteria requiring a small LEA to meet three of the six—is a feasible option for the State. As displayed above in **Figure 2**, it identifies approximately the same number of small LEAs and large LEAs for Intensive Monitoring – School Age, but far more small LEAs than were selected using CDE's current methodology. There is one particular drawback with this secondary selection: this methodology may overlook LEAs who are the lowest-performing at only one or two out of the six indicators. However, the purpose of the Intensive Monitoring activities is to identify the worst performing LEAs in the State over a number of indicators. As such, the poorest performers would need to show poor performance over more than a single indicator. Additionally, those small LEAs identified as poor performers in a single indicator would likely be identified for Targeted Monitoring - Performance. This revised proposed model, however, may not necessarily select, during a given year, an overall poor performing small LEA within a random group of high performers. Nevertheless, all LEAs, regardless of size, would still be monitored in targeted review of compliance.

### Alternative Option – Cyclical Monitoring of Small LEAs

While the CDE believes its revised proposed model is rational and therefore legally compliant, CDE's policymakers describe below an alternative option that they believe is rational and would also be legally compliant, to the extent that the Court remains concerned with methodologies involving grouping of small LEAs for selection for further monitoring.

In this proposed alternative, CDE would retain the methodology for selecting large LEAs (those with more than 100 SWD) as previously proposed and discussed during these proceedings. However, CDE would use a cyclical monitoring approach toward small LEAs, by which it would to randomly select 500 of the total 1500 small LEAs annually

Case 3:96-cv-04179-VC   Document 2590   Filed 06/26/20   Page 13 of 16

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

and conduct a monitoring activity on those small LEAs.[12] For the small LEAs randomly selected for review in a given year, CDE could review student files, performance information, and policies and procedures, and, if CDE found noncompliance and/or performance issues, it would require such LEAs to complete an improvement plan and/or corrective actions. As Plaintiffs proposed, such a review of these randomly selected small LEAs would provide the State an opportunity to gather more in-depth information from and provide support to LEAs based on their level of need. (Dkt. 2568). Because this is a monitoring activity, the State anticipates providing further details on this proposed monitoring activity in Phase 3.

### Figure 3

| Year 1 | Year 2 | Year 3 | Cycle Begins: Year 1 |
|---|---|---|---|
| Total Small LEA Pool for Selection | | | |
| 1500 | 1000 | ~500 | 1500 |
| Total Small LEAs Selected for review | | | |
| Random 500 | Random 500 | Remaining ~500[1] | Random 500 |

As shown in **Figure 3**, above, this methodology would ensure that every small LEA is subject to a monitoring activity once every three years. The randomization would, as suggested by Plaintiffs, provide an incentive for small LEAs to maintain high levels of performance because they might be selected in any given year, i.e., even a small LEA is not selected for monitoring in years 1 or 2, it would be assured of selection in year 3. (Dkt. 2568 at 13.)

This methodology would also ensure that all small LEAs are monitored based on their needs, and in a manner that preserves CDE's available resources to maintain efficacy in its monitoring activities. As reflected in **Figure 4** below, using the current 2019-20 Monitoring year data, the described cyclical monitoring methodology would result in 1,282 total LEAs (large and small) selected for monitoring.

| Number of LEAs | | | |
|---|---|---|---|
| Intensive Monitoring - School Age Large LEAs | Intensive Monitoring - Preschool Large LEAs | Targeted Monitoring Performance Large LEAs | Targeted Monitoring - Performance Small LEAs |
| 82 | 28 | 674 | 500 |

---

[12] There may be more or fewer than 500 LEAs selected in year three depending on how many total small LEA there are in the state. To ensure all small LEAs are monitored for performance metrics once every three years, CDE would randomly select 500 small LEAs in the first year. The next year, CDE will select the small LEAs not selected the previous year. Finally, in the third year the CDE would select the remaining LEAs that had not been selected in the previous two years.

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

**Effect on Annual Determination**

CDE would account for this cyclical monitoring methodology when making annual performance determinations. As shown in **Figure 5** below, an LEA may be considered "Needs Assistance" if it meets any the following criteria:

### Figure 5

| Large LEA | Small LEA |
|---|---|
| Selected for Targeted Monitoring (Performance, Compliance, or Disproportionality) | During Cyclical Monitoring, CDE has identified performance concerns or noncompliance |
| Noncompliance associated with Complaints | Noncompliance associated with Complaints |
| Noncompliance associated with Due Process Filings | Noncompliance associated with Due Process Filings |
|  | Noncompliance with timeliness |

As shown in **Figure 6** below, an LEAs would be considered "Needs Intervention" if it meets any the following criteria:

### Figure 6

| Large LEA | Small LEA |
|---|---|
| Selected for Intensive Monitoring (Preschool Age, School Age, or Significant Disproportionality) | During Cyclical Monitoring, CDE has identified severe performance concerns or noncompliance |
| Noncompliance identified by CDE not corrected within one year | Noncompliance identified by CDE not corrected within one year |
| Noncompliance associated with Complaints not corrected within one year | Noncompliance associated with Complaints not corrected within one year |
| Noncompliance associated with Due Process Filings not corrected within one year | Noncompliance associated with Due Process Filings not corrected within one year |
| Critical Incident Review | Critical Incident Review |

**Summary**

CDE's policymakers believe that the revised proposed model discussed above for selecting small LEAs for targeted and intensive monitoring appropriately addresses concerns regarding grouping and secondary analysis, is rational, and is therefore compliant with federal law. To the extent the Court remains concerned about grouping of small LEAs for purposes of data analysis, CDE's policymakers have also described

*Emma C. v. Thurmond et al.*; Case No. 96-cv-04179-VC
**EXHIBIT 1 - STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

an alternative option involving cyclical monitoring of small LEAs, that CDE believes is also a rational methodology for analyzing the data of small LEAs and therefore is also compliant with federal law.

# CERTIFICATE OF SERVICE

Case Name:  *Emma C., et al. v. Thurmond, et al.*     Case No.  *3:96-cv-04179-VC*

I hereby certify that on June 26, 2020, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' RESPONSE TO ORDER RE FURTHER FILINGS ON SELECTION OF SMALL DISTRICTS FOR MONITORING (DKT. 2584)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 26, 2020, at Sacramento, California.

| Natalie Quinonez | */s/ Natalie Quinonez* |
|---|---|
| Declarant | Signature |

SA2005104070
34191952.docx