# EXHIBIT A

MEMORANDUM

TO: Mark Mlawer, Court Monitor
FROM: Plaintiffs' Counsel
RE: Emma C., et al. v. Eastin, et al. 3:96-cv-04179-TEH
Plaintiffs' Challenge to the Implementation of the
California Department of Education's State-Level Monitoring System
CC: All Parties
DATE: May 10, 2013

INTRODUCTION

Plaintiffs submit the following challenge, based on Section 13.0 of the First

Amended Consent Decree ("FACD"), to the implementation of the California

Department of Education's ("CDE") state-level monitoring system.  Section 13.0 of

the FACD requires the Court to decide whether "the state-level system in place is

capable of ensuring continued compliance with the law and the provision of FAPE to

children with disabilities in Ravenswood." (Ct. Docket [CD] 1640).  As stated in

Judge Henderson's November 26, 2012 order, Section 13.0 is satisfied if the

monitoring system "[1.] has been implemented adequately [in Ravenswood]; [2.]

identified both noncompliance and compliance appropriately based on adequate

evidence and reasoning; and [3.] has resulted in appropriate corrective actions, the

implementation of required corrective actions, and the timely correction of

identified noncompliance."  (CD 1799 at 6-7).  Pursuant to the Fifth Joint Statement,

Plaintiffs may challenge the adequacy of the state-level system by providing

evidence that the system does not satisfy the standards outlined in the Consent

Decree and November 26, 2012 Order. (*Id.* at 7).

1

Plaintiffs conducted a review of Ravenswood's implementation of the CDE's state-level system, known as the Special Education Self-Review ("SESR"), to determine whether the system is capable of ensuring the provision of FAPE to children with disabilities in Ravenswood. Consistent with the standard outlined by Judge Henderson, Plaintiffs sought to determine whether (1) the SESR was implemented adequately in the District; (2) Ravenswood and the CDE appropriately identified both compliance and noncompliance; and (3) Ravenswood and the CDE identified and implemented appropriate corrective actions and corrected identified noncompliance.

Plaintiffs' review not only revealed that Ravenswood faced several implementation challenges but also that the CDE failed to effectively monitor the SESR process and suggest appropriate corrective actions for the District. Plaintiffs therefore request a determination by the Court Monitor that the SESR process fails to adequately monitor, supervise, and ensure provision of FAPE for children with disabilities in Ravenswood.

<u>REVIEW PROCESS</u>

Plaintiffs reviewed twenty-one of the forty student files randomly selected for Ravenswood's SESR process. Of the twenty-one files reviewed, nine were also chosen for the Implementation Review and five were selected for the Educational Benefits Review. Plaintiffs reviewed a representative sample of students including special populations identified by the monitoring plan. The sample included English Language Learners, students with Specific Learning Disabilities, African American students, students with Other Health Impairments (diabetes), and Pre-School age

students. Plaintiffs also reviewed the "Fiscal Review" and the "Policies and Procedures Review" worksheets submitted by the District. Plaintiffs' review process mirrored district implementation and adhered strictly to the SESR guidelines. Plaintiffs also conferred with the District Assistant Superintendent to obtain information on how the SESR process was implemented.

<u>SUMMARY OF FLAWS IN IMPLEMENTATION PROCESS</u>

Although the District generally followed the CDE's guidelines stated in the Special Education Self-Review Manual[1], there were numerous problems with implementation as the result of lack of conformity to IDEA requirements, training, support, monitoring, and clarity by the CDE. Plaintiffs submit the following objections to the SESR implementation process:

1) The CDE failed to exercise meaningful oversight and transparency in the creation of Ravenswood's Monitoring Plan, which was developed based on limited data.

2) The Student Records Review portion of the SESR overly burdened District staff, lacked sufficient CDE oversight, was inconsistent, and merely determined "paper compliance," not appropriateness of services and interventions or quality of those services or interventions.

3) The District inadequately performed the Implementation Review portion of the SESR, and the CDE failed to exercise sufficient oversight.

4) The CDE failed to adequately guide Ravenswood in conducting the Educational Benefits portion of the SESR. As a result, Ravenswood's Educational Benefits Reviews lacked consistency. Moreover, this portion of the SESR lacked appropriate quantifiable measures of student performance.

---

[1] Plaintiffs' findings regarding the Ravenswood SESR are consistent with Plaintiffs' April 12, 2013, Challenge to CDE's Monitoring System Design, at pp. 30-34.  CDE's SESR monitoring processes are not designed to implement numerous and specific IDEA monitoring requirements, nor are they implemented as discussed *infra*.

5) The Fiscal Review portion of the SESR was not transparent and allowed for a great degree of subjectivity by reviewers.

6) There was no transparency as to how another district within the SELPA conducted the SELPA Governance Review.

7) The CDE failed to verify and adequately oversee the Policies and Procedure Review, given that Ravenswood did not review IEPs and conduct interviews as directed by the SESR guidelines for evaluating the SESR items. It is also not clear which policies or procedure documents were reviewed by the District.

8) It is not clear how the CDE made district-level findings and the CDE failed to suggest appropriate district-level findings of non-compliance and corrective actions. Though CDE did propose district-level findings of non-compliance and corrective actions, they were not sufficient to generate meaningful improvement of student services.

9) The CDE consistently lacked transparency in its verification and review of the SESR process. Moreover, its monitoring of the SESR does not appear to go beyond paper review.

SPECIFIC OBJECTIONS TO SESR IMPLEMENTATION

**Objection 1:** The CDE failed to exercise meaningful oversight and transparency in the creation of Ravenswood's Monitoring Plan[2], which was developed based on limited and unreliable data.  Additionally, the monitoring plan lacked transparency and clarity with regard to how State Performance Plan Indicators (SPPI) data, compliance complaints, and other data sources (*e.g.,* CASEMIS, Dataquest) informed the areas for investigation.  Because of the flaws in the development of the Monitoring Plan, resources may be inefficiently used to monitor areas in which

---

[2] Recently, all parties discussed that it appears the process used with Ravenswood for the development of the Monitoring Plan was not the same as that described in the SESR manual.  Plaintiffs also note this contradicts the process outlined in the Fifth Joint Statement – the district was to submit a SESR Monitoring Plan to CDE for review and approval.  Plaintiffs therefore question whether the implementation of the SESR in Ravenswood is sufficiently reflective of the state's routine system, which is what has been expected would be used.

District is compliant, while areas in which the District is non-compliant may be overlooked[3].

1. **Lack of Meaningful and Representative Parent Input:** Although Ravenswood held parent meetings and distributed surveys, parent data were unreliable and not representative of the District's special education population.  It is Plaintiffs' understanding that surveys held significant weight in the design of the Monitoring Plan; however, they were not designed or implemented to garner meaningful input.  As a result of these challenges and flaws, this portion of the Monitoring Plan was created based on data that were likely not representative of the experiences of students and parents in the District.

   a. The District did not administer parent surveys in a manner likely to elicit meaningful feedback. Because of the CDE-imposed SESR timeline, the District had to administer surveys and conduct parent meetings while many families were away for summer vacation. As a result, parent meetings were very poorly attended.

---

[3] A particularly troublesome compliance concern discussed in Plaintiffs' Challenge to CDE's Monitoring System Design, at pp. 26-28, is publicly reported data that placed Ravenswood 43rd in the entire State in more than one out-of-school suspension of students with disabilities, and 11th in suspensions of African American students with disabilities, 2009 (out of nearly one-half of districts in state).  Yet this concern is not identified in the Monitoring Plan and Plaintiffs found no evidence that the district's rate of suspensions of students with disabilities was monitored.  More than one out-of-school suspension is required to be collected and reported by the state to the U.S. Department of Education, not just SPP indicator data, but Plaintiffs found no evidence that CDE complies with this obligation, much less examines relevant data in its SESR monitoring work, at least with respect to Ravenswood's current SESR.  *See* 20 U.S.C. 1418(a)(1)(D).

b. Moreover, the surveys contained high-level vocabulary that many parents apparently had difficulty understanding, making meaningful responses unlikely.

c. The timing of the parent input portion of the SESR also overly burdened District staff who had to make individual calls—most often in Spanish--to parents after insufficient paper surveys were returned.

2. **Inadequate CDE Oversight of the Creation of the Monitoring Plan:** The CDE failed to adequately review the parent input portions of the Monitoring Plan and suggest changes before approval.  Moreover, the CDE's process for the development of the Monitoring Plan lacked transparency in how CDE selected additional areas for investigation and special populations for review.

a. Despite District administration's concerns about the meaningfulness of parent participation, the CDE did not suggest any changes to the "Areas to be Investigated as a Result of Parent Responses."  At one point the District noted in the Monitoring Plan that "parents did not understand the question."  Nevertheless, the CDE checked the box for "This Monitoring Plan has been reviewed and is approved as submitted."

b. It is unclear how, if at all, the Special Education Local Plan Area ("SELPA") was involved in the creation of the monitoring plan.

3. **Lack of Transparency Regarding How Other Data Factored into Creation of Monitoring Plan:** It is not clear how the CDE chose areas of review that

were not identified by the parent surveys or whether some indicators were used at all to develop the Monitoring Plan[4].

   a. **State Performance Plan Indicators:**  The Monitoring Plan requires two areas of investigation based on the SPPIs, but does not indicate how the District should investigate those indicators in the subsequent SESR. For example, one area identified for investigation was SPP indicator 3, which focuses on students' proficiency in ELA and Math achievement.  However, none of the questions the CDE required the District to answer during the SESR targeted ELA and Math achievement.  In fact, the SESR guidelines do not ask districts to look at achievement scores at any point in the process, although certain SESR items—such as those related to goals and objectives— might arguably be indirectly related to ELA and Math achievement. Nor was the District required to pull files specifically for students who did not achieve significant ELA or Math gains.  Thus, there is no evidence that the SPPIs were incorporated meaningfully into the Monitoring Plan through specific investigative actions.

   b. **Special Populations for Review:** The Monitoring Plan lacks transparency regarding how special populations for review are selected. The CDE has not specifically stated the origin of or reason for the special populations that were selected. Though Plaintiffs could

---

[4] The last part of the Monitoring Plan includes a specific item table with areas that have an RSIP connection.  Plaintiffs found no specific evidence that these areas were systematically and comprehensively monitored or evaluated.

speculate as to their origin, it is not clear if these populations were identified based on Dataquest, CASEMIS, compliance complaints, parent surveys, or multiple sources. This was also not clearly stated in the SESR Manual. Without transparency, it is difficult for the District to use the SESR process as an opportunity for self-improvement and organizational learning.

c. **Compliance Complaints/Due Process Hearings:** It is unclear how, if at all, the District or the CDE used compliance complaints and due process hearings to inform the development of the monitoring plan. While it appears that the CDE relied upon compliance complaints to identify the area of OHI-Diabetes for monitoring, the CDE was not transparent with how compliance complaint and due process hearing data formed the basis for any portion of the Monitoring Plan.

**Objection 2**: Ravenswood attempted to faithfully implement the Student Records Review portion of the SESR, but this process is plagued by many design issues that call into question the effectiveness of the Review and resulted in mere "paper compliance" review. The process itself is onerous and inefficient, and the insufficient clarity and consistency of the results make widespread conclusions difficult to achieve.

1. **Organizational Burden:** The Student Records Review portion of the SESR is overly burdensome and costly. The organizational burden is substantial, as the staff member reviewing each child's file must first fill out a worksheet by

hand and subsequently compile the findings electronically.  This issue is compounded by the fact that the prescribed corrective actions would simply lead to further review by hand.  The process of converting paper information to electronic also led to inconsistency in what was ultimately reported.

2. **Lack of Clarity and Consistency Across Reviews:** Ravenswood was not provided with sufficient guidance to achieve consistency among findings of compliance for the various student records that were reviewed.

   a. Items regarding issues that did not apply to certain students led to findings of compliance in some of those reviews but were marked "N/A" in others.  For instance, inquiries into the sufficiency of prior written notice were answered using inconsistent approaches across reviews of students for whom prior written notice had not been required.

   b. Certain items seemingly aimed at procedural adequacy in fact implicate substantive determinations.  For instance, item 3-2-11.1 asks whether the IEP, "when appropriate," includes Extended School Year ("ESY") services for the student.  This cannot be answered without first making the substantive determination of whether ESY was "appropriate." The CDE did not clearly articulate a standard to make this substantive determination, leading the District to answer this question based on its procedural minimum.  Stated differently, the District—with CDE's eventual approval—simply ignored the word

9

"appropriate" in this item and similarly qualitative words in other items.

c.  Whereas certain items covered during the Student Record Review may have been partially indirectly related to the SPPI findings, the data sources that inform these indicators were not actually revisited during the reviews.  Further, the process did not incorporate any action aimed at targeting the specific SPPI.

d.  The individuals completing file reviews did not appropriately complete or document student level findings. As noted in an email from Alison Greenwood to Carolyn Schwartzbord on November 6, 2012, reviewers did not answer questions in complete sentences, submit the proper number of summary sheets, or appropriately document student data. Lack of District oversight and proper data entry training led to numerous problems with review.

3.  **Findings of Noncompliance Lack Consistency:** Similar situations led to divergent findings of noncompliance across files.  As discussed above in Section 2.2.b., there appears to have been much confusion about when to establish a finding of compliance and when a question warranted a finding of "N/A."

a.  Not only did different reviewers use different approaches, as mentioned above, but there were also many circumstances in which reviewers and administrators disagreed on the reviewer's determination.

b.  Furthermore, documentation of findings of non-compliance was inconsistent. SESR software submissions, summary sheets, and individual SESR worksheets were not always aligned nor did they clearly state rationale for findings of non-compliance. Lack of consistency and confusion over proper documentation of findings could lead to challenges in verification review as well.

4.  **Exercise Often Reduced to Box-Checking:** As discussed above in Section 2.2.b., seemingly simple questions actually require much more significant determinations.  For example, item 4-1-1 asks, "Does the LEA make a free appropriate public education available to all eligible students, who are between the ages of 3 and 22?"  These full-scale determinations of FAPE cannot possibly be completed in the checklist format of this records review exercise.  Rather, encompassing these types of questions within this review lead the reviewer to turn the inquiry into a box-checking exercise requiring only the most cursory review.

5.  **Exclusive Focus on the Annual IEP is Insufficient:** Instances of noncompliance could be overlooked because the CDE does not require record analysis to extend beyond the annual IEP in reviews other than the review for educational benefit.

a.  If the student currently has a Behavioral Intervention Plan ("BIP") or Behavioral Support Plan ("BSP"), the process does not seem to require going back in time to examine the adequacy of the Functional Analysis Assessment ("FAA") that preceded its implementation. Thus,

questions related to students with BIPs or BSPs are entirely

overlooked when there could in fact be findings of noncompliance.

b.  Almost none of the reviewed files are those of students coming off an

initial identification, a triennial assessment, or a transfer into a new

school, district, or special education setting.  As a result, the many

items addressing these situations are simply skipped, rather than

being investigated by examining previous records.  Similarly, items

regarding prior written notice are only explored when prior written

notice was required for the most recent IEP.

c.  A number of items (3.5.9-7, 3.5.9-2, 3-5-9.4, 3-5-9.5) are targeted

specifically at students with the classification of "specific learning

disability ("SLD")."  Although these items could also apply to students

with other classifications, they seem to be skipped if the student lacks

the SLD classification. Again, it is not clear how SLD was identified as a

Special Population for review (Objection 1-3-b).

6.  **Limited Verification of District Findings by the CDE:**  The CDE seems to

have generated corrective actions based on District data and findings

without actually looking at any files or engaging in any other sort of

verification.

a.  District summary sheets of non-compliance or non-applicability were

completed with minimal details and explanations. The CDE failed to

adequately train District reviewers on proper data collection and

submission, jeopardizing the CDE's ability to properly verify findings.

7. **Although the District Largely Conducted the Paper Review with Fidelity and Accuracy, There Were Many Compliance Errors at the Student Level:** Review of a sample of student records showed that the District did not correctly or consistently answer some of the Monitoring Plan questions.

   a. Findings of noncompliance are often vague, i.e. "SLP goals are not appropriate" and the reasons given for noncompliance sometimes vague or limited.

   b. Findings of noncompliance were inconsistent.  There was much confusion about issues that were non-applicable versus compliant.  Without clear evidence and rationale, it was difficult to determine reasons for compliance, noncompliance, or non-applicability.

   c. District-level findings of noncompliance were not explicitly tied to data or student performance—it was unclear where these findings came from.

   d. There was lack of consensus on a number of findings.  A number of reviewers for example, disagreed with one another regarding determination as evidenced by discrepancies on worksheets, submissions, and document notes.

   e. On a number of IEPs, the District did not consider themselves to be out of compliance when asked if a number of settings were considered for placement.  It appears that, although the District employs a full-inclusion model, there were some concerns on behalf of parents that a student may need a more restrictive setting.  These concerns were not

incorporated meaningfully into the development of student IEPs and
it is not clear that a range of settings were considered.

f.   The District recurrently found itself non-compliant on with item 3-2-5
(support for school personnel) for not checking an appropriate box
though several IEPs had detailed descriptions of student supports
throughout the day including one-to-one aids or other service
providers.

g.   The District reported noncompliance for individual student goals that
seemed appropriate and similar to others' individual goals, thus
suggesting they either misidentified themselves as noncompliant or
misidentified themselves as compliant.  Without consistency in
implementation or clear district guidance, it is not clear if the District
was in fact compliant.


**Objection 3:** The District inadequately performed the Implementation Review
portion of the SESR, and the CDE failed to exercise sufficient oversight. Ravenswood
failed to perform parent interviews in the Implementation Review, as directed by
SESR guidelines. Instead, the District relied entirely on MySPED, an online software
that keeps track of when special education related services are provided.  Without
access to MySPED, the District's findings were impossible to verify.  Furthermore, as
the CDE's own SESR guidelines make clear, MySPED service logs are insufficient to
determine whether IEP services are being provided.

1. **No Parent Interviews were Conducted:** The Implementation Review requires parent interviews.  There was no evidence that the District conducted these interviews instead of relying entirely on MySPED logs.

2. **Required minimal documentation submission:** The District did not appear to verify the data inputted into MySPED to make sure it was accurate. Without any additional verification, the MySPED logs appear to be based entirely on the honor system.  Additionally, only one file reviewed contained a MySPED printout against which the Implementation Review worksheet could be checked.

3. **Lack of Qualitative Review:** Because the Implementation Review looked only at whether or not the District provided a service, there is no qualitative data. Information on the quality of services or parent/student satisfaction with the services is not accounted for.

4. **Unclear How Review Would be Performed Without MySPED:** Ravenswood's reliance on MySPED suggests that it would be difficult for other school districts to conduct an Implementation Review if they did not have similar software.


**Objection 4:** While Ravenswood performed the Education Benefits Review, implementation was inconsistent and difficult to interpret due to lack of CDE guidance and clarity, and the subjective nature of the process.  Analysis, completed by hand on extensive worksheets, was simply represented by answering one question about Educational Benefits and uploading responses to District software.

The CDE did not require the District to submit further information on student level findings, thus increasing the chance of procedural violations and inconsistency. Furthermore, there is no indication that the CDE verified that the District conducted analysis thoroughly.  Finally, as Plaintiffs noted in their objection to the design of the SESR, the Educational Benefits Review does not include any analysis of the quality of service delivery such as classroom observations, parent interviews, or service provider/teacher interviews.

1. **Lack of Procedural Clarity:** Without clear guidance from the CDE regarding the Educational Benefit Analysis, Ravenswood inconsistently implemented the Educational Benefits Review across student files. Some reviews provided very detailed information about student goals and progress, whereas others were quite limited or left sections unanswered.  For example, in cases where less than 3 years of student records were available, it was difficult to complete a meaningful analysis of assessments, goals, and calculated benefit.

2. **Lack of Consistency Across Review:** The nature of the Review was entirely subjective, and the process directed reviewers to make broad claims about student benefit without requiring meaningful information about student progress.  Though the Educational Benefits Review is intended to identify benefit based on student levels of performance and goals stated in the IEP, the CDE did not require the District to look at student assessment data or other quantifiable measures of student performance.  Thus, reviewer calculations of educational benefit were based on limited information and subjective determinations.

3. **Required minimal documentation submission:** Though Ravenswood completed appropriate worksheets related to Educational Benefit Review, they were not required to submit their work, only to respond to question 4.15.1 as compliant or noncompliant. This undoubtedly provides the CDE with limited information about benefit to the child or meaningful information about special education programs across the district.

4. **Improper Composition of Educational Benefits Review Team:** According to the SESR manual, educational benefit review requires a team of special education and assessment staff. There is no indication the District completed this process in teams nor is there any indication the CDE attempted to verify this action. Furthermore, the purpose for reviewing student documents in teams for this activity is not clearly stated by the CDE.

**Objection 5**: Though Ravenswood completed a Fiscal Review, the process was not transparent as it required minimal document submission. The CDE also allowed for a great degree of subjectivity, as there were no clear metrics defining appropriate or proportional levels of spending.  Because the CDE did not exercise proper oversight, there was also too much room for variability in implementation.

1. **Lack of Procedural Clarity:** According to the SESR guidelines, districts collect and review a number of relevant documents related to budget and spending. However, there was limited transparency regarding this process and no indication the CDE could accurately verify whether this process was completed with fidelity.

a. The District entered noncompliant findings if applicable but was not required to submit any other related documents or describe their review process.

2. **Lack of Substantive Clarity:** Questions as significant as "appropriate spending" were limited to simple box-checking exercises allowing for significant subjectivity.  Without clear definitions or metrics of "proportionality" or "appropriate" levels of spending (Item Number 30-1-1 and 30-1-6 for example), broad interpretations are likely when implementing and may result in neglecting significant noncompliant findings.

3. **Limited Verification of District Findings by the CDE:** Without significant oversight on a matter as important as fiscal monitoring, implementation could vary dramatically from thorough documentation to a cursory review and insignificant findings. Without oversight, there is much room for error and potential for missed noncompliant findings.

**Objection 6:** Though the SELPA Governance Review was completed by another district, there was no transparency as to how that district was chosen to lead the SELPA Governance or if the chosen district consulted any other districts within the SELPA while undergoing the review process.

**Objection 7:** The CDE failed to verify and adequately oversee the Policies and Procedure Review, given that Ravenswood did not review IEPs and conduct interviews as directed by the SESR guidelines. Moreover, the process lacked clarity

about implementation practices. Finally, it is not clear which documents the District reviewed in connection with the policies and procedures review.

1. **Lack of Clarity or Direction for Review Process:** Though the process generally calls for review of written district policies and procedures, in many instances the District is encouraged to review a number of IEPs and conduct interviews.

   a. There is no indication of which IEPs are supposed to be reviewed or how many nor is there any indication of how many individuals should be interviewed and in what circumstances. (Item Numbers 10-1-2.1 and 10-2-1 for example)

   b. Though the District found itself compliant, there was no indication the District interviewed relevant individuals or reviewed files in relation to the policy and procedural review.

2. **Limited Verification of District Findings by the CDE:** Though the District submitted findings, there was limited transparency as to how the CDE would verify this process.  Other than submission of compliance or noncompliance with item numbers, the CDE required no submission of relevant documents or procedures.

**Objection 8:**  The CDE failed to suggest appropriate district-level findings of non-compliance and corrective actions. Though CDE did propose several district-level findings of non-compliance and corrective actions, they merely called for more file

reviews without requiring any particular remedial actions. Thus, they were not sufficient to generate meaningful improvement of student services.

1. **Rationale for District-Level Non-Compliance Not Clearly Stated:** The district-level findings of noncompliance were re-statements of Federal Rules rather than explanations of non-compliance.

2. **Lack of Clarity of How District Level Findings Were Made:** District-level findings of non-compliance were apparently generated from student level findings. However, there is no indication on what specific data each finding was based, thus jeopardizing meaningful corrective actions.

3. **Not Clear if Root Cause Analysis Completed**: Though the SESR Manual suggests Root Cause Analysis be completed for particular findings, it is not evident Ravenswood did this whenever it was required. It is also not clear when and if certain findings demand a Root Cause Analysis. The CDE provides minimal information regarding this process and could thus perpetuate significant noncompliance.

4. **Meaningless Corrective Actions:** The implementation of corrective actions requires the District to continuously review student documents until 100% compliance is found. There is no indication of how many more iterations of file reviews are appropriate and it was not clear which files were chosen for further review. Nor was there indication the District needed to go beyond document review and consider improving district-wide practices. At no point did the CDE direct the District to conduct additional training of staff or improvement of service delivery; rather it simply required more file review.

**Objection 9:** There is limited transparency of the CDE's verification and oversight of the SESR process and district-level findings. CDE verification and monitoring does not appear to go beyond paper review.

**Note:** The CDE has not yet returned to the District to make follow-up determinations regarding the implementation of corrective actions.  Plaintiffs reserve the right to seek information and request records to determine the efficacy of the scheduled follow-up activities.

<u>CONCLUSION</u>

For all the foregoing reasons, the CDE's monitoring system does not meet the legal standards that govern this case.  Because of the flaws in the creation of the Monitoring Plan, the inconsistency in the implementation of the Student Records, Educational Benefits, and Implementation Reviews, and the failure of the CDE to verify or generate appropriate student and district-level corrective actions, the state-level system in place is <u>incapable</u> of ensuring continued compliance with the law and the provision of FAPE to children with disabilities in Ravenswood.

Plaintiffs therefore request that the Court Monitor determine that the SESR process fails to adequately monitor, supervise, and ensure provision of FAPE for children with disabilities in Ravenswood. Plaintiffs further request that the Court Monitor determine that an impartial court-appointed expert assessment of CDE's

monitoring of Ravenswood should be conducted as that work is carried out

pursuant to the Fifth Joint Statement.  (CD 1793 at n.3.)


      Respectfully submitted,

            *Emma C., et al.* by its Counsel,

            By: _____ /s/ William S. Koski_____.

                William S. Koski
                Carly J. Munson
                MILLS LEGAL CLINIC
                STANFORD LAW SCHOOL
                YOUTH & EDUCATION LAW PROJECT
                559 Nathan Abbott Way
                Stanford, California  94305-8610
                Telephone:  (650) 724-3718
                Email: bkoski@stanford.edu

Arlene B. Mayerson

                Larisa Cummings
                DISABILITY RIGHTS EDUCATION AND
                DEFENSE FUND INC.
                3075 Adeline Street, Suite 210
                Berkeley, California  94703
                Telephone:  (510) 644-2555
                Email: lcummings@dredf.org


                *Attorneys for Plaintiffs*