1  ROB BONTA
   Attorney General of California
2  DARRELL W. SPENCE
   Supervising Deputy Attorney General
3  STACEY L. LEASK
   Deputy Attorney General
4  State Bar No. 233281
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 510-3524
6   Fax:  (415) 703-5480
    E-mail:  Stacey.Leask@doj.ca.gov
7   *Attorneys for Defendants*
   *California Department of Education, Tony*
8  *Thurmond, in his official capacity as the State*
   *Superintendent of Public Instruction, and State*
9   *Board of Education*

10                IN THE UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14

15  **EMMA C., et al.,**                    Case No. 3:96-cv-04179-VC

16                          Plaintiffs,     **STATE DEFENDANTS' NOTICE OF
                                            MOTION AND MOTION TO
17       **v.**                             TERMINATE THE CONSENT DECREE
                                            AND FOR DISMISSAL OF THE ACTION
18  **THURMOND, et al.,**                   WITH PREJUDICE; MEMORANDUM
                                            OF POINTS AND AUTHORITIES IN
19                          Defendants.     SUPPORT**

20                                          **[FIRST AMENDED CONSENT DECREE,
                                            SECTION 13.0 AND 18.10; AND FRCP
21                                          60(B)(5),(6)]**

22                                          Date:        December 12, 2024
                                            Time:        2:00 p.m. (videoconference)
23                                          Courtroom:  4
                                            Judge:       The Honorable Vince Chhabria
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 3

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 4

INTRODUCTION ............................................................................................... 4

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND............................. 4

    I.      The Instant Action .................................................................... 4

    II.     The Operative Consent Decree ................................................ 5

    III.    Corrective Action Plan Process............................................... 6

    IV.    Implementation of the Four-Phase Evidentiary Hearing Process ........................... 7

    V.     The State's Demonstrated Compliance at Each of the Four-Phases of the Evidentiary Hearing Process ................................ 8

          A.     Phase 1 .................................................................... 8

          B.     Phase 2 .................................................................... 9

          C.     Phase 1 Holdover – IEP Implementation Data ....................... 10

          D.     Phase 3 ................................................................... 10

          E.     Phase 4 ................................................................... 12

ARGUMENT ..................................................................................................... 12

    I.      By The Express Terms of the Consent Decree, There is a Rebuttable Presumption of Compliance and Broad Authority to Terminate the Consent Decree and Dismiss the Action With Prejudice .................................... 12

    II.     The Court Should Also Terminate the Consent Decree and Dismiss the Action Pursuant To Rule 60(b) of the Federal Rules of Civil Procedure ............. 15

          A.     Substantial Compliance with the Consent Decree Has Been Met ........... 15

          B.     Prospective Enforcement of the Consent Decree Would Not Be Equitable ......................... 17

CONCLUSION .................................................................................................. 18

i

State Defendants' Notice of Motion and Motion to Terminate the Consent Decree
and For Dismissal of the Action (3:96-cv-04179-VC)

**CASES**

*Brionez v. United States Department of Agriculture*
   2007 WL 217680 (N.D. Cal. 2007)........................................................................ 13

*Burt v. County of Contra Costa*
   2014 WL 253010 (N.D. Cal. 2014)........................................................................ 16

*Emma C. v. Eastin*
   673 Fed. Appx. 637 (9th Cir. 2016) ........................................................................ 5

*Emma C. v. Thurmond*
   472 F. Supp. 3d 641 (N.D. Cal. 2018) .................................................................... 7

*Emma C. v. Thurmond*
   668 F. Supp. 3d 902 (N.D. Cal. 2023) .............................................................. 8, 12

*Freeman v. Pitts*
   503 U.S. 467 (1992) ............................................................................................. 18

*Frew v. Hawkins*
   540 U.S. 431 (2004) ............................................................................................. 17

*Horne v. Flores*
   557 U.S. 433 (2009) ....................................................................................... 17, 18

*Hutto v. Finney*
   437 U.S. 678 (1978) ............................................................................................. 14

*Jackson v. Los Lunas Community Program*
   880 F.3d 1176 (10th Cir. 2018)....................................................................... 17, 18

*Jeff D. v. Kempthorne*
   365 F.3d 844 (9th Cir. 2004) ............................................................................... 14

*Jeff D. v. Otter*
   643 F.3d 278 (9th Cir. 2011)..................................................................... 14, 15, 16

*Labor/Community Strategy Center, et al. v. Los Angeles County Metropolitan*
   Transportation Authority, et al.
   564 F.3d 1115 (9th Cir. 2009)........................................................................ 14, 16

*Lee v. Butler County Bd. of Educ.*
   1983 F.Supp.2d 1359 (M.D.Ala. 2002) ............................................................... 16

*Milliken v. Bradley*
   433 U.S. 267 (1977)............................................................................................. 17

1

*Rufo v. Inmates of Suffolk Cty. Jail*
    502 U.S. 367 (1992) ................................................................................. 14

*Smith v. Sumner*
    994 F.2d 1401 (9th Cir. 1993) ................................................................. 13

*United Commercial Ins. Serv., Inc. v. Paymaster Corp.*
    962 F.2d 853 (9th Cir. 1992) ................................................................... 13

*United States v. Armour & Co.*
    402 U.S. 673 (1971) ................................................................................. 13

*United States v. Asarco, Inc.*
    430 F.3d 972 (9th Cir. 2005) ................................................................... 13

*United States v. ITT Cont'l Baking Co.*
    420 U.S. 223 (1975) ................................................................................. 15

**STATUTES**

Individuals with Disabilities Education Act (IDEA), 20 U.S.C., §1400, et seq. .................. *passim*

**COURT RULES**

Federal Code of Civil Procedure
    § 23(e) ......................................................................................................... 5

Federal Rules of Civil Procedure
    Rule 60(b)(5) ..................................................................................... *passim*
    Rule 60(b)(6) .......................................................................... 4, 17, 18

**OTHER AUTHORITIES**

First Amended Consent Decree
    Section 4.1 .................................................................................................. 5
    Section 13.0 ........................................................................................ *passim*
    Section 18.10 ...................................................................................... *passim*

2

1
**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that, on December 12, 2024, at 2:00 p.m., or as soon thereafter

3  that may be heard before the Honorable Judge Vincent Chhabria, in the United States District

4  Court for the Northern District of California, located in Courtroom 4, 17th Floor, 450 Golden Gate

5  Avenue, San Francisco, CA 94102, Defendants California Department of Education (CDE), Tony

6  Thurmond, in his official capacity as the State Superintendent of Public Instruction, and State

7  Board of Education (SBE) (collectively, State Defendants or the State) will hereby move,

8  pursuant to Section 13.0 and 18.10 of the First Amended Consent Decree, and pursuant to Federal

9  Rules of Civil Procedure, Rules 60(b)(5) and 60(b)(6), for an order terminating the First

10 Amended Consent Decree (Dkt. 832; *see also* Decl. Leask, Exh. 1) (hereinafter, Consent Decree),

11 thereby lifting the District Court's oversight and monitoring of State Defendants under the

12 Consent Decree, and dismissing the action, with prejudice.

13      This motion is made in response to the Court's Order on October 25, 2024 (Dkt 2861) and

14 Minute Order (Dkt. 2859) following completion of the four-phase evidentiary hearing process

15 established by the Court to evaluate compliance of the State with respect to the obligations under

16 the Individuals with Disabilities Education Act (IDEA) and the Consent Decree.  This motion is

17 based on this Notice of Motion and Motion, the accompanying Points and Authorities in Support

18 of the Motion, the pleadings, papers and evidence on file herein and in the Court's docket for the

19 Action, and such other and further arguments as the Court may allow at the time of the hearing on

20 this motion.

21 Dated:  November 7, 2024                    Respectfully submitted,

22                                            ROB BONTA
                                             Attorney General of California
23                                           DARRELL W. SPENCE
                                             Supervising Deputy Attorney General
24

25                                           */s/ Stacey L. Leask*
                                             STACEY L. LEASK
26                                           Deputy Attorney General
                                             *Attorneys for Defendants*
27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Defendants California Department of Education (CDE), Tony Thurmond, in his official capacity as the State Superintendent of Public Instruction, and State Board of Education (SBE) (collectively, State Defendants or the State) hereby move to have the First Amended Consent Decree (Dkt. 832; *see also* Decl. Leask, Exh. 1) lifted and for dismissal of the action, with prejudice, pursuant to Section 13.0 and 18.10 of the First Amended Consent Decree as well as Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6).[1]

The Court has found the State in compliance with the Individuals with Disabilities Education Act, 20 U.S.C. §1400, et seq. (IDEA) and the Consent Decree following the evidentiary hearing process set by the Court. Thus, under the express terms of the Consent Decree there exists a rebuttable presumption that the State has a system capable to adequately monitor, supervise, and ensure a free appropriate public education (FAPE) to Class Members in the least restrictive environment. *Id.*; Dkt. 2428, 2598, 2644, 2718, 2847, 2861; *see also* Decl. Leask, Exhs. 3-10. Accordingly, under Sections 13.0 and 18.10 of the Consent Decree, as well as Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6), federal court oversight and all obligations specified in the Consent Decree should be lifted and the action dismissed with prejudice. Decl. Leask, Exh. 1 at §§ 13.0 and 18.10.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

**I.    THE INSTANT ACTION**

On November 18, 1996, a class of students with disabilities who were, are, or will be residing in the Ravenswood City School District (Ravenswood), brought this action against Ravenswood and State Defendants. Dkt. 1. Their complaint alleged, among other claims, that State Defendants failed to adequately monitor Ravenswood's compliance with federal and state

---

[1] As indicated herein, the parties entered into the initial Consent Decree in September 1999, which was approved by the Court on January 18, 2000. On March 12, 2003, the parties executed the First Amended Consent Decree, which was granted final approval by this Court on March 31, 2003. The First Amended Consent Decree superseded the initial Consent Decree. Dkt. 832. For conciseness, the State uses "FACD" or "consent decree" hereinafter except where otherwise noted.

4

1    laws which mandate that districts provide FAPE under the IDEA to all children with disabilities.

2    *Id.*

3         On March 17, 1998, Plaintiffs filed an amended class action complaint (FAC).  The FAC

4    sought to compel Ravenswood to provide to every eligible child with a disability living within the

5    jurisdiction of Ravenswood FAPE in the least restrictive environment as required by the IDEA.

6    Dkt. 113.  On or around September 2, 1999, the parties entered into the initial Consent Decree.

7    The initial Consent Decree was approved by the Court pursuant to Federal Code of Civil

8    Procedure section 23(e) and thereafter adopted as an order of the Court on January 18, 2000.  Dkt.

9    232.  The Consent Decree permitted the Court to appoint an independent person "to monitor

10   Ravenswood's performance of its obligations under [the Consent Decree]" and to "monitor"

11   CDE's "performance of its obligations under [the Consent Decree]."  *Id.*  The Court appointed

12   Mark Mlawer as the Monitor.  Dkt. 223.

13   **II.    THE OPERATIVE CONSENT DECREE**

14        The parties entered into the First Amended Consent Decree (FACD), which was granted

15   final approval by the Court on March 31, 2003.  Dkt. 832.  Section 4.1 of the FACD provides that

16   CDE is responsible under federal law to ensure that students with disabilities have FAPE

17   provided to them in least restrictive environment, and that as a part of this responsibility, "CDE

18   shall implement an effective monitoring system and complaint resolution procedure."  Decl.

19   Leask, Exh. 1 at p. 9.  Although the FACD specifies that the State must demonstrate that it has a

20   monitoring and enforcement system adequate to ensure that Ravenswood is complying with the

21   requirements of the IDEA, the State chose to establish compliance with the FACD with reference

22   to its statewide system for monitoring school districts in California, as opposed to adopting a

23   special monitoring system for Ravenswood.  *See Emma C. v. Eastin,* 673 Fed. Appx. 637, 640

24   (9th Cir. 2016).

25        Section 13.0 of the FACD provides the Court with broad authority to effectively end the

26   Court's oversight of CDE under the consent decree and to dismiss State Defendants from the case

27   with prejudice.  Section 13.0 states as follows:

28

1

2

*13.0 Determination that FAPE is Provided and that CDE has an Effective Monitoring System in Place*

3

4

5

6

7

8

9

10

11

12

If, after considering the motion(s) of Defendants and any opposition thereto, and after conducting an Evidentiary Hearing, if necessary, the Court determines that (1) Ravenswood has complied with all Requirements of the Revised RCAP, and (2) the state-level system in place is capable of ensuring continued compliance with the law and the provision of FAPE to children with disabilities in Ravenswood, **there shall be a rebuttable presumption that there exists** in Ravenswood a system capable of providing FAPE to Class Members and **in CDE a system to adequately monitor, supervise and ensure FAPE to Class Members**. To overcome this presumption, the Class Members must affirmatively demonstrate, with specific evidence, that Ravenswood does not have a system capable of providing FAPE to Class Members. **At any time after an appropriate hearing**, **the Court may order any appropriate relief**, including ordering the District to continue its efforts to comply with the Revised RCAP, modifying the scope and terms of the Revised RCAP, ordering the CDE to continue certain monitoring obligations, **or dismissal with prejudice of** Ravenswood and **CDE in the event that they have complied with the terms of this Decree and Ravenswood has a system capable of providing FAPE to Class Members**.

13

14

Decl. Leask, Exh. 1 at pp. 20-21, § 13.0 (emphasis added).

15

16

Section 18.10 of the FACD likewise provides the Court with the authority to dismiss the entire action with prejudice. Section 18.10 states as follows:

17

18

19

20

"*18.10* Upon determination by the Court that Ravenswood and the CDE have complied with the requirements of this First Amended Consent Decree, including the Revised RCAP, and there exists at Ravenswood a system capable of providing FAPE to Class Members, **the Action shall be dismissed with prejudice by the Court**."

21

Decl. Leask, Exh. 1 at p. 26, § 18.10 (emphasis added).

22

**III.    CORRECTIVE ACTION PLAN PROCESS**

23

24

25

26

From 2003 to 2011, the primary focus of the parties was bringing Ravenswood into compliance with federal law through implementation of the FACD and a corrective action plan for the district. However, on July 25, 2011, the Court *sua sponte* ordered the parties to address the relevance and measurement of Section 13.0 of the FACD. Dkt. 1640.

27

28

Subsequently, the Court adopted a corrective action plan that included a focus on CDE's monitoring system (Dkt. 2043), and after some challenges by the State (Dkt. 2056), the parties

6

1   and the Monitor engaged in a long process involving numerous written submissions from CDE,

2   responses from Plaintiffs, and the Monitor's reports regarding the State's compliance with various

3   corrective action plan items. *See, e.g.,* 2346 at 6. Despite these efforts, meaningful progress was

4   not achieved, at least with respect to the State Defendants.

5   **IV.   IMPLEMENTATION OF THE FOUR-PHASE EVIDENTIARY HEARING PROCESS**

6          On May 18, 2018, this Court issued an order that set up a four-phase evidentiary hearing

7   process for examining whether the State does a legally adequate job of monitoring school districts

8   for compliance with the IDEA and the FACD (hereinafter, 5/18/18 Order). Dkt. 2387; *see also*

9   Decl. Leask, Exh. 2. This order expressly superseded the previous corrective action plan. *Id.* at

10  1-2.

11         The four phases were initially as follows:  **Phase 1** – a review of the State's process for

12  collecting data on school district performance; **Phase 2** – a review of the State's system for

13  analyzing the data it collects to determine which districts are in need of intervention, and to

14  determine what type of intervention is called for; **Phase 3** – a review of the State's monitoring

15  and enforcement activities; and **Phase 4** – a review of the written policies adopted by the State to

16  memorialize and explain to school districts the systems discussed in the first three phases. *Id.*;

17  *see also*, *Emma C. v. Thurmond*, 472 F. Supp. 3d 641, 643 (N.D. Cal. 2018). However, after

18  completing Phase 3, the parties stipulated (and the Court agreed) that Phase 4 would instead

19  involve the outstanding issues from the earlier phases, which included (1) the State's plan for

20  inclusion of IEP implementation data in the selection for school districts for the CIM process; (2)

21  the State's plan for including restraint and seclusion data in the selection of school districts for the

22  CIM process; and (3) the State's plan for selecting small school districts for monitoring. Dkt.

23  2841.

24         As stated in the 5/18/18 Order, "[a]t each phase, the Court will issue a ruling explaining

25  whether the state has established compliance with federal law in the area at issue." Dkt. 2387 at

26  p. 2. In addition, the 5/18/18 Order stated that "[i]f the state is able to show substantial

27  compliance with federal law at each of the four phases, it is anticipated that the consent decree

28  will be lifted . . . ." *Id.*

1    **V.    THE STATE'S DEMONSTRATED COMPLIANCE AT EACH OF THE FOUR-PHASES OF THE EVIDENTIARY HEARING PROCESS**

2

3        At each phase of the four-phase evidentiary hearing process, the Court found the State in

4    compliance.  As previously noted by the Court, "neither excellence nor perfection is necessary."

5    *Emma C. v. Thurmond*, 668 F. Supp. 3d 902, 904 (N.D. Cal. 2023).  Instead, the State was

6    required to show that its "efforts are adequate."  *Id*.  After careful examination and vigorous

7    evidentiary hearings, the Court conclusively determined, as set forth in detailed and thorough

8    written orders, that the State's monitoring efforts are more than adequate and, hence, in

9    compliance with its federal statutory obligations and the FACD.

10        **A.    Phase 1**

11        For Phase 1, the 5/18/18 Order required the State to file a report, backed by evidence,

12    explaining how it believed it complies with its data collection obligations.  Dkt. 2387 at 2.  State

13    Defendants filed their Phase 1 submission on June 1, 2018.  Dkt. 2390.  The Monitor then filed

14    reports describing his conclusions regarding the State's compliance with the areas outlined in the

15    5/18/18 Order.  Dkt. 2397, 2401.  Plaintiffs filed a response to State Defendants' Phase 1

16    submission and the Monitor's report.  Dkt. 2400.  State Defendants also filed a response to the

17    Monitor's report.  Dkt. 2399.  The Court then conducted a two-day evidentiary hearing on August

18    1 and August 7, 2018, during which the Court, the Monitor and Plaintiffs had the opportunity to

19    question three top officials from CDE's Special Education Division under oath.[2]  Dkt. 2407,

20    2413, 2435.

21        Following the Phase 1 evidentiary hearing, and after considering the written submissions,

22    reports, and CDE testimony under oath, the Court issued an order on August 17, 2018, finding the

23    State "largely in compliance with its obligation to collect the statewide data it needs to fulfill its

24    monitoring and enforcement responsibilities under the IDEA" with "one exception: data

25    collection to help identify school districts that are not providing services promised in individual

26    education programs, or IEPs."  Dkt. 2428 at p. 1; *see also* Decl. Leask, Exh. 3.  With respect to

27        [2] In connection with the Phase 1 evidentiary hearing process, State Defendants, Plaintiffs, the Monitor, and Ravenswood filed additional written submissions to the Court.  Dkt. 2403, 2406, 2410, 2411, 2417, 2419, 2422, 2420, 2427.

28

8

IEP implementation data, the Court ruled that the State would have a further opportunity to demonstrate compliance at a later phase. *Id.* at 2; 38. The parties then moved to Phase 2.

### B.    Phase 2

Phase 2 examined how the State analyzes the data it collects to determine which districts are in need of intervention, and to determine what type of intervention is called for. The Court set a schedule for Phase 2, which followed the structure of the Phase 1 evidentiary hearing process, but further required the State to respond in writing to the Monitor's report and permitted amicus briefing. Dkt. 2438, 2441. The Court also later clarified that the scope of Phase 2 would include an examination of whether the State's decision to issue annual compliance determinations for certain school districts based on data analysis alone, without further targeted monitoring activity, is sufficient to fulfill its obligations under the IDEA. Dkt. 2439.

State Defendants filed their Phase 2 submission on December 7, 2018. Dkt. 2454, 2455. The Monitor filed his report on January 28, 2019 (Dkt. 2469) and the State filed its response to the Monitor's review of the State's Phase 2 Submission on February 25, 2019. Dkt. 2478. Plaintiffs also filed a response to State Defendants' Phase 2 submission and the Monitor's review of Phase 2 on March 25, 2019. Dkt. 2484.[3] The Court reviewed the State's submissions and the responses from the parties, and conducted three days of evidentiary hearings on April 29, 2019, May 1, 2019, and May 31, 2019. Dkt. 2493, 2500, 2511, 2506, 2507, 2518.[4]

On July 5, 2019, the Court found the State not in compliance at Phase 2. Dkt. 2520. However, after further submissions by State Defendants (Dkt. 2545, 2553, 2568, 2563, 2588, 2590, 2592), the Monitor (Dkt. 2555, 2589) and further Phase 2 evidentiary hearings held on June 8, 2020, June 10, 2020, and July 8, 2020 (Dkt. 2578, 2580, 2594, 2585, 2586, 2617), on July 16, 2020, the Court issued a second order on Phase 2, this time finding the state in compliance at Phase 2. Dkt. 2598; *see also* Decl. Leask, Exh. 4.

---

[3] Additional submissions were provided by the State regarding Phase 2 and the Monitor. Dkt. 2501, 2503, 2508, 2510, 2516, 2517, 2516, 2519.
[4] The State also submitted supplemental filings at the request of the Court. Dkt. 2494, 2501, 2503, 2508.

**C.     Phase 1 Holdover – IEP Implementation Data**

Following the Court's Order on Phase 2, the Court and the parties returned to the issue from Phase 1 regarding IEP Implementation Data, and evaluation of the State's compliance regarding data collection to help identify school districts that are not providing the services promised in IEPs. Dkt. 2610. The State filed its initial submission as to IEP Implementation Data on March 12, 2021 (Dkt. 2627), the Monitor filed his report on April 9, 2021 (Dkt. 2630), and the State thereafter responded to the Monitor's report on May 14, 2021. Dkt. 2635. A hearing on IEP Implementation Data Collection was held on June 2, 2021. Dkt. 2637, 2640.

On June 18, 2021, the Court found the State in compliance with its obligations under the IDEA and the FACD with respect to statewide data collection to help the State identify school districts that are not providing the services promised in IEPs, and found that the State had adequately addressed the deficiencies identified in the August 17, 2018 Order (Dkt. 2428) with respect to the same, in light of (1) the State's written submissions on IEP implementation (Dkt. 2627 & 2632), and (2) the State's witnesses' testimony at the June 2, 2021 hearing. Dkt. 2637, 2641, 2644; *see also* Leask Decl., Exh. 5.

**D.     Phase 3**

Phase 3, which involved a review of the State's monitoring and enforcement activities, was broken into two subparts. At Phase 3A, the State was required to demonstrate that it has a sufficient plan in place to help struggling school districts improve in meeting their obligations under the IDEA. Dkt. 2653, 2656. Phase 3B was where the State was to demonstrate that its implementation of that plan is sufficient. Dkt. 2847.

**Phase 3A:** State Defendants filed their Phase 3A submission on April 15, 2022. Dkt. 2676. The Monitor filed his report on July 17, 2022. Dkt. 2679. State Defendants then filed a response to the Monitor's report. Dkt. 2683. Plaintiffs also filed a response to State Defendants' Phase 3A submission and the Monitor's report. Dkt. 2688. Subsequently, the Court held three days of Phase 3A hearings in November 2022 to discuss the initial round of written submissions. Dkt. 2695, 2696, 2700, 2701-2703. Additional submissions were made. Dkt. 2683, 2684, 2694. A further hearing was held in March 2023 (Dkt. 2711) and the parties filed supplemental briefs.

10

1  Dkt. 2707, 2708, 2709.  At the hearings, the state officials explained their monitoring process and

2  answered questions from Plaintiffs, the Monitor, and the Court.  Dkt. 2717, 2718.  At the

3  conclusion of this phase, on April 4, 2023, the Court found the State in compliance at Phase 3A,

4  finding that the State's planned monitoring process is both "reasonable" and "sufficient to move

5  forward in the process."  Dkt. 2718; *see also* Decl. Leask, Exh. 6.

6  **Phase 3B**:  Phase 3B began in late March 2023.  Dkt. 2716.  To assess the State's

7  implementation of its intervention plan, the parties selected eleven school districts to track.  *Id.*

8  The Court set a briefing schedule broken down into steps that follow the State's Compliance

9  Improvement Monitoring (CIM) system.  *Id.*

10  During this phase the State produced thousands of pages of documents and offered

11  substantial hearing testimony to allow Plaintiffs, the Monitor, and the Court to assess the State's

12  performance.  Dkt. 2847.  The testifying witnesses were three high-level officials from CDE, nine

13  staff consultants who worked with the eleven LEAs who were being tracked in the CIM Process,

14  and two witnesses from technical assistance providers contracted by the State to work with LEAs

15  in the CIM Process.  *Id.*[5]

16  The Court held three days of hearings to discuss Phase 3B submissions on October 17,

17  2023, February 2, 2024, and April 19, 2024.  Dkt. 2743, 2756, 2757, 2774, 2818, 2837, 2840.  At

18  the conclusion of Phase 3B, on July 26, 2024, the Court issued its Order re State's Compliance at

19  Phase 3B.  Dkt.2847; *see also*, Decl. Leask, Exh. 7.  In this order, the Court found the State in

20  compliance:

21
22              The state has demonstrated that its system for intervention with struggling
              school districts is more than adequate under federal law.   It is not a
23              particularly close question.  At each step of the intervention process, the state
              has shown that it provided meaningful support and technical assistance to
              school districts.  The state has shown that it provided meaningful support and
24              technical assistance to school districts.  The state has also established an
              escalating set of enforcement mechanisms to ensure that school districts
25              participate in the process.  The state is in compliance at Phase 3B.

26  *Id.* at p.1.

27  _____

28  [5] The submissions for Phase 3B are reflected in docket numbers 2729, 2732, 2733, 2746-
    2752, 2754-2755, 2761, 2763, 2769, 2771-2772, 2777-2784, 2786-2815, 2819-2828, 2832, 2833.

11

1    **E.    Phase 4**

2    As indicated above, Phase 4 involved three outstanding issues from the earlier phases: (1)

3    the State's plan for inclusion of IEP implementation data in the selection for school districts for

4    the CIM process; (2) the State's plan for including restraint and seclusion data in the selection of

5    school districts for the CIM process; and (3) the State's plan for selecting small school districts

6    for monitoring.  Dkt. 2841.  During this phase, the State produced documents and provided

7    hearing testimony to allow Plaintiffs, the Monitor, and the Court to assess the State's

8    performance.  Dkt. 2850, 2851.  Plaintiffs and the Monitor also submitted their responses (Dkt.

9    2853, 2854), and the State submitted a reply in an effort to answer questions raised by Plaintiffs

10   and the Court Monitor.  Dkt. 2856.  The hearing on Phase 4 was held on October 25, 2024.  Dkt.

11   2859.

12   On October 28, 2024, the Court issued its Order re State's Compliance at Phase 4.  Dkt.

13   2861; *see also* Decl. Leask, Exh. 8.  In this order, the Court found compliance, stating in part as

14   follows:

15   As the Court has previously explained, the consent decree process requires
16   "neither excellence nor perfection" and the State need only show that its
     "efforts are adequate" under federal law.  *Emma C. v. Thurmond*, 668 F. Supp.
17   3d 902, 904 (N.D. Cal. 2023).  Here, the State's papers and supplemental
     exhibits, the plaintiffs' and court monitors' responses, and the State's
18   testimony at the evidentiary hearing make clear that the State has more than
     met that threshold.  The State is therefore in compliance with the IDEA and
19   the consent decree at Phase 4.

20

21   *Id*. at p. 2.

22                          **ARGUMENT**

23   **I.    BY THE EXPRESS TERMS OF THE CONSENT DECREE, THERE IS A REBUTTABLE
           PRESUMPTION OF COMPLIANCE AND BROAD AUTHORITY TO TERMINATE THE**
24         **CONSENT DECREE AND DISMISS THE ACTION WITH PREJUDICE**

25   As indicated above, Section 13.0 of the FACD creates a rebuttable presumption of

26   compliance in the event that the Court determines (1) Ravenswood has complied with all

27   requirements of its corrective action plan, and (2) the state-level system in place is capable of

28

                                  12

1    ensuring continued compliance with the law and the provision of FAPE to children with

2    disabilities in Ravenswood.  Dkt. 832; Decl. Leask, Exh. 1, § 13.0.

3          On April 6, 2021, the Court adopted the parties' stipulation finding that Ravenswood

4    complied with its requirements under the FACD, and dismissed Ravenswood from the action.

5    Dkt. 2629.

6          Now, after issuing detailed orders finding compliance as to each of the four-phases, and

7    after concluding the evidentiary hearing process with respect to the State Defendants, the Court

8    has found that the state-level system in place is capable of ensuring continued compliance with

9    the law and the provision of FAPE to children with disabilities.  Thus, a rebuttable presumption

10   of compliance exists.  Decl. Leask, Exh. 1, 3-10; *see also* Dkt. 2428, 2598, 2644, 2718, 2847,

11   2861.

12         "[C]ourts treat consent decrees as contracts" (*United States v. Asarco, Inc*., 430 F.3d 972,

13   982 (9th Cir. 2005)), that have "the additional element of judicial approbation."  *Smith v. Sumner*,

14   994 F.2d 1401, 1406 (9th Cir. 1993).  To determine whether a consent decree should be

15   terminated or lifted, the court should look to the four corners of the consent decree itself.  *Asarco,*

16   *supra*, 430 F.3d at 980 (the meaning of [a] consent decree, like a contract, must be discerned

17   within its four corners."); *see also Brionez v. United States Department of Agriculture*, 2007 WL

18   217680 at 2 (N.D. Cal. 2007), citing *United Commercial Ins. Serv., Inc. v. Paymaster Corp*., 962

19   F.2d 853, 856 (9th Cir. 1992) ("The interpretation and enforcement of a settlement agreement is

20   governed by the legal principles applicable to contracts.").

21         The Supreme Court has held that "the scope of a consent decree must be discerned within

22   its four corners, and not by reference to what might satisfy the purposes of one of the parties to

23   it.  Because the defendant has, by the decree, waived his right to litigate the issues raised, a right

24   guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver

25   must be respected, and the instrument must be construed as it is written, and not as it might have

26   been written had the plaintiff established his factual claims and legal theories in

27   litigation."  *United States v. Armour & Co*., 402 U.S. 673, 681-82 (1971).

28

13

1    A district court's determination to terminate or end a consent decree is entitled to

2    heightened deference, especially where the district judge oversaw the decree for a significant

3    period of time. *Jeff D. v. Otter*, 643 F.3d 278, 283 (9th Cir. 2011); *Jeff D. v. Kempthorne*, 365

4    F.3d 844, 850 (9th Cir. 2004); *see also Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 394

5    (1992), citing *Hutto v. Finney*, 437 U.S. 678, 688 (1978) ("we . . . owe substantial deference to

6    the 'trial judge's years of experience with the problem at hand.'").

7    As set forth above, by the express terms of the FACD, the Court has broad authority to

8    order "any appropriate relief" including dismissing the action and State Defendants with

9    prejudice. Dkt. 832; Decl. Leask, Exh. 1 at pp. 20-21, § 13.0 and p. 26, § 18.10 (emphasis

10   added). In addition, by the express terms of the consent decree, upon conclusion of the

11   evidentiary hearing process whereby the Court finds the State's system for monitoring school

12   districts throughout California is adequate to ensure that districts are complying with the IDEA, a

13   rebuttable presumption exists that CDE's system adequately monitors the provision of FAPE to

14   Class Members, such that the Court should end its nearly 30-year monitoring of CDE and dismiss

15   State Defendants and the action with prejudice pursuant to Sections 13.0 and 18.10 of the FACD.

16   *See e.g*., *Labor/Community Strategy Center, et al. v. Los Angeles County Metropolitan*

17   *Transportation Authority, et al.,* 564 F.3d 1115, 1120-1123 (9th Cir. 2009) ( Analysis of express

18   terms of the consent decree); *Lee v. Butler County Bd. of Educ.,* 1983 F.Supp.2d 1359 (M.D.Ala.

19   2002) (terminating consent decree where parties has agreed to updated consent decree detailing

20   remedial steps to be taken within three years and district had complied based on evidence

21   presented to court.)

22   As described above, the Court held a four-phase evidentiary hearing process whereby the

23   Court carefully evaluated the State's system for monitoring school districts throughout California,

24   to ensure that the system is adequate to ensure that districts are complying with the IDEA, and

25   found the State in compliance with the IDEA and the FACD. Hence, there is a rebuttable

26   presumption that CDE has a system capable and sufficient to adequately monitor, supervise and

27   ensure FAPE to Class Members. Dkt. 2428, 2598, 2644, 2718, 2847, 2861; *see also* Decl. Leask,

28   Exhs. 3-10. Because this rebuttable presumption has been established, and because Plaintiffs

1  have indicated that they do not intend to rebut this presumption (Dkt. 2862, *see also* Decl. Leask,

2  Exh. 11, 10/25/24 Hearing Tr., 53:1-18 and 57:13-58:9), the Court should terminate the consent

3  decree and dismiss the action with prejudice.[6]

4

5  **II.    THE COURT SHOULD ALSO TERMINATE THE CONSENT DECREE AND DISMISS THE ACTION PURSUANT TO RULE 60(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

6        Rule 60(b)(5) of the Federal Rules of Civil Procedure provides, in relevant part, that a court

7  may relieve a party or its legal representative from a final judgment order if the judgement has

8  been satisfied . . . or applying it prospectively is no longer equitable.  Fed. R. Civ. P. 60(b)(5).

9        As noted above, Section 18.10 of the Consent Decree also provides that the Court may

10  dismiss the action with prejudice "[u]pon determination by the Court that Ravenswood and the

11  CDE have complied with the requirements of this First Amended Consent Decree . . . ."  Dkt.

12  832; Exh. 1 at p. 26, § 18.10.

13        Here also, termination of the FACD is warranted because (1) "substantial compliance" with

14  the consent decree has been met and (2) applying the consent decree prospectively would not be

15  equitable.

16        **A.    Substantial Compliance with the Consent Decree Has Been Met**

17        To determine whether a party has "satisfied" or "complied" with a consent decree, the

18  relevant standard is whether the party "substantially complied" with the requirements of the

19  consent decree.  *Otter, supra*, 643 F.3d at 283-84, quoting *United States v. ITT Cont'l Baking Co.*,

20  420 U.S. 223, 236 (1975) ("Because consent decrees have 'many attributes of ordinary contracts

21  [and] . . . should be construed basically as contracts . . . the doctrine of substantial compliance, or

22  substantial performance, may be employed.")  As set forth in *Otter,* the standard for substantial

23  compliance implies "something less than a strict and literal compliance with the contract

24  provisions but fundamentally it means that the deviation is unintentional and so minor or trivial as

25  to not substantially to defeat the object which the parties intend to accomplish."  *Otter*, 643 F.3d

26  at 284.

27        _____

    [6] Any challenge to the rebuttable presumption would shift the burden to Plaintiffs to

28  "affirmatively demonstrate, with specific evidence," that CDE does not have a system capable of
    providing FAPE to Class Members.  *See* Decl. Leask, Exh. 1 at pp. 20-21, § 13.0.

15

1    Moreover, as instructed by the Ninth Circuit, when making a determination regarding

2    whether substantial compliance with a consent decree has been met, the court need not examine

3    in detail past instances of non-compliance or even full compliance; it also does not mean that

4    "every last wish or hope of the decree [has been] achieved, but [that] *the decree accomplished its*

5    *essential purposes and the situation improved greatly*."  *Labor/Cmty. Strategy Ctr.*, 564 F.3d at

6    1123 (emphasis added).  Instead, Courts must consider "whether the larger purposes of [consent]

7    decrees have been served" in deciding whether their vacatur is justified due to substantial

8    compliance.  *Otter*, 643 F.3d at 287; *see also Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1122 ("Our

9    analysis requires we do more than simply count the number of technical deviations from the

10    decree.  Instead, we must determine, using a holistic view of all the available information,

11    whether [defendant's] compliance with the Decree overall was substantial, notwithstanding some

12    minimal level of noncompliance.").

13    Here, the Court already has deemed the State to have "substantially complied" through its

14    careful examination of the evidence in the record at each phase of the four-phase evidentiary

15    hearing process.  *See* Dkt. 2428, 2598, 2644, 2718, 2847, 2861; *see also* Decl. Leask, Exhs. 3-10.

16    Through this process, the Court has approved the State's new statewide data collection and

17    monitoring and enforcement system, and its updated CIM Process, deeming it "more than

18    adequate" to meet federal law and the obligations set forth under the FACD.  *Id.*  Thus, the

19    intended purpose of the consent decree has been fulfilled.

20    Because State Defendants have substantially complied with the requirements of the FACD,

21    the Court should terminate the FACD and dismiss the action pursuant to Rule 60(b)(5) of the

22    Federal Rules of Civil Procedure and Section 18.10 of the Consent Decree.  *See e.g.*, *Labor/Cmty.*

23    *Strategy Ctr.*, *supra*, 564 F.3d at 1120-1123 (upholding district court's finding that the

24    transportation authority had substantially complied with the consent decree); *Burt v. County of*

25    *Contra Costa*, 2014 WL 253010 (N.D. Cal. 2014) (Order granting motion to vacate the consent

26    decree under Rule 60(b)(5) of the Federal Rules of Civil Procedure in part because of substantial

27    compliance with the consent decree); *Lee*, 1983 F. Supp. 2d at 1368-1369 (terminating consent

28

1    decree where school district had shown substantial compliance based on evidence presented to

2    court.)

3        **B.    Prospective Enforcement of the Consent Decree Would Not Be Equitable**

4        Rule 60(b) of the Federal Rules of Civil Procedure also permits a court to grant relief from

5    terms of a judgment where "applying it prospectively is no longer equitable" or "any other reason

6    . . . justifies relief." Fed. R. Civ. P. 60(b)(5) & (b)(6).

7        The Supreme Court has cautioned that federal courts should not continue their "oversight of

8    state programs for longer periods of time . . . absent an ongoing violation of federal law."

9    *Jackson v. Los Lunas Community Program*, 880 F.3d 1176, 1192-93 (10th Cir. 2018), citing *Frew*

10   *v. Hawkins*, 540 U.S. 431, 441-442 (2004).  Thus, a "federal court must exercise its equitable

11   powers to ensure that when the objects of the decree have been attained, responsibility for

12   discharging the State's obligations is returned promptly to the State and its officials.  *Id.*

13   *"*Keeping a consent decree in place any longer than necessary to assure compliance with federal

14   law risks violating principles of federalism and "improperly depriv[ing] future officials of their

15   designated legislative and executive powers." *Id.*

16       Here too, the critical question is whether the objective of the consent decree has been

17   achieved.  *Horne v. Flores*, 557 U.S. 433, 450 (2009), citing *Frew*, 540 U.S. at 442.  "If a durable

18   remedy has been implemented, continued enforcement of the order is not only unnecessary, but

19   improper." *Id.*, citing *Milliken v. Bradley*, 433 U.S., 267, 282 (1977).

20       In this case, implementation of the consent decree has been supervised extensively by the

21   Court and the Monitor for approximately 25 years.  There has been continuous involvement and

22   oversight by the Court, through status conferences, hearings, written orders, and evidentiary

23   hearings.  These proceedings have sometimes been conciliatory, and sometimes adversarial, with

24   efforts that have resulted in substantial improvement to the statewide system of monitoring to the

25   benefit of all students with disabilities in California.  As established above, and as detailed in the

26   Court's prior Orders, the State's system for monitoring special education complies with the IDEA

27   and the FACD, and the objective of the FACD has been satisfied. (Dkt. 2428, 2598, 2644, 2718,

28   2847, 2861; *see also* Decl. Leask, Exhs. 3-10)

17

1    As demonstrated throughout these proceedings, Court oversight is no longer necessary.

2    Indeed, this Court's prior orders establishes that State Defendants' compliance with federal law is

3    reasonably durable, and that the relevant state officials are committed to ensuring continued

4    compliance.  Thus, continued enforcement of the FACD would be inequitable within the meaning

5    of Rule 60(b)(5).  *See e.g., Horne*, 557 U.S. at 450-470; *Freeman v. Pitts*, 503 U.S. 467, 490

6    (1992) (a commitment to future compliance through a record of sustained good-faith efforts to

7    remedy federal violations and, to the extent possible, eliminate the vestiges of the federal

8    violation); *Jackson*, 880 F.3d at 1203 (holding that "the district court's wealth of experience

9    overseeing the litigation should inform its assessment of whether the Defendants are now in

10   compliance with federal law, and whether they are committed to remaining in compliance" and

11   that "continued enforcement of the district Court's original order[s] is inequitable within the

12   meaning of Rule 60(b)(5), and relief is warranted.")  Accordingly, for this additional reason, the

13   FACD should be terminated and the action and State Defendants dismissed with prejudice.

14                                  **CONCLUSION**

15   For the foregoing reasons, State Defendants submit that, pursuant to Sections 13.0 and

16   18.10 of the FACD, as well as Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6), the FACD

17   should be lifted and the action dismissed with prejudice in its entirety and as against State

18   Defendants.

19

20   Dated:  November 7, 2024                      Respectfully submitted,

21                                                 ROB BONTA
                                                   Attorney General of California
22                                                 DARRELL W. SPENCE
                                                   Supervising Deputy Attorney General
23

24

25                                                 */s/ Stacey L. Leask*
                                                   STACEY L. LEASK
26                                                 Deputy Attorney General
                                                   *Attorneys for Defendants*
27                                                 *Department of Education*

28

                                        18

# CERTIFICATE OF SERVICE

Case Name:   **Emma C., et al. v. Thurmond, et al.**    No.    **3:96-cv-04179-VC**

I hereby certify that on <u>November 7, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' NOTICE OF MOTION AND MOTION TO TERMINATE THE CONSENT DECREE AND FOR DISMISSAL OF THE ACTION WITH PREJUDICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, [FIRST AMENDED CONSENT DECREE, SECTION 13.0 AND 18.10; AND FRCP 60(B)(5),(6)]**

**DECLARATION OF STACEY L. LEASK IN SUPPORT OF STATE DEFENDANTS' MOTION TO TERMINATE THE CONSENT DECREE AND FOR DISMISSAL OF THE ACTION WITH PREJUDICE, EXHIBITS 1 TO 11**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 7, 2024</u>, at San Francisco, California.

| R. Caoile | *R. Caoile* |
|-----------|-------------|
| Declarant | Signature |

SA2005104070
44395386.docx