Rob Bonta
Attorney General of California
Darrell W. Spence
Supervising Deputy Attorney General
Stacey L. Leask
Deputy Attorney General
State Bar No. 233281
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3524
  Fax:  (415) 703-5480
  E-mail:  Stacey.Leask@doj.ca.gov
*Attorneys for Defendants
California Department of Education, Tony
Thurmond, in his official capacity as the State
Superintendent of Public Instruction, and State
Board of Education*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **EMMA C., et al.,** | 3:96-cv-04179-VC |
| Plaintiffs, | **STATE DEFENDANTS' NOTICE OF THE STATE AUDITOR'S REPORT** |
| v. | |
| **THURMOND, et al.,** | Date: December 12, 2024<br>Time: 2:00 p.m. (videoconference)<br>Courtroom: 4<br>Judge: The Honorable Vince Chhabria |
| Defendants. | |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1
RELEVANT BACKGROUND ........................................................................................................ 2
    I.    The Relevant State Statutes ................................................................................... 2
    II.    Nonpublic Schools in California ............................................................................ 4
    III.    Nonpublic Agencies in California .......................................................................... 5
    IV.    Notice of the State Auditor's Report ..................................................................... 6
    V.    The State Auditor's Request to Keep the Matter Confidential ............................. 8
ANALYSIS ........................................................................................................................................ 8
    I.    The State Auditor's Report Has No Effect on the State's Pending Motion to Terminate the Consent Decree and Dismiss the Action .......................................... 8
        A.    CDE Monitors Nonpublic Agencies by Monitoring Their Contracting LEAs under its Court-Approved Monitoring and Enforcement Process ........................................................................................ 9
        B.    CDE's Processes for Nonpublic Agencies Mirrors That of Nonpublic Schools, Which Was Included in the Previously Approved Monitoring and Enforcement Process ........................................ 9
        C.    Nothing in the Report Alters the Court's Previous Orders Finding the State in Compliance under the IDEA and the First Amended Consent Decree ................................................................................................ 10
CONCLUSION ............................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**STATUTES**

Individuals with Disabilities in Education Act (IDEA), 20 U.S.C., §1400, et seq ............... 1, 7, 11

California Education Code
   § 56034 .................................................................................................................................. 2
   § 56035 ............................................................................................................................... 2, 5
   § 56366 .................................................................................................................................. 2
   § 56366(a)(2)(B)(i)&(ii) ..................................................................................................... 3, 4
   § 56366(a)(2)(C) ................................................................................................................ 3, 4
   § 56366(a)(8)(A)-(B) ............................................................................................................. 3
   § 56366.1 ......................................................................................................................... passim
   § 56366.1(a)(1)-(3) ................................................................................................................ 2
   § 56366.1(a)(4) ...................................................................................................................... 2
   § 56366.1(c)(1) ...................................................................................................................... 7
   § 56366.1(e)(1) ...................................................................................................................... 3
   § 56366.1(e)(2) ...................................................................................................................... 3
   § 56366.1(e)(3) ...................................................................................................................... 3
   § 56366.1(f) ........................................................................................................................... 5
   § 56366.1(j) ........................................................................................................................... 7
   § 56366.1(j) subds. (1) through (3) ....................................................................................... 3
   § 56366.1(m)(1)&(2) ............................................................................................................. 3

California Government Code
   § 8547, et seq. .................................................................................................................... 6, 8
   § 8547.6(a) ............................................................................................................................ 8
   § 8547.7(c) ............................................................................................................................ 8

**OTHER AUTHORITIES**

California Code of Regulations, Title 5
   § 3060, et seq. .................................................................................................................... 2, 6

**INTRODUCTION**

Defendants the California Department of Education (CDE), Tony Thurmond, in his official capacity as the State Superintendent of Public Instruction, and State Board of Education (collectively, State Defendants or the State) hereby submit this supplemental filing in order to provide notice of a report that was publicly issued today, November 21, 2024, by the State Auditor's Office.  A copy of the portion of the State Auditor's report that concerns the CDE is attached to the accompanying Declaration of Shiyloh Duncan-Becerril as Exhibit A.

The State Auditor's report with respect to the CDE arises out of an investigation that was undertaken by the State Auditor's Office in response to a complaint received by the State Auditor's Office.  The complaint involved an allegation that the CDE was not meeting its statutory requirements under California Education Code section 56366.1 with respect to nonpublic agencies which contract with Local Education Agencies (LEA) to provide "related services" to special education students.  As stated in the report, the State Auditor concluded that the CDE is not fully meeting its required mandates under the state statute with respect to nonpublic agencies.  The CDE, however, has already promptly undertaken action to address those requirements.

As explained more fully below, the State has been unable to comment on this investigation until the report was publicly released.  The State provides this supplemental information to provide full disclosure of the report although neither the State Auditor's report nor the findings therein affect the State's recently filed Motion to Terminate the Consent Decree and for Dismissal of the Action (Dkt. 2865), nor does it impact this Court's previously issued orders that have found the State in compliance under the Individuals with Disabilities in Education Act (IDEA) and with the operative First Amended Consent Decree.  Dkt. 832, 2428, 2598, 2644, 2718, 2847, 2861. Thus, the Court should proceed to grant the State's pending motion to terminate the consent decree and dismiss the action with prejudice, which is set for hearing on December 12, 2024, at 2:00 p.m.

Notwithstanding, the State stands ready to further respond and to answer any questions from Plaintiffs, the Monitor and/or the Court with respect to the State Auditor's report, should that be requested.

## RELEVANT BACKGROUND

### I. THE RELEVANT STATE STATUTES

Under state law, an LEA may contract with a nonpublic, nonsectarian school or a nonpublic agency for the delivery of alternative special education services. Cal. Educ. Code § 56366.

A nonpublic, nonsectarian school (NPS) is a private, nonsectarian school that enrolls individuals with exceptional needs pursuant to an Individualized Education Program (IEP). Cal. Educ. Code § 56034. An NPS must be certified by the CDE and must meet certain standards set by the California Superintendent of Public Instruction (Superintendent) and State Board of Education (SBE). *Id.*

A nonpublic agency (NPA) is a private, nonsectarian establishment or individual that provides "related services" necessary for a pupil with exceptional needs to benefit educationally from the pupils' educational program pursuant to an IEP, such as physical and occupational therapy, language and speech therapy, or other such supportive services. Cal. Educ. Code § 56035. Like an NPS, an NPA also must be certified by the CDE and must meet certain standards set by the Superintendent and SBE. *Id.*

The certification standards and requirements for an NPS and NPA are set forth in California Education Code sections 56366 and 56366.1, and in Title 5 of the Cal. Code of Regulations § 3060, et seq. For the Court's convenience, a copy of these statutes is attached to the Declaration of Shiyloh Duncan-Becerril as Exhibit B.

Section 56366.1, subdivision (a) provides that an NPS and NPA shall file an application for certification with the Superintendent on forms provided by the CDE and shall provide required information to the CDE that includes, but is not limited to, a description of the special education and designated instruction and services provided, a list of appropriately qualified staff, a description of the credential, license, or registration that qualifies each staff member rendering special education and designated instruction and services to do so, and copies of such credentials,

1  licenses, or certificates of registration. Cal. Educ. Code § 56366.1(a)(1)-(3). Training and other

2  requirements are also specified under the statute. Cal. Educ. Code § 56366.1(a)(4).

3      Section 56366.1, subdivision (e) provides that prior to certification, the Superintendent shall

4  conduct on-site reviews of the facility or program for which the applicant seeks certification, and

5  that the Superintendent shall conduct an additional on-site review of the facility or program

6  within three years of the effective date of the certification, unless the Superintendent

7  conditionally certifies the nonpublic, nonsectarian school or agency, or unless a formal complaint

8  about the school or agency is received by the Superintendent. Cal. Educ. Code § 56366.1(e)(1).

9  In carrying out this function, the Superintendent may verify that criminal background check

10 clearances have been completed. Cal. Educ. Code § 56366.1(e)(2).

11     Section 56366.1, subdivision (j) provides that the Superintendent shall monitor the

12 facilities, the educational environment, and the quality of the education program, including the

13 teaching staff, the credentials authorizing service, the standards-based core curriculum being

14 employed, and the standards-focused instructional materials used, of an existing certified NPS or

15 NPA on a three-year cycle that includes a self-review in year one, an on-site review in year two,

16 and a follow up visit in year three. Cal. Educ. Code § 56366.1(j) subdivisions (1) through (3).

17     Section 56366.1, subdivision (m) also requires the Superintendent to collect fees annually

18 from an NPS and NPA and to use such fees towards the on-site reviews. Cal. Educ. Code §

19 56366.1(m)(1)&(2).[1]

20     The statute essentially treats an NPS and an NPA the same. However, they are different in

21 that an NPS is an actual school, operating its own school site, teaching staff, curriculum, and

22 other aspects of the school. Decl. Duncan-Becerril, ¶¶ 5-7, 10-11. An NPA, on the other hand, is

23 often one licensed or credentialed individual who provides a single service such as speech or

24 language therapy, and who in most cases, provides the special education services at the pupil's

25 school. *Id*. In this regard, the statutes specify specific requirements for an NPS that do not apply

26 to an NPA. *See, e.g.*, Cal. Educ. Code § 56366(a)(2)(B)(i)&(ii), § 56366(a)(2)(C), §

---

27  [1] The Superintendent is the CDE's executive officer. Administrative functions of the Superintendent are carried out through staff within the CDE's Special Education Division. Decl.
28  Duncan-Becerril, ¶ 8.

56366(a)(8)(A)-(B), § 56366.1(e)(3). For example, when a pupil is placed at an NPS, the LEA is required to evaluate the placements in the NPS to evaluate educational progress of the pupil, to consider whether or not the needs of the public continue to be best met at the NPS, to determine whether any changes are necessary, such as transferring to a public school setting, and to evaluate additional requirements relating to the NPS. Cal. Educ. Code § 56366(a)(2)(B)(i)&(ii) and § 56366(a)(2)(C).

The CDE provides information to the public regarding certification of NPS and NPAs on its website at www.cde.ca/sp/se/ds/npsacrtapp.asp ; www.cde.ca./sp/se/ds/npsleaonsitevisit.asp; www.cde.ca./sp/se/ds/npageinfo.asp. Decl. Duncan-Becerril, ¶ 9.

## II. NONPUBLIC SCHOOLS IN CALIFORNIA

There are approximately 252 NPSs in California. Decl. Duncan-Becceril, Exh. A, p. 2. During Phase 3A of the four-phase evidentiary hearing process, the State provided a description of the State's requirements and processes to certify and monitor NPSs in its submission for Phase 3 Design of Monitoring and Enforcement Activities. Dkt. 2676, April 15, 2022, at pp. 31-35. As previously explained to Plaintiffs, the Monitor, and the Court, students who are served by an NPS are included in the CDE's special education monitoring framework. For the purposes of the CDE's special education monitoring framework, the CDE considers an NPS as any other school under the auspices of the contracting LEA. As such, NPSs are required to submit the data required by CALPADS to their contracting LEA for reporting to the State. Compliance in meeting Part B requirements and the performance for students placed in an NPS are incorporated when the CDE analyzes the contracting LEA's performance and compliance. The CDE evaluates the data for students served by an NPS alongside all other students with disabilities served by the LEA to determine an LEAs selection for further monitoring. Dkt. 2676 at pp. 31.

In addition, the CDE uses a Validation Review to assess the applicant's operational standards, instructional materials, and school facility. If the NPS applicant's operational standards do not meet certain requirements, the CDE may deny certification or issue a conditional certification with required corrective actions. Following the Validation Review, if the NPS applicant meets all application requirements, the CDE will issue the applicant a 90-day

conditional certification, authorizing the new NPS to begin contracting with LEAs to provide appropriate special education and related services for students. If, after following the conditional certification, an IEP-placed student is enrolled in the NPS, the NPS obtains a master contract, and the NPS enters into an individual service agreement with the student's LEA, the CDE will then schedule an on-site review with the conditionally certified NPS to determine whether to certify the NPS. If an NPS fails to obtain an IEP-placed student, master contract, and individual service agreement within the 90-day conditional certification window, the conditional certification will expire. If CDE denies certification, CDE will provide the applicant with reasons for the denial. Cal. Educ. Code § 56366.1(f). The CDE annually reviews existing NPS certifications and requires them to annually update their applications between August 1 and October 31. Dkt. 2676 at pp. 32.

With respect to monitoring, as explained by the State in its earlier Phase 3A submission (Dkt. 2676), the CDE monitors existing NPSs as required by statute. In accordance with California Education Code section 56366.1, the State conducts pre-certification on-site reviews of NPS's and upon certification, monitors the facilities, the educational environment, and the quality of educational programs at an NPS on a three-year cycle. This three-year monitoring process for an NPS includes sending the NPS a self-review form by March 15 in year one. In year two, the CDE conducts an on-site review to determine whether the nonpublic school is compliant with certification requirements, program quality, IEP implementation, student safety, and policies and procedures. This review may include conducting interviews with personnel, students, and parents to follow up on areas of noncompliance and raised concerns. In year three, the CDE conducts a follow up visit on site to verify staff credentials and licenses and to review the NPSs behavioral programs. This follow-up visit may include the review of findings from the previous year's on-site review as well as of any other areas of concern. Dkt. 2676 at pp. 33-35.

### III. NONPUBLIC AGENCIES IN CALIFORNIA

As indicated above, NPAs are private, nonsectarian establishments or individuals that provide "related services" in accordance with a student's IEP. Cal. Educ. Code § 56035. An example would be an NPA that provides speech therapy services or physical therapy services

5

outlined in an IEP. Most NPAs in California provide their services at the pupil's school rather than at off-school locations. For example, as of July 2024, the CDE certified 809 NPAs and only 229 of those provided services at their own service locations. Decl. Duncan-Becerril, Exh. A, p. 1.

Like an NPS, students served by NPAs are included in the CDE's special education monitoring framework by virtue of being under the auspices of their contracting LEA. As such, NPAs are required to submit data required by CALPADS to their contracting LEA for reporting to the State. Decl. Duncan-Becerril, ¶¶ 12-13. Compliance in meeting Part B requirements and the performance for students placed in NPAs are therefore incorporated when the CDE analyzes the contracting LEA's performance and compliance. *Id*. In other words, the CDE evaluates the data for students served by an NPA when analyzing an LEA's data and evaluating whether an LEA is selected for further monitoring. *Id*.

The CDE also certifies NPAs under the same statutory framework required for an NPS. Decl. Duncan-Becerril, ¶ 14. Like NPS's, NPAs are directed to file an application with the CDE using the CDE's application forms. Cal. Educ. Code § 56366.1(a) and Title 5 of the Cal. Code of Regulations, §3060, et seq. These processes include a Validation Review process to assess the applicant's operational standards, licensee's, credentials, and/or other certification requirements as needed. Decl. Duncan-Becerril, ¶ 14.

However, because NPAs are notably different than an NPS in that NPSs are schools with curriculum and other educational programs and services, whereas NPAs provide only specialized services which are most often provided at the pupils' school rather than at an outside facility, the CDE did not treat NPAs the same with respect to site inspection and follow-up reviews. Decl. Duncan-Becerril, ¶¶ 10-14. Recently, the State has re-evaluated this approach and has developed processes for self-review, on site, and follow up reviews of NPAs that mirror those processes for an NPS. Decl. Duncan-Becerril, ¶¶ 15-18.

**IV.   NOTICE OF THE STATE AUDITOR'S REPORT**

As indicated, the California State Auditor (State Auditor) received a complaint under the California Whistleblower Protection Act, Cal. Govt. Code section 8547, et seq., alleging that the

6

1   CDE does not comply with its state mandates under Education Code 56366.1.  Pursuant to the
2   state whistleblower statutes, the State Auditor investigated the complaint and today, November
3   21, 2024, the State Auditor's office publicly released its report for Case I2023-14333 (Report).
4   Decl. Duncan-Becerril, ¶ 3, Exh. A.

5   As stated in the Report, the State Auditor found that, although the CDE has a process to
6   monitor NPSs, the CDE did not have a similar system in place for pre-certification on-site review
7   of those NPAs that have a physical location, as described in Cal. Education Code section
8   56366.1(e)(1), and did not have a system in place for monitoring NPAs on a three-year cycle as
9   described in Cal. Education Code section 56366.1(j), including on-site review of those NPAs that
10  have a physical location.  Decl. Duncan-Becerril, Exh. A, pp. 2-3.

11  Notably, the State Auditor did not make any finding of violations under the IDEA or as to
12  the IDEA requirement to provide a free appropriate public education (FAPE) in the least
13  restrictive environment.  Decl. Duncan-Becerril, Exh. A.  The State Auditor also did not make
14  any findings with respect to the First Amended Consent Decree or the State's obligations under
15  the First Amended Consent Decree.  *Id.*

16  Although the State Auditor does not hold enforcement authority, the State Auditor
17  recommended that the CDE "implement a process to conduct on-site reviews before certifying
18  nonpublic agencies and to monitor nonpublic agencies on a three-year cycle in accordance with
19  appliable state law and regulations."  Decl. Duncan-Becerril, Exh. A, p. 3.

20  The CDE already has undertaken development of processes to mirror the CDE's processes
21  for NPSs to meet the statutory requirements under Education Code section 56366.1.  Decl.
22  Duncan-Becerril, ¶¶ 15-18, Exh. A, p. 2.

23  For example, the Special Education Division has already submitted the Phase I – NPA Self-
24  Review Report to the State Auditor's office for consideration.  Decl. Duncan-Becerril, ¶ 16.  A
25  copy of the Phase I – NPA Self-Review Report that the State intends to use is attached as Exhibit
26  C to Ms. Duncan-Becerril's declaration.  The Special Education Division is also working on
27  completing the Phase II – NPA On-site Review Process.  Decl. Duncan-Becerril, ¶ 17.  This NPA
28  On-site Review Process will include a physical walk-through of the NPA location if the services

are provided on the NPA business site to students with disabilities, review of the delivery and quality of the services provided and review of the NPA staff, including confirming service providers hold appropriate and valid certification or licensure. *Id*. The CDE anticipates finalizing and implementing that process by mid-January 2025. Decl. Duncan-Becerril, ¶ 18.

## V. THE STATE AUDITOR'S REQUEST TO KEEP THE MATTER CONFIDENTIAL

Because the Report arises out of a whistleblower complaint investigation, the matter is deemed confidential under state law. Cal. Govt. Code sections 8547.6(a), 8547.7(c). The results of that investigation were not publicly released until today, November 21, 2024. Prior to this public release of the Report, the State was unable to inform Plaintiffs, the Monitor or the Court, because of confidentiality protections afforded under the California Whistleblower Protection Act, Cal. Govt. Code section 8547, et seq. These statutes strictly require that no information obtained by the State Auditor, including that obtained from the State Auditor's investigation, shall be divulged or made known to any person without prior approval of the State Auditor, and that the State Auditor shall keep confidential every investigation. Cal. Govt. Code section 8547.6(a) and section 8547.7(c). Here, the State Auditor required the CDE to keep the matter confidential at all times and until the matter was publicly reported, pursuant to Cal. Govt. Code section 8547.6(a) and section 8547.7(c). Decl. Duncan-Becerril, ¶ 19. Now that the Report has been publicly issued, the State promptly brought this Report to the attention of the parties and to the Court in the interest of full disclosure.

## ANALYSIS

### I. THE STATE AUDITOR'S REPORT HAS NO EFFECT ON THE STATE'S PENDING MOTION TO TERMINATE THE CONSENT DECREE AND DISMISS THE ACTION

Notwithstanding the Report, the State maintains that the State Auditor's Report does not impact the status of this action nor does it have any effect on the State's pending Motion to Terminate the Consent Decree and for Dismissal of the Action with Prejudice (Dkt. 2865), for the following reasons:

A. **CDE Monitors Nonpublic Agencies by Monitoring Their Contracting LEAs under its Court-Approved Monitoring and Enforcement Process**

Although the Report identified instances where the State is not fully meeting the state mandates relating to certification requirements of an NPA, the CDE does sufficiently monitor NPSs for the purposes of monitoring and enforcement for compliance with the IDEA and in meeting its obligations under the First Amended Consent Decree.

NPAs are essentially an arm of their contracting LEA that is being monitored by the CDE through the Compliance and Improvement Monitoring (CIM) process. As explained above, NPAs are required to report applicable data to their contracting LEA. Thus, students who are served by NPA service providers are part of the outcomes in the LEA data that the CDE is monitoring annually. Decl. Duncan-Becerril, ¶ 4-7, 12-13.

For example, IEP implementation data that is reported by an LEA to the CDE would include those students who are served by NPA service providers. Decl. Duncan-Becerril, ¶ 13. Thus, any systemic issues concerning IEP implementation would be captured in the data that the CDE already collects and would be part of the data upon which the CDE flags the LEA for further monitoring with respect to IEP implementation data. *Id*. This is likewise true for other data collected by the CDE. *Id*. If an LEA is assigned a monitoring tier, any CIM activities will necessarily include any NPAs who are providing services to students within that LEA.

For these reasons, the Court's prior orders finding the State in compliance with each of the four-phases, namely, with its data collection, data analyses, monitoring and enforcement processes, necessarily includes compliance with respect to an NPA who is operating under a master agreement with the LEA who is monitored under the CIM process.

B. **CDE's Processes for Nonpublic Agencies Mirror That of Nonpublic Schools, Which Was Included in the State's Previously Approved Monitoring and Enforcement Process**

As summarized above, during Phase 3A, the phase that dealt with the State's design for its monitoring and enforcement activities, namely the CIM process, the State addressed NPS and NPA. Decl. Duncan-Becerril, ¶ 12. At this time, the State explained how the State requires NPS/A certifications as required under state law, and then annually reviews those certifications.

1   Dkt. 2676 at p. 31.  The State further explained how it conducts self-reviews, on-site reviews, and
2   follow-up visits of certified NPS.  Dkt. 2676 at pp. 31-33.  After written responses from Plaintiffs
3   and the Monitor, discussions were had during the hearings held on Phase 3A with respect to NPS.
4   Albeit briefly, the State's process with respect to NPS was discussed at the hearings.  Dkt. 2703,
5   transcript 11-16-22, p. 369-371; Dkt. 2717, transcript 3-3-23, p. 131-134.  After these hearings
6   were held, the Court issued its final order finding the State in compliance at Phase 3A.  Dkt.
7   2718.  Accordingly, the Court has approved the State's monitoring system which includes the
8   described monitoring and oversight of an NPS.

9        It is true that the State initially treated NPAs differently than NPSs with respect to the
10  certification and review process because it believed the state statutes are written in such a way
11  that many of the requirements did not apply to an NPA, such as those that do not have physical
12  locations and thus cannot undergo "site review" as proscribed by the statute.  However, upon
13  further consideration of the statutes and the recommendation from the State Auditor, the CDE has
14  already developed systems for on-site review of NPAs that operate their own locations that mirror
15  that of an NPS and that fully comply with Education Code section 56366.1.  Decl. Duncan-
16  Becerril, ¶¶ 15-18.  Because this Court has already deemed the State's monitoring system,
17  including as to an NPS, adequate for the purposes of IDEA and the First Amended Consent
18  Decree, the State's processes as to an NPA should likewise be sufficient since they are essentially
19  the same as those for an NPS.

20       For these additional reasons, the State Auditor's Report does not impact the status of this
21  action nor will it have any effect on the State's Motion to Terminate the Consent Decree and for
22  Dismissal of the Action.

23      **C.   Nothing in the Report Alters the Court's Previous Orders Finding the State in Compliance under the IDEA and the First Amended Consent Decree**
24

25       This lawsuit, which was initiated in 1996, involved allegations of a denial of FAPE as
26  required under federal and state law.  Dkt. 1; Dkt. 114.  In particular, the lawsuit was commenced
27  to compel the Ravenswood City Elementary School District, its Superintendent and Board of
28  Trustees, and State Defendants to provide every eligible child with a disability living with the

jurisdiction of Ravenswood a free appropriate public education in the least restrictive environment as required by federal and state law. *Id.*

The operative First Amended Consent Decree from which this Court's federal oversight stems arose out of the Plaintiffs' allegations concerning FAPE and the State's alleged failure to monitor LEAs delivery of FAPE. Dkt. 832, p. 1-2.

As indicated above, the State Auditor's Report makes no findings regarding FAPE. Decl. Duncan-Becerril, Exh. A. There are no findings of violations of FAPE and no mention of the State's obligations outlined in the First Amended Consent Decree. *Id.*

Thus, nothing about the State Auditor's Report has any bearing on this Court's prior orders with respect to the State's Compliance with the IDEA or the First Amended Consent Decree. For this additional reason, the Court should grant the State's motion to terminate the consent decree and dismiss the action with prejudice.

## CONCLUSION

The State Auditor's Report does not impact the Court's prior orders finding the State in compliance with the IDEA and the First Amended Consent Decree. As explained above, for the purposes of this action, the State adequately monitors NPAs by monitoring their contracting LEAs under its Court-approved monitoring and enforcement process in the same manner that it monitors an NPS. Dkt. 832, 2428, 2598, 2644, 2718, 2847, 2861. Thus, the Court should grant the State's motion to terminate the consent decree and dismiss the action with prejudice, upon consideration of the State Auditor's report and because the State Auditor's recommendations are already being implemented by the CDE.

Notwithstanding, and given the timing of the publicly released Report, the State stands ready to respond to further inquiries, if any, and will not object should Plaintiffs or the Monitor request further briefing on the matter.

\\\
\\\
\\\
\\\

| | |
|---|---|
| Dated: November 21, 2024 | Respectfully submitted,<br><br>ROB BONTA<br>Attorney General of California<br>DARRELL W. SPENCE<br>Supervising Deputy Attorney General<br><br>*/s/ Stacey L. Leask*<br>STACEY L. LEASK<br>Deputy Attorney General<br>*Attorneys for Defendants*<br>*California Department of Education, Tony Thurmond, in his official capacity as the State Superintendent of Public Instruction, and State Board of Education* |

# CERTIFICATE OF SERVICE

Case Name:   **Emma C., et al. v. Thurmond, et al.**   No.   **3:96-cv-04179-VC**

I hereby certify that on <u>November 21, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' NOTICE OF THE STATE AUDITOR'S REPORT**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 21, 2024</u>, at San Francisco, California.

|  |  |
|---|---|
| R. Caoile | /s/ R. Caoile |
| Declarant | Signature |

SA2005104070
44411667.docx