ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General
STACEY L. LEASK
Deputy Attorney General
State Bar No. 233281
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3524
  Fax:  (415) 703-5480
  E-mail:  Stacey.Leask@doj.ca.gov
*Attorneys for Defendants*
*California Department of Education, Tony Thurmond, in his official capacity as the State Superintendent of Public Instruction, and State Board of Education*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **EMMA C., et al.,** | 3:96-cv-04179-VC |
| Plaintiffs, | **DECLARATION OF SHIYLOH DUNCAN-BECERRIL FILED IN CONJUNCTION WITH STATE DEFENDANTS' NOTICE OF THE STATE AUDITOR'S REPORT; WITH EXHIBITS A-C** |
| v. | |
| **THURMOND, et al.,** | |
| Defendants. | Date: December 12, 2024<br>Time: 2:00 p.m. (videoconference)<br>Courtroom: 4<br>Judge: The Honorable Vince Chhabria |

I, Shiyloh Duncan-Becerril, declare as follows:

1. I am over the age of 18 and a United States citizen. I know the following facts of my own personal knowledge, and if called upon as a witness, I could and would testify competently thereto.

2. I am currently employed as the Associate Director of the Office of Data, Monitoring and Local Educational Agencies (LEAs) Support in the Special Education Division at the California Department of Education (CDE).  In that role, I am responsible for overseeing the monitoring of LEAs, pursuant to the Individual with Disabilities Education Act (IDEA), 20 U.S.C. § 1416 and implementing regulations, 34 C.F.R. § 300.600 et seq.  I have been employed at the CDE for 14 years and I have served as Associate Director of Data, Monitoring and LEAs Support in the Special Education Division at the CDE for approximately 4 years.

3. On November 21, 2024, the California State Auditor publicly issued Investigative Report I2024-1, which included its report for Case I2023-14333.  The investigation by the California State Auditor for Case for I2023-14333 pertained to the CDE's certification processes of nonpublic agencies (NPAs) under California Education Code Section 56366.1.  A true and correct copy of the portion of the California State Auditor's Investigative Report I2024-1 for Case I2023-14333, is attached to this declaration as Exhibit A.  A copy of the entire report of the California State Auditor can be found at www.auditor.ca.gov/reports/i2024-1/.

4. I am providing this declaration to explain why the findings of the State Auditor's report are not inconsistent with the Court's prior findings regarding the State's compliance with the IDEA. I have reviewed the report, and while it finds that the CDE is not fully meeting its required mandates under California Education Code section 56366.1, it did not find that the CDE is violating its obligations under the IDEA or as to the IDEA requirements to provide a free appropriate public education (FAPE) in the least restrictive environment, nor is there any finding in the State Auditor's report of a failure of the CDE to implement individual education plans (IEPs).  The State Auditor also did not make any findings with respect to the First Amended Consent Decree or the State's obligations under the First Amended Consent Decree.

5. Under California law, a local educational agency (LEA) may contract with a nonpublic, nonsectarian school (NPS) to place students with disabilities pursuant to an IEP.  Under California law, an NPS is a private nonsectarian school that enrolls individuals with exceptional needs pursuant to an Individualized Education Program (IEP).  Cal. Educ. Code § 56034.

6. In contrast to an NPS—where students are placed—an LEA may also contract with an NPA, which provides "related services" necessary for a pupil with exceptional needs to benefit educationally from the pupils' educational program pursuant to an IEP.  NPA services include, for example, physical and occupational therapy, language and speech therapy, or other such supportive services.  Cal. Educ. Code § 56035.

7. The certification standards and requirements for an NPS and NPA are set forth in California Education Code sections 56366 and 56366.1, and in Title 5 of the California Code of Regulations § 3060, et seq.  For the convenience of the Court, a copy of these California statutes are attached to this declaration as Exhibit B.

8. The Superintendent is the CDE's executive officer.  Administrative functions of the Superintendent are carried out through various staff within the CDE's Special Education Division.  In my role as Associate Director of Data, Monitoring and LEAs Support, I am familiar with the various administrative functions with respect to NPS and NPAs that are carried out by staff of the CDE.

9. The CDE provides information to the public regarding certification of NPS and NPAs on its website at www.cde.ca/sp/se/ds/npsacrtapp.asp ; www.cde.ca./sp/se/ds/npsleaonsitevisit.asp; www.cde.ca./sp/se/ds/npageinfo.asp.

10. As explained above, NPS and NPAs are distinct entities. As a school, an NPS provides core instruction and a complete school experience for students with disabilities on-site at the NPS, whereas an NPA is a contracted service provider that provides specified services to students with disabilities at the public schools in which those students are enrolled. An NPA is often one licensed or credentialed individual who provides a single service such as speech or language therapy, and in most cases, they provide the special education services at the pupils' school.  In other words, whereas an NPS operates from a separate school site where students with disabilities are enrolled to receive services, most NPAs provide services to students at the public school at which the student is enrolled and not at a separate location or site. Most often, students with disabilities who receive NPA services pursuant to their IEP do not ever go onsite to the NPA's physical location to receive such services.

11. Despite the differences between NPS and NPAs, California Education Code Section 56366.1 does not separate out the requirements applicable to an NPS versus NPA service providers. As such, implementation of the statute with respect to NPAs, as written, is challenging because some of the mandates under the statute are more applicable to an NPS (where a student is placed and receives services on-site) than for an NPA (from whom a student most often receives services at the student's school). This is particularly the case for those NPAs that do not operate from a physical location. For these NPA service providers, there is no site to conduct an "onsite" visit.  Given these stark differences, the CDE is currently evaluating whether to propose a change in the legislation to clarify the required processes for NPS and NPA service providers. However, agreement between the Legislature and the Governor is necessary for any legislative change to go into effect.

12. Throughout the Court's Evidentiary Hearing Process, NPAs or the services provided by NPAs to students have not been the specific focus of any of the Phases set by the Court. However, the monitoring of student outcomes and the provision of FAPE for students served by NPA service providers is covered under the Compliance and Improvement Monitoring process approved by the Court as compliant with federal law. More specifically, the State Defendants' Phase 3A for Design and Monitoring and Enforcement

Activities submission described the process for the State compliance with the IDEA's monitoring requirements. (Dkt. 2676, April 15, 2022, at pp. 33-35 of 45.)  As set forth in that submission, compliance in meeting IDEA requirements relating to educational services provided by NPSs is addressed when the CDE analyzes ***the contracting LEA's performance and compliance annually for students placed at an NPS through the IEP process.***  Likewise, compliance in meeting IDEA requirements relating to services from NPA-contracted service providers is addressed when the CDE analyzes the contracting LEA's performance and compliance annually for students enrolled at a public school.

13. Like an NPS, NPAs are required to report applicable data to their contracting LEA.  Thus, the outcomes in the LEA data that the CDE is monitoring annually would reflect data about students who are served by NPA service providers.  For example, IEP implementation data that is reported by an LEA to the CDE would include those students who are served by NPA service providers.  Thus, any systemic issues concerning IEP implementation involving an NPA would be captured in the data that the CDE already collects and would be part of the data upon which the CDE flags the LEA for further monitoring.  This is likewise true for other data collected by the CDE to the extent that such data includes those students who are served by an NPA.

14. The CDE also certifies NPAs under the same statutory framework required for an NPS.  Like NPSs, NPAs are directed to file an application with CDE using CDE's application forms.  These processes also include a Validation Review process to access the applicant's operational standards, licensees, credentials, and/or other certification requirements as needed.

15. Although NPA service providers' certification processes and their on-site monitoring is not it within my direct supervisory purview within the Special Education Division at the CDE, due to my extensive knowledge and experience in the development of coherent and responsive monitoring processes, the CDE leadership requested that I support the development of processes to ensure that state law requirements regarding NPAs are carried out.  As such, I have been working with other CDE staff to create the NPA Self-Review and On-site Review monitoring processes since August 2024.

16. The Special Education Division has already submitted the Phase I – NPA Self-Review Report to the State Auditor's office for consideration.  A copy of the Phase I – NPA Self-Review Report that the State intends to use is attached to this declaration as Exhibit C.

17. The Special Education Division is also working on completing the Phase II – NPA On-site Review Process.  The NPA On-site Review will include a physical walk-through of the NPA location if the services are provided to students with disabilities on the NPA business site, review of the delivery and quality of the services provided and review of the NPA staff, including confirming service providers hold appropriate and valid certification or licensure. This process is currently in development.

18. The CDE will commence NPA Self-Review monitoring in January 2025 and the On-site Review monitoring process is scheduled to launch in February 2025.  The CDE follow-up of any uncovered noncompliance is scheduled to begin January 2026.

19. I have been informed that the State Auditor required CDE to keep the State Auditor's investigation and report confidential at all times until the matter was publicly reported by the State Auditor, which is why State Defendants did not earlier inform Plaintiffs, the Monitor or the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of November 2024, at Sacramento, California.

Shiyloh Duncan-Becerril

Digitally signed by Shiyloh Duncan-Becerril
Date: 2024.11.21 14:36:14 -08'00'

Shiyloh Duncan-Becerril

1  Attached hereto is the Declaration of Shiyloh Duncan-Becerril filed in conjunction with
2 the State Defendants' Notice of State Auditor Report, with Exhibits A – C, as digitally executed
3 by Ms. Shiyloh Duncan-Becerril.  I hereby attest that I have on file Ms. Shiyloh Duncan-
4 Becerril's original signature corresponding with this e-filed document.
5  I declare under penalty of perjury of the laws of the United States that the foregoing
6 statements are true and correct.
7  Executed in Alameda, California on November 21, 2024.
8  By: ____*/s/ Stacey L. Leask*_____
9  Stacey L. Leask

# CERTIFICATE OF SERVICE

Case Name:   **Emma C., et al. v. Thurmond, et al.**     No.   **3:96-cv-04179-VC**

I hereby certify that on November 21, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DECLARATION OF SHIYLOH DUNCAN-BECERRIL FILED IN CONJUNCTION WITH STATE DEFENDANTS' NOTICE OF THE STATE AUDITOR'S REPORT; WITH EXHIBITS A-C**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 21, 2024, at San Francisco, California.

| R. Caoile | /s/ R. Caoile |
|---|---|
| Declarant | Signature |

SA2005104070
44411701.docx